**From:** no-reply@recapmanager.co.uk <no-reply@recapmanager.co.uk>
**Sent:** 24 February 2022 17:13
**To:** PETERSEN Thies Johannes <TPETERSEN@eigershipping.com>
**Subject:** Fully Fixed CP | 9319870 Nordbay | Litasco SA | 24-02-2022 | RECAP ID 54108

**James Wackett** from **Howe Robinson Partners (UK) Ltd** has
requested that this email be sent notifying you of the
following charter party.

`OPEN IN RECAP`

                              (TITLE)
SUBJECTS          : AS PER YOUR AUTHORITY WE ARE PLEASED TO CONFIRM THE FOLLOWING
                    FIXTURE WITH ALL SUBJECTS LIFTED AND IN ORDER.
DECLARATION       : NONE
ALERTS
CP DATE           : 24TH FEBRUARY 2022
OWNER             : N2 TANKERS B.V
CHARTERER         : LITASCO SA
TERMS             : CRUDE/DIRTY (CRD/DPP)

                         (VESSEL DETAILS)
SHIP              : NORDBAY
SWDT              : 116104
DRAUGHT           : 14.665
LOA               : 249.00
BEAM              : 44.00
BUILT             : 2007-03-14
FLAG              : PORTUGAL
CAPACITY AT 98    : 128714
PCT
SLOP CAPACITY     : 7,143.60
AT 98 PCT
SLOP TANK         : AVAILABLE FOR CARGO
AVAILABILITY
COW               : YES

```
IGS                  : YES
TPC                  : 100.00
BCM                  : 125.50
KTM                  : 48.70
TYPE OF              : EPOXY
COATINGS
TYPE OF COILS        : HEATING PIPES
CLASS                : DNV GL
CRANES               : CRANES: 1 X 15.00 TONNES CENTER, 4.00
SCNT                 : 59046.33
PCRT                 : 55622.00
GRT                  : 62241.00
IMO NUMBER           : 9319870
H&M VALUE            : 22600000
CHARTER SPEED        : ABOUT 12.5 KNOTS WSNP

LAST CARGO           : NHC / NOVOROSSIYSK TO BOURGAS
2ND LAST CARGO       : AZERI CRUDE / CEYHAN TO AUGUSTA
3RD LAST CARGO       : REBCO / NOVOROSSIYSK TO BOURGAS

LAST SIRE            : JAN 31, 2022
APPROVALS AND        : TBOOK: EQUINOR, TOTAL
EXPIRY
WARRANTY BOX         : OWNERS CONFIRM THE BELOW

                       TERMINAL CONFIRMS THAT SUBJECT M/T NORDBAY IS ACCEPTABLE TO BE
                       HANDLED AT BERTH #1A OF SHESKHARIS TERMINAL.
                       BY THE TIME OF MOORING THE TANKER TO THE PIER, PLEASE PROVIDE:
                       - CARGO RECEIVERS 3X16" (ANSI 150 LBS RF) WITH THICKNESS OF
                       FLANGES 35-40 MM;
                       DURING OF LOADING PLEASE ENSURE:
                       - LOADING WITH AVERAGE RATE NOT LESS THAN 6 000 MT/HOUR;
                       - INTERNATIONAL MARITIME RISK MANAGEMENT AGENCY - POSITIVE
                       APPROVE FOR ONE PORT ENTRY.
                       VETTING STATUS: POSITIVE FOR ONE ENTRY.

                              (CARGO)
CARGO QUANTITY       : MIN 80,000 MTS CHARTERERS OPTION UP TO FULL CARGO, NO
                       DEADFREIGHT FOR CHARTERERS ACCOUNT PROVIDED MIN QUANTITY
                       SUPPLIED.
CARGO                : MAX 3 GRADES CRUDE OIL WVNS.
DESCRIPTION
                       HEAT : CHARTERERS OPTION TO REQUEST VESSEL TO MAINTAIN/HEAT UP
                       LOADED TEMP UP TO MAX 135 DEG F PROVIDED TIME PERMITS, MAX
                       LOADED TEMP 158F. ALL COSTS FOR MAINTAINING/HEATING UP TO BE
                       FOR CHARTERERS ACCOUNT PAYABLE AT COST AGAINST SUPPORTING
                       DOCUMENTS PRESENTED BY OWNERS.
```

LOT TO APPLY HOWEVER VSL TO WELL DRAIN AND STRIP ALL LINES,
TANKS AND PUMPS. IF NECESSARY
TANKS TO BE PURGED IN ORDER TO BE SUITABLE TO LOAD FUEL OIL.

OWNERS OPTION TO BUNKER LADEN ALWAYS WITH CHARTERERS PRIOR
CONSENT NOT TO BE UNREASONALY WITHELD

(DATES)

LAYDAYS            : 05TH MARCH 2022 (00.01) - 06TH MARCH 2022 (23.59) - TO BE
                     NARROWED ONE DAY IN CHARTERERS OPTION

ITINERARY          : VSL EXPECTED TO LOAD 25TH NOVO AND SAIL 26TH AM, ETA BOURGAS
                     28TH AND SAIL 01ST MARCH 2022 AGW WSNP.

EXPECTED READY     : BEFORE LAYCAN

(GEOGRAPHICAL)

LOADING RANGE      : 1 SAFE PORT NOVOROSSIYSK EXCL STS

                     IF ANY AWRP AT LOAD TO BE FOR CHARTS ACCOUNT.

                     NO OPEN HATCH SAMPLING - NO INTERNAL TANK TRANSFER

                     CHOPT TO TOP UP/DISCH RELOAD UNROUTE
                     AT 1/2 SAFE PORT/STS UKC H-H RANGE INCL STS SKAW WHICH IF
                     EXERCISED TO BE COVERED UNDER THE
                     INTERIM PORT CLAUSE. - N/A THIS CP

DISCHARGING        : 1/2 SAFE PORTS EUROMED NEOBIG EXCL Y/FY/ALB BUT INCL R+O , OR
RANGE                CHOPT

                     1/2 SAFE PORTS ROMANIAN-BULGARIAN BSEA, OR IN CHOPT

                     1/2 SAFE PORTS UKC GIB-HAMBURG RANGE INCL STS SKAW BUT EXCL
                     MSC, AVONMOUTH, PETERHEAD, LYME BAY AND DUNDEE.

                     OR IN CHOPT
                     1-2 PORT(S) TURKISH MED INCL SEA OF MARMARA EXCL TOC (DISPORT
                     TO BE IN GEO-ROTATION)

                     BSEA DISCHARGE TO BE DECLARED BY 1200HRS LONDON 01ST MARCH 2022
                     OTHERWISE THE OPTION BECOMES NULL AND VOID

(FINANCIAL)

FREIGHT RATE       : WS 110 IF MED/TURKEY/UKC
                     USD 682,500 BSS 1/1 IF ROMANIAN/BULGARIAN BSEA

                     MIN FLAT AUGUSTA TO APPLY (IF DISCHARGE 2 PORTS TURKEY, THEN +
                     50 CENTS TO BE ADDED ON

                     RATE TO BE BASIS GREAT BELT LADEN AND BALLAST - N/A THIS CP

                     RATE TO BE CALCULATED BASIS SIC/MSN IF APPLICABLE, IF SIC/SIC
                     IS LOWER THEN SIC/SIC TO APPLY

IF STS SKAW MF WHAVEN TO APPLY LESS USD 67,500 - N/A THIS CP

IF TA VESSEL TO TAKE THE SHORTEST ROUTE POSSIBLE HOWEVER IF DUE
TO WEATHER CONDITIONS VESSEL GOES VIA DOVER LADEN THEN FREIGHT
TO BE PAID BSS ACTUAL ROUTE TAKEN. OWNERS TO ADVISE CHARTERERS
PRIOR WITH SUPPORTING DOCS AS TO INTENDED ROUTING - N/A THIS CP

WSTC 2022 TO APPLY

COMMINGLING/BLENDING CLAUSE -

CHARTERERS TO HAVE THE RIGHT TO COMMINGLE/BLEND AND MASTER TO
EXECUTE THIS OPERATION (THESE OPERATIONS) AS PER CHARTERER'S
INSTRUCTIONS SUBJECT TO SHIP'S SAFETY AND PHYSICAL CAPABILITIES
AND BELOW -

A) CHARTERERS WARRANT THAT ANY CARGOES TO BE COMMINGLED/BLENDED
ON BOARD SHALL BE STABLE AND
COMPATIBLE AND THAT NO PRECIPITATION OF SOLID DEPOSITS IN CARGO
TANKS, PIPES, PUMPS,
VALVES WILL OCCUR, AND IT IS FURTHER AGREED THAT;
B) SUCH BLENDING/COMINGLING SHALL BE ALWAYS IN STRICT
COMPLIANCE WITH SAFETY RULES AND CONVENTIONS, AND SUBJECT TO
THE TECHNICAL CHARACTERISTICS OF THE VESSEL;
C) ANY ADDITIONAL COSTS INCURRED AS A RESULT OF
BLENDING/COMINGLING OPERATIONS SHALL BE FOR
CHARTERER'S ACCOUNT;
D) CHARTERERS SHALL RETURN TO OWNERS FOR CANCELLATION ALL THREE
ORIGINALS OF ALL BILLS OF
LADING ISSUED IN RESPECT OF THE CARGOES BEING BLENDED/COMINGLED
AND FOLLOW BELOW PROCEDURE FOR REDOCUMENTATION -

1. ALL ORIGINAL BLS TO BE MARKED NULL AND VOID AND THE SCAN
COPY SENT IN ADVANCE INCLUDING AIR WAY BILLS TO BE PROVIDED FOR
TRACKING. OBLS TO BE SENT TO OWNER'S AMSTERDAM ADDRESS.

2. CHARTERERS ALSO TO CONFIRM IN WRITING THAT ALL BLS HAVE BEEN
CANCELLED AND WILL NOT BE USED FOR COMMERCIAL PURPOSE.

3. NEW BL WILL NOT BE AUTHORISED AND VESSEL WILL NOT BE ALLOWED
TO DISCHARGE UNTIL SCANS OF ALL CANCELLED BL'S AND AIR WAY
BILLS ARE RECEIVED BY OWNERS. CHARTERERS TO RETURN CANCELLED
B/L'S ASAP TO OWNERS OFFICE. IF CHARTERERS DELAY TO SEND SCANS
OF ALL CANCELLED BL'S AND AIR WAY BILLS OF THE BLS THEN OWNERS
/ VESSEL /AGENTS AND OR SERVANTS (INCLUDING CREW) WILL NOT BE
HELD RESPONSIBLE FOR ANY DELAYS AND ALL TIME FOR SUCH DELAYS
WILL BE FOR CHARTERERS ACCOUNT AND COUNT AS LAYTIME /DEMURRAGE.

4. THE NEW BL WILL HAVE TO INCLUDE FOLLOWING WORDING IN ORDER
TO CLEARLY REFLECT THE ORIGIN OF THE CARGO - A+B MT OF XXXX OIL
COMMINGLED/BLENDED ONBOARD OF QTY A MT OF XXXX OIL LOADED AT
XXXXXX ON XX OF MONTH 20XX, AND QTY B MT OF FUEL OIL LOADED AT
XXXX ON XX OF MONTH 20XX.

5. RECUT B/LS WILL BE COVERED BY THE INDEMNITY SET OUT IN THIS

CLAUSE.

IF CHARTERERS EXERCISE THIS OPTION THEY WILL HOLD OWNERS
HARMLESS AND KEEP THEM FULLY INDEMNIFIED AGAINST ALL CLAIMS FOR
COMINGLING/BLENDING AND / OR CONTAMINATION OR QUALITY/QUANTITY
DETERIORATION OR OFFSPECIFICATION RESULTING DIRECTLY FROM THE
CARGO OPERATIONS PERFORMED AND ISSUE ATTACHED LETTER OF
INDEMNITY TO COVER THE OPERATION/OPERATIONS.

LOI FOR BLENDING COMMINGLING ATTACHED

OVERAGE         : IF ANY AT 50 %

DEMURRAGE RATE  : $24,000 USD PDPR

LAYTIME         : 72 HOURS

COMMISSION      : 2.50 PERCENT ADDRESS COMMISSION ON HIRE
                  1.25 PERCENT BROKERAGE COMMISSION TO HOWE ROBINSON PARTNERS
                  (UK) LTD ON FREIGHT/DEADFREIGHT/DEMURRAGE

Please click below to open the Charter Party in Recap Manager.
https://www.recapmanager.co.uk/#/cp/EXXONMOBILVOY2065LITASCO/54108/1





This email has been automatically generated by Recap Manager.
Please do not reply to this email. If you have any enquiries please contact
support@recapmanager.co.uk

## EXXONMOBILVOY2005LITASCO - CHARTERING IN RECAP

### SUBJECTS

AS PER YOUR AUTHORITY WE ARE PLEASED TO CONFIRM THE FOLLOWING FIXTURE WITH ALL SUBJECTS LIFTED AND IN ORDER.

### CP DETAILS

| | |
|---|---|
| CP DATE | : 24 FEBRUARY 2022 |
| TERMS | : CRUDE/DIRTY (CRD/DPP) |
| CP REFERENCE | : EXXONMOBILVOY2005LITASCO |
| PLACE | : LONDON |
| OWNER GROUP | : N2 TANKERS B.V. |
| OWNER TYPE | : DISPONENT OWNER |
| DISPONENT OWNER | : N2 TANKERS B.V |
| OWNER ADDRESS | : ALPHA TOWER, DE ENTREE 53, 1101 BH AMSTERDAM NETHERLANDS TEL: +31207606400 FAX: +31207606490 EMAIL: CHRTR@N2TANKERS.COM WEB: WWW.N2TANKERS.COM |
| CHARTERER | : LITASCO SA |
| CHARTERER ADDRESS | : 3, RUE KAZEM-RADJAVI 1202 GENEVA, SWITZERLAND |
| BROKER | : HOWE ROBINSON PARTNERS (UK) LTD |
| CO-BROKERS | : *N/A* |
| COMMERCIAL OPERATOR (if different from Owners): | : N2 TANKERS B.V. |
| COMMERCIAL OPERATOR ADDRESS | : ALPHA TOWER, DE ENTREE 53, 1101 BH AMSTERDAM Z.O., THE NETHERLANDS NETHERLANDS TEL: +31 20 760 6400 FAX: +31 20 609 0881 EMAIL: CHRTR@N2TANKERS.COM WEB: N2TANKERS.COM |
| REGISTERED OWNER (if different from Owners): | : MT NORDBAY SHIPPING MANAGEMENT B.V. |
| REGISTERED OWNER ADDRESS | : ALPHA TOWER, DE ENTREE 53, 1101 BH AMSTERDAM Z.O., NETHERLANDS NETHERLANDS TEL: +31 20 7606400 FAX: +31 20 6090881 TELEX: N/A EMAIL: OPERATIONS@REEDEREI-NORD.NL WEB: WWW.REEDEREI-NORD.COM |

### VESSEL DESCRIPTION

| | |
|---|---|
| VESSEL NAME | : NORDBAY |
| IMO NUMBER | : 9319870 |
| SUMMER DEADWEIGHT (SDWT) ON ASSIGNED SUMMER FREEBOARD (TONNES) | : 116104 |
| SALT WATER DRAUGHT (ON SDWT) | : 14.665 METRES |
| LENGTH OVERALL | : 249.00 METRES |
| BEAM | : 44.00 METRES |
| FLAG | : PORTUGAL |

| | | |
|---|---|---|
| YEAR BUILT | : | 2007-03-14 |
| CARGO TANK CAPACITY AT 98% EXCLUDING SLOP TANKS | : | 128714 CUBIC METRES |
| CAPACITY OF SLOP TANKS AT 98% (CUBIC METRES) | : | 7,143.60 |
| AVAILABLE FOR CARGO / NOT AVAILABLE FOR CARGO (DELETE AS APPLICABLE) | : | AVAILABLE FOR CARGO |
| ICE CLASS | : | N/A |
| CRUDE OIL WASHING (COW) | : | YES |
| INERT GAS SYSTEM (IGS) (SOLAS COMPLIANT) | : | YES |
| CLOSED CARGO OPERATIONS | : | YES |
| TONNES PER CENTIMETRE IMMERSION (TPC) | : | 100.00 |
| BOW TO CENTRE OF MANIFOLD (BCM) | : | 125.50 |
| CRANES (NUMBER AND CAPACITY) | : | CRANES: 1 X 15.00 TONNES CENTER, 4.00 |
| -BOW CHAIN STOPPERS: (A) NUMBER | : | 2 |
| -BOW CHAIN STOPPERS: (B) SAFE WORKING LOAD | : | 250 TONNES |
| -BOW CHAIN STOPPERS: (C) NOMINAL DIAMETER OF CHAIN | : | 76.00 MM |
| KEEL TO TOP OF MAST (KTM) | : | 48.70 M |
| TANK COATINGS (TYPE) | : | EPOXY |
| HEATING SYSTEM (TYPE/MATERIAL) | : | HEATING PIPES |
| (A) MAXIMUM TEMPERATURE AT WHICH CARGO CAN BE LOADED | : | 71.1 °C / 160.0 °F |
| (B) MAXIMUM TEMPERATURE AT WHICH CARGO CAN BE MAINTAINED (LITASCO TERMS CLAUSE 6. HEATING) | : | 66 °C / 150.8 °F |
| CLASSIFICATION SOCIETY | : | DNV GL |
| GROSS TONNAGE (GT) | : | 62241.00 |
| SUEZ CANAL NET TONNAGE (SCNT) | : | 59046.33 |
| PANAMA CANAL NET TONNAGE (PCNT) | : | 55622.00 |
| USCG CERTIFICATE OF COMPLIANCE (COC) EXPIRY DATE | : | 2020-10-30, 2020-10-30, 2022-10-30 |
| INTERNATIONAL SHIP SECURITY CERTIFICATE EXPIRY DATE | : | 2021-11-29, 2020-06-17, 2022-06-27 |
| H&M VALUE | : | 22600000 |
| PERCENTAGE OF MAXIMUM CONTINUOUS RATING (MCR) (%) | : | N/A |
| CHARTER PARTY SPEED ("CHARTER SPEED") (KNOTS) | : | ABOUT 12.5 KNOTS WSNP |
| MAXIMUM SPEED ("MAXIMUM SPEED") (KNOTS) | : | 15.0 |

**LAST CARGOES**

| | | |
|---|---|---|
| (A) LAST CARGO | : | NHC / NOVOROSSIYSK TO BOURGAS |
| (B) SECOND LAST | : | AZERI CRUDE / CEYHAN TO AUGUSTA |
| (C) THIRD LAST | : | REBCO / NOVOROSSIYSK TO BOURGAS |
| APPROVALS | : | TBOOK: EQUINOR, TOTAL |
| LAST SIRE DATE / INSPECTION COMPANY | : | JAN 31, 2022 |

| | |
|---|---|
| WARRANTED FULL CARGO INTAKE (MTS) | : N/A |
| WARRANTIES | : OWNERS CONFIRM THE BELOW |

TERMINAL CONFIRMS THAT SUBJECT M/T NORDBAY IS ACCEPTABLE TO BE HANDLED AT BERTH #1A OF SHESKHARIS TERMINAL.
BY THE TIME OF MOORING THE TANKER TO THE PIER, PLEASE PROVIDE:
- CARGO RECEIVERS 3X16" (ANSI 150 LBS RF) WITH THICKNESS OF FLANGES 35-40 MM;
DURING OF LOADING PLEASE ENSURE:
- LOADING WITH AVERAGE RATE NOT LESS THAN 6 000 MT/HOUR;
- INTERNATIONAL MARITIME RISK MANAGEMENT AGENCY – POSITIVE APPROVE FOR ONE PORT ENTRY.
VETTING STATUS: POSITIVE FOR ONE ENTRY.

## FIXTURE DETAILS

### CARGO

| | |
|---|---|
| CARGO QUANTITY | : MIN 80,000 MTS CHARTERERS OPTION UP TO FULL CARGO, NO DEADFREIGHT FOR CHARTERERS ACCOUNT PROVIDED MIN QUANTITY SUPPLIED. |
| CARGO DESCRIPTION | : MAX 3 GRADES CRUDE OIL WVNS. |

HEAT : CHARTERERS OPTION TO REQUEST VESSEL TO MAINTAIN/HEAT UP LOADED TEMP UP TO MAX 135 DEG F PROVIDED TIME PERMITS, MAX LOADED TEMP 158F. ALL COSTS FOR MAINTAINING/HEATING UP TO BE FOR CHARTERERS ACCOUNT PAYABLE AT COST AGAINST SUPPORTING DOCUMENTS PRESENTED BY OWNERS.

LOT TO APPLY HOWEVER VSL TO WELL DRAIN AND STRIP ALL LINES, TANKS AND PUMPS. IF NECESSARY
TANKS TO BE PURGED IN ORDER TO BE SUITABLE TO LOAD FUEL OIL.

OWNERS OPTION TO BUNKER LADEN ALWAYS WITH CHARTERERS PRIOR CONSENT NOT TO BE UNREASONALY WITHELD

### GEOGRAPHICAL

| | |
|---|---|
| LOADING PORTS / RANGE(S) AT CHARTERERS' OPTION | : 1 SAFE PORT NOVOROSSIYSK EXCL STS |

IF ANY AWRP AT LOAD TO BE FOR CHARTS ACCOUNT.

NO OPEN HATCH SAMPLING – NO INTERNAL TANK TRANSFER

CHOPT TO TOP UP/DISCH RELOAD UNROUTE
AT 1/2 SAFE PORT/STS UKC H-H RANGE INCL STS SKAW WHICH IF EXERCISED TO BE COVERED UNDER THE
INTERIM PORT CLAUSE. - N/A THIS CP

| | |
|---|---|
| DISCHARGE PORTS / RANGE(S) AT CHARTERERS' OPTION | : 1/2 SAFE PORTS EUROMED NEOBIG EXCL Y/FY/ALB BUT INCL R+O , OR CHOPT |

1/2 SAFE PORTS ROMANIAN-BULGARIAN BSEA, OR IN CHOPT

1/2 SAFE PORTS UKC GIB-HAMBURG RANGE INCL STS SKAW BUT EXCL MSC, AVONMOUTH, PETERHEAD, LYME BAY AND DUNDEE.

OR IN CHOPT
1-2 PORT(S) TURKISH MED INCL SEA OF MARMARA EXCL TOC (DISPORT TO BE IN GEO-ROTATION)

BSEA DISCHARGE TO BE DECLARED BY 1200HRS LONDON 01ST MARCH 2022 OTHERWISE THE OPTION BECOMES NULL AND VOID

### DATES

| | |
|---|---|
| LAYCAN COMMENCEMENT | : 05TH MARCH 2022 (00.01) |
| LAYCAN CANCELLING | : 06TH MARCH 2022 (23.59) - TO BE NARROWED ONE DAY IN CHARTERERS OPTION |
| VESSEL EXPECTED READY TO LOAD AT | : BEFORE LAYCAN |
| VESSEL ITINERARY | : VSL EXPECTED TO LOAD 25TH NOVO AND SAIL 26TH AM, ETA BOURGAS 28TH AND SAIL 01ST MARCH 2022 AGW WSNP. |

### FINANCIAL

| | |
|---|---|
| FREIGHT RATE | : WS 110 IF MED/TURKEY/UKC |

USD 682,500 BSS 1/1 IF ROMANIAN/BULGARIAN BSEA

MIN FLAT AUGUSTA TO APPLY (IF DISCHARGE 2 PORTS TURKEY, THEN + 50 CENTS TO BE ADDED ON

RATE TO BE BASIS GREAT BELT LADEN AND BALLAST - N/A THIS CP

RATE TO BE CALCULATED BASIS SIC/MSN IF APPLICABLE, IF SIC/SIC IS LOWER THEN SIC/SIC TO APPLY

IF STS SKAW MF WHAVEN TO APPLY LESS USD 67,500 - N/A THIS CP

IF TA VESSEL TO TAKE THE SHORTEST ROUTE POSSIBLE HOWEVER IF DUE TO WEATHER CONDITIONS VESSEL GOES VIA DOVER LADEN THEN FREIGHT
TO BE PAID BSS ACTUAL ROUTE TAKEN. OWNERS TO ADVISE CHARTERERS PRIOR WITH SUPPORTING DOCS AS TO INTENDED ROUTING – N/A THIS CP

WSTC 2022 TO APPLY

COMMINGLING/BLENDING CLAUSE –

CHARTERERS TO HAVE THE RIGHT TO COMMINGLE/BLEND AND MASTER TO
EXECUTE THIS OPERATION (THESE OPERATIONS) AS PER CHARTERER'S
INSTRUCTIONS SUBJECT TO SHIP'S SAFETY AND PHYSICAL CAPABILITIES AND BELOW -

A) CHARTERERS WARRANT THAT ANY CARGOES TO BE COMMINGLED/BLENDED ON BOARD SHALL BE STABLE AND
COMPATIBLE AND THAT NO PRECIPITATION OF SOLID DEPOSITS IN CARGO TANKS, PIPES, PUMPS,
VALVES WILL OCCUR, AND IT IS FURTHER AGREED THAT;
B) SUCH BLENDING/COMINGLING SHALL BE ALWAYS IN STRICT COMPLIANCE WITH SAFETY RULES AND CONVENTIONS, AND SUBJECT TO
THE TECHNICAL CHARACTERISTICS OF THE VESSEL;
C) ANY ADDITIONAL COSTS INCURRED AS A RESULT OF BLENDING/COMINGLING OPERATIONS SHALL BE FOR
CHARTERER'S ACCOUNT;
D) CHARTERERS SHALL RETURN TO OWNERS FOR CANCELLATION ALL THREE ORIGINALS OF ALL BILLS OF
LADING ISSUED IN RESPECT OF THE CARGOES BEING BLENDED/COMINGLED AND FOLLOW BELOW PROCEDURE FOR REDOCUMENTATION -

1. ALL ORIGINAL BLS TO BE MARKED NULL AND VOID AND THE SCAN COPY SENT IN ADVANCE INCLUDING AIR WAY BILLS TO BE PROVIDED FOR TRACKING. OBLS TO BE SENT TO OWNER'S AMSTERDAM ADDRESS.

2. CHARTERERS ALSO TO CONFIRM IN WRITING THAT ALL BLS HAVE BEEN CANCELLED AND WILL NOT BE USED FOR COMMERCIAL PURPOSE.

3. NEW BL WILL NOT BE AUTHORISED AND VESSEL WILL NOT BE ALLOWED TO DISCHARGE UNTIL SCANS OF ALL CANCELLED BL'S AND AIR WAY BILLS ARE RECEIVED BY OWNERS. CHARTERERS TO RETURN CANCELLED B/L'S ASAP TO OWNERS OFFICE. IF CHARTERERS DELAY TO SEND SCANS OF ALL CANCELLED BL'S AND AIR WAY BILLS OF THE BLS THEN OWNERS / VESSEL /AGENTS AND OR SERVANTS (INCLUDING CREW) WILL NOT BE HELD RESPONSIBLE FOR ANY DELAYS AND ALL TIME FOR SUCH DELAYS WILL BE FOR CHARTERERS ACCOUNT AND COUNT AS LAYTIME /DEMURRAGE.

4. THE NEW BL WILL HAVE TO INCLUDE FOLLOWING WORDING IN ORDER TO CLEARLY REFLECT THE ORIGIN OF THE CARGO - A+B MT OF XXXX OIL COMMINGLED/BLENDED ONBOARD OF QTY A MT OF XXXX OIL LOADED AT XXXXXX ON XX OF MONTH 20XX, AND QTY B MT OF FUEL OIL LOADED AT XXXX ON XX OF MONTH 20XX.

5. RECUT B/LS WILL BE COVERED BY THE INDEMNITY SET OUT IN THIS CLAUSE.

IF CHARTERERS EXERCISE THIS OPTION THEY WILL HOLD OWNERS HARMLESS AND KEEP THEM FULLY INDEMNIFIED AGAINST ALL CLAIMS FOR COMINGLING/BLENDING AND / OR CONTAMINATION OR QUALITY/QUANTITY DETERIORATION OR OFFSPECIFICATION RESULTING DIRECTLY FROM THE CARGO OPERATIONS PERFORMED AND ISSUE ATTACHED LETTER OF INDEMNITY TO COVER THE OPERATION/OPERATIONS.

LOI FOR BLENDING COMMINGLING ATTACHED

| | | |
|---|---|---|
| OVERAGE | : | IF ANY AT 50 % |
| LAYTIME | : | 72 HOURS |
| DEMURRAGE | : | $24,000 USD PDPR |
| OWNERS' PAYMENT DETAILS | : | FREIGHT PAYMENT DETAILS: N2 TANKERS B.V. |



**CONTACTS**

| CHARTERERS' CASUALTY AND EMERGENCY RESPONSE CONTACTS AND PROCEDURES AS PER VOYAGE | : REPORTING OF INCIDENTS UPDATED 20.08.2012<br>IF THE VESSEL IS INVOLVED IN AN INCIDENT THAT INVOLVES COLLISION, GROUNDING, POLLUTION, FIRE OR ANY OTHER EMERGENCY, LITASCO GENEVA MUST BE CONTACTED BY TELEPHONE AT THE EARLIEST OPPORTUNITY.<br><br>TELEPHONE FIRST CONTACT: DAVID WALKER<br>MOBILE PHONE: +41 79 448 92 79<br>OFFICE PHONE: +41 22 705 21 16<br><br>TELEPHONE SECOND CONTACT: THIES PETERSEN<br>MOBILE PHONE: +41 79 255 67 82<br>OFFICE PHONE: +41 22 705 24 14<br><br>TELEPHONE THIRD CONTACT: GUSTAV LIND<br>MOBILE PHONE: +41 79 370 59 54<br>OFFICE PHONE: +41 22 705 21 43 |
| OWNERS' CONTACT DETAILS: (A) EMAIL | : OPERATIONS@REEDEREI-NORD.NL |
| OWNERS' CONTACT DETAILS: (B) FAX | : +31 20 609 0881 |
| OWNERS' CONTACT DETAILS: (C) TELEPHONE: | : N/A |
| COMMISSIONS | : 2.50 PERCENT ADDRESS COMMISSION ON HIRE<br>1.25 PERCENT BROKERAGE COMMISSION TO HOWE ROBINSON PARTNERS (UK) LTD ON FREIGHT/DEADFREIGHT/DEMURRAGE |

PART II: AMENDMENTS TO EXXONMOBILVOY2005LITASCO:

AMENDMENTS / ADDITIONS / DELETIONS TO EXXONMOBILVOY2005 CHARTER PARTY

CLAUSE 1. DEFINITIONS.

CLAUSE 2. VESSEL.
35    (d) BREACH. If any of the warranties stipulated in this Clause are breached, any **DIRECT** delay resulting therefrom shall not count as laytime or,

CLAUSE 3. CLEANING.
40    (a) Owner shall clean the tanks, pipes and pumps of Vessel at its expense to the satisfaction of ~~Charterer's representative(s)~~ **INDEPENDENT SURVEYOR ACCEPTABLE BY BOTH PARTIES**. If the cargo

CLAUSE 4. VOYAGE.
51    (a) Vessel shall proceed ~~with utmost dispatch~~ **AS PER THE AGREED C/P SPEED - ABOUT 12.5 KNOTS -** to any port(s) or place(s) as ordered by Charterer in accordance with Part I (C) and there load
66    and/or to recover any **DIRECT** damages allowable in law.

CLAUSE 5. MAXIMUM CARGO.
69    All time lost and **DIRECT** expense incurred by reason of Vessel loading a quantity of cargo which puts Vessel, at any stage of the voyage(s)

CLAUSE 6. FREIGHT.

CLAUSE 7. DEADFREIGHT.

CLAUSE 8. DEMURRAGE / DEVIATION RATE.

CLAUSE 9. LOADING AND DISCHARGING PORT(S) / PLACE(S).

CLAUSE 10. ESTIMATED TIME OF ARRIVAL (ETA).
123    ESTIMATED TIME OF ARRIVAL (ETA) - **WHERE APPLICABLE**.
126    laydays specified in Part I (B), **PROVIDED DURATION OF VOYAGE PERMITS**, Master shall advise Charterer and Vessel's agent and terminal of Vessel's estimated date and time of arrival

CLAUSE 11. NOTICE OF READINESS.
151    no berth. ~~At each load port or place, the Vessel shall be fully bunkered for the intended voyage and the Notice of Readiness shall, without~~
152    ~~limitation, confirm such bunkering.~~ **VESSEL SHALL HAVE SUFFICIENT BUNKERS TO PERFORM INTENDED VOYAGE. IN CASE OF NEED FOR BUNKERING DURING LADEN PASSAGE OWNERS TO GET CHARTERERS' CONSENT PRIOR ARRANGING SUCH AN OPERATION EXCEPT IN CASE OF EMERGENCY AND STATUS OF FORCE MAJEURE.**

CLAUSE 12. CANCELLATION OF CHARTER.
153    CANCELLATION OF CHARTER. ~~If Vessel has not tendered a valid Notice of Readiness ("NOR") by 1600 hours local time on the~~
154    ~~Cancelling Date specified in Part I (B) ("Cancelling Date"), Charterer shall have the right to cancel this Charter by notifying Owner or~~
155    ~~Owner's agent of such cancellation within forty-eight (48) hours local time after expiration of the said Cancelling Date, failing which this~~
156    ~~Charter shall remain in full force and effect; in which case, laytime shall commence no earlier than forty-eight (48) hours after the tender~~
157    ~~of NOR or on the commencement of loading, whichever occurs first. Charterer's cancellation option shall continue to apply even if Vessel~~
158    ~~tenders NOR within the forty-eight (48) hour period after expiration of the Cancelling Date. However, if Vessel is delayed by reason of~~
159    ~~Charterer's change of orders pursuant to Clause 9 and/or by ice risks as stipulated in Clause 21, the Cancelling Date shall be extended,~~
160    ~~with the option of cancellation as aforesaid, by any time so directly lost. Cancellation or failure to cancel shall be without prejudice to any~~
161    ~~claims for damages Charterer may have for late tender of Vessel's services.~~ **IF DUE TO CIRCUMSTANCES VESSEL APPEARS TO BE MISSING HER CANCELLING ARE OWNERS TO NOTIFY CHARTERERS OF THE DELAY INVOLVED AND CHARTERERS TO DECLARE WITHIN 48 WORKING HOURS FROM RECEIPT OWNERS NOTIFICATION THEIR DECISION TO MAINTAIN THE CHARTER PARTY OR CANCEL SAME WITHOUT ANY RECOURSE / RESERVATION BY EITHER PARTY.**

CLAUSE 13. LAYTIME / DEMURRAGE.
168    commencement of loading and the amount of ~~time~~ **LAYTIME** from commencement of loading until 0600 hours local time on the commencing date
173    shall be promptly effected. If Vessel is delayed in excess of ~~two (2)~~ **THREE (3)** hours after such disconnection of cargo hoses solely for Charterer's

CLAUSE 14. LAYTIME / DEMURRAGE CONSEQUENCES.
201    (ii) On an inward passage, including, but not limited to, ~~awaiting daylight, tide, tugs or pilot,~~ and moving from anchorage or
202    other waiting place, even if lightering has taken place at the anchorage or other waiting place, until Vessel's Arrival in **FIRST** Berth;
206    (iv) Due to Owner ~~or port authority~~ prohibiting loading or discharging;

CLAUSE 15. LIGHTERING / CARGO ADVISOR.
251    shall commence when Vessel arrives at the lightering site designated by Charterer and shall end when disconnecting of the cargo hoses **AND MOORING LINES RELEASED AND CHARTERERS AND THEIR AGENTS PERSONNEL DISEMBARK**
260    additional to those specified in Part I (D) and the freight rate for the voyage shall be the same as if the lightering had not taken place**, UNLESS IT IS SO DESIGNATED BY WORLDSCALE**. Charterer,

CLAUSE 16. LOADING / DISCHARGING PLACE.

**CLAUSE 17. CARGO MEASUREMENT.**

**CLAUSE 18. PUMPING IN AND OUT.**

343    rail that the Vessel can discharge at, but always at ~~a minimum~~ **AN AVERAGE** of 100 psi, **EXCLUDING STRIPPING AND COW,** during the entire period of discharge provided shore facilities

344    permit. **IN ADDITION, THERE IS A THREE HOUR PER GRADE ALLOWANCE FOR STRIPPING, INCLUSIVE OF STOPS FOR INTERNAL STRIPPING.** All time lost as a result of Vessel being unable to discharge its cargo in accordance with the pumping warranty above shall not

362    with respect thereto **AS SECURITY FOR CARGO CLAIMS.** The quantity and quality of such liquid hydrocarbon material shall be determined by a mutually agreeable

364    available, or otherwise by wedge formula. **SHOULD OWNERS ASSERT THAT ROB CARGO IS NOT REACHABLE OR PUMPABLE, OWNER SHALL PROVIDE SATISFACTORY DOCUMENTARY EVIDENCE TO DEMONSTRATE SAME.**

**CLAUSE 19. BACK LOADING.**

365    ~~BACK LOADING. Charterer shall have the option of loading Vessel with a part cargo at any discharging port or place to which Vessel~~
366    ~~may have been ordered, provided that such part cargo is as described in Part I (F) and is compatible with cargo then on board. Owner~~
367    ~~shall discharge such part cargo at any other discharging port(s) or place(s) previously nominated, provided such port(s) or place(s) lie~~
368    ~~within the rotation of the discharging ports or places previously nominated. If this option is exercised, additional time consumed awaiting berth and/or cargo~~
369    ~~and/or tank preparation and/or loading and discharging such part cargo shall count as laytime or, if Vessel is on demurrage, as time on~~
370    ~~demurrage. Any additional expenses, including port charges, incurred as sole result of loading and discharging such part cargo shall be~~
371    ~~for Charterer's account.~~

**CLAUSE 20. DUES, TAXES AND OTHER CHARGES.**

379    (b) ~~Notwithstanding the provisions of Clause 20(a),~~ dockage and wharfage shall be deemed included in the freight rate specified in Part I (G), **UNLESS OTHERWISE SPECIFIED IN WORLDSCALE.**

**CLAUSE 21. ICE.**

380    ~~ICE.~~
381    ~~(a) DURING VOYAGE. In case a nominated port or place of loading or discharging should be inaccessible due to ice, Master shall~~
382    ~~immediately notify Charterer, requesting revised orders and shall remain safely outside the ice bound area. Charterer shall give orders for~~
383    ~~another port or place which is free from ice and where there are facilities for the loading or discharging of the cargo in bulk. In this event,~~
384    ~~freight shall be paid at the rate stipulated in Part I (G) from or to such alternate port or place and any time by which the steaming time~~
385    ~~from or to such port or place exceeds that which would have been taken if the Vessel had been ordered to proceed from or to such port~~
386    ~~or place in the first instance shall be compensated at the Deviation Rate per running day and pro rata thereof. In addition, Charterer shall~~
387    ~~pay for extra bunkers consumed during such excess time at Owner's documented actual replacement cost for such bunkers at the port~~
388    ~~where bunkers are next taken.~~
389    ~~(b) AT PORT. If, on or after Vessel's arrival at the loading or discharging port or place, it is dangerous to remain at such port or place for~~
390    ~~fear of Vessel being frozen in or damaged, Master shall notify Charterer who shall give orders for Vessel either to proceed to another port~~
391    ~~or place where there is no danger of ice and where there are facilities for the loading or discharging of the cargo in bulk or to remain at~~
392    ~~such original port or place at Charterer's risk. If Vessel is ordered to proceed to another port or place, the sum in respect of freight and~~
393    ~~delay to be paid by Charterer shall be as stipulated in Paragraph (a) of this Clause. If Vessel remains at such original port or place, any~~
394    ~~time so lost on account of ice shall count as laytime or, if Vessel is on demurrage, as time on demurrage.~~

**CLAUSE 22. DRY CARGO.**

395    ~~DRY CARGO. Charterer has the option of shipping packaged and/or general cargo (including oils and bitumen in drums) in the available~~
396    ~~dry cargo space. Freight shall be payable on such cargo in accordance with Clause 6 at the Base Freight Rate and Charterer shall pay,~~
397    ~~in addition, all expenses, including port dues, incurred solely as a result of the packaged and/or general cargo being carried. The time~~
398    ~~used loading and discharging such dry cargo shall count as laytime or, if Vessel is on demurrage, as time on demurrage, but only to the~~
399    ~~extent that such time is not concurrent with time used loading and/or discharging the liquid cargo carried hereunder.~~

**CLAUSE 23. QUARANTINE.**

**CLAUSE 24. INSPECTION.**

**CLAUSE 25. HEAT.**

**CLAUSE 26. BUNKERS.**

424    they are so available at competitive prices **AND TERMS.** In the event lower prices are quoted to Owner by any supplier at the port(s) in question, Owner

**CLAUSE 27. BILLS OF LADING.**

454    ("Rules") and, as to matters not provided for by those Rules, according to the laws and usages at the port of **LONDON** ~~New York~~; provided that,

461    Rules. If a General Average statement is required, it shall be prepared at such port by an Adjuster from the port of **LONDON** ~~New York~~ appointed by

496    indemnity shall meet the requirements of Paragraph (e) of this Clause, ~~and shall be limited in value to 200 per cent of the CIF value of~~
497    ~~the cargo.~~
498    ~~(e) The indemnity referred to in Paragraph (d) of this Clause shall be a short form indemnity document incorporating the terms and~~
499    ~~conditions set forth in Clause 27(f) of this Charter. This document (which must be properly filled in) shall be given to Owner by telex,~~
500    ~~electronic mail, letter or facsimile as requested by Owner and be in the exact form quoted below, which document, when transmitted,~~
501    ~~shall be deemed to have been signed by person acting on behalf of Charterer.~~
502
503    ~~"VOYAGE CHARTER OF~~
504
505    ~~DATED _____~~
506

507 BETWEEN _____, AS OWNER
508 AND
509 _____, AS CHARTERER
511 Reference is made to the cargo ('Cargo') now laden aboard the above Vessel ('Vessel'). Pursuant to Clause 27(e) of the above captioned
512 Charter ('Charter'), the undersigned requests that Owner(s) of the Vessel deliver the Cargo at _____
513 unto _____ without prior discharge site presentation to the Vessel of all original bills of lading issued for
514 the Cargo appropriately endorsed for such delivery and/or at a discharge port or site other than one specifically named in said bills of
515 lading.
516 In consideration of such delivery, the undersigned hereby gives an indemnity containing the terms and conditions set forth in Clause 27(f)
517 of the Charter ('Indemnity Terms And Conditions'). The Indemnity Terms And Conditions are deemed incorporated in and made a part of
518 this document. The term 'Indemnifier' in the Indemnity Terms And Conditions shall be deemed to refer to the undersigned. The term
519 'Cargo' and the phrase 'Requested Delivery' in the Indemnity Terms And Conditions shall be deemed to, respectively, mean the Cargo
520 and the delivery request set forth in the preceding paragraph of this document. The term 'Ship' as used in the Indemnity Terms And
521 Conditions shall be deemed to refer to the Vessel. Print the following information:
523 Name of Charterer _____
524
525 Name of Person Acting on Behalf of Charterer _____
526
527 Authority/Title of Above Person _____
528
529 Date Indemnity Given _____"
530 (f) Indemnity Terms and Conditions.
531 "1. Indemnifier shall indemnify and hold harmless the Owner of the Ship, any chartered Owner of the Ship, the Ship operator, the Ship
532 Master, the Ship underwriters and the Ship agents (hereinafter jointly and individually called 'Indemnitees') in respect of any liability, loss,
533 damage, costs (including, but not limited, to Attorney/Client costs) and other expense of whatever nature which the Indemnitees may
534 sustain or incur by reason of the Requested Delivery.
535 2. In the event of any legal action or proceedings being commenced against the Indemnitees in connection with the Requested Delivery,
536 Indemnifier shall provide Indemnitees from time to time, on the Indemnitees' demand, with sufficient funds to defend same.
537 3. If the Ship or any other vessel or other property belonging to the Indemnitees should be arrested or detained or if the arrest or
538 detention thereof should be threatened for any claim in connection with the Requested Delivery, the Indemnifier shall provide, upon
539 demand of the Indemnitees, such bail or other security as may be required to prevent such arrest(s) or detention(s) or to secure the
540 release of the Ship or such vessel or other property from arrest or detention, and shall indemnify and hold harmless the Indemnitees
541 against and from any loss, damage, costs (including but not limited to Attorney/Client costs) and other expense resulting from such arrest
542 or detention or threatened arrest or detention, whether or not same may be justified and to pay to the Indemnitees, on the Indemnitees'
543 demand, the amount of such loss, damages, costs and/or expense.
544 4. This indemnity shall automatically become null and void, and Charterer's liability hereunder shall cease, upon presentation of all
545 original Bills of Lading duly endorsed to reflect delivery of Cargo in accordance with the Requested Delivery, or upon the expiration of
546 36 months after completion of discharge, whichever occurs first; provided that no legal proceedings arising from delivery of the Cargo
547 in accordance with the Requested Delivery have been instituted against the Indemnitees and/or Vessel within such 36 month period.
548 Owner shall advise Charterer with reasonable dispatch in writing if any proceedings are instituted.
549 5. The within indemnity shall be governed and construed in accordance with the internal substantive laws of the State of New York, USA.
550 The Indemnitees may, but shall not be obligated to, bring any legal action or proceeding with respect to such indemnity in the Courts of
551 the State of New York, USA or in the U.S. Federal Court situated therein and the Indemnifier unconditionally and generally accepts in
552 regard to such legal action or proceeding, for itself and its property, the jurisdiction and venue of the aforesaid courts."
**LOI AS PER OWNERS P&I CLUB WORDING.**

CLAUSE 28. WAR.

CLAUSE 29. EXCEPTIONS.

CLAUSE 30. LIEN.

CLAUSE 31. AGENTS.
589 AGENTS. Unless otherwise agreed, Charterer shall nominate Vessel's agents at all port(s) and place(s), **PROVIDED MARKET COMPETITIVE, IF TURKEY OR ISRAEL, THEN ONERS AGENTS**. Such agents shall be appointed,

CLAUSE 32. ASSIGNMENT / SUBLET.

CLAUSE 33. CLEAN SEAS.

CLAUSE 34. DRUG AND ALCOHOL POLICY.

CLAUSE 35. ARBITRATION.
642 ARBITRATION  - **SEE ADDITIONAL LITASCO CLS 26.ARBITRATION ATTACHED.**
643 (a) Any and all differences and disputes of whatsoever nature arising out of this Charter shall be put to arbitration in the City of New York,
644 pursuant to the laws relating to arbitration there in force, before a board of three persons, consisting of one arbitrator to be appointed
645 by Owner, one by Charterer and one by the two so chosen. The decision of any two of the three on any point or points shall be final.
646 Until such time as the arbitrators finally close the hearings either party shall have the right by written notice served on the
647 arbitrators and on the other party to specify further disputes or differences under this Charter for hearing and determination. The
648 arbitrators may grant any relief which they, or a majority of them, deem just and equitable and within the scope of the agreement of the
649 parties, including, but not limited to, specific performance. Awards made in pursuance to this Clause may include costs, including a
650 reasonable allowance for attorney's fees, and judgment may be entered upon any award made hereunder in any Court having jurisdiction
651 in the premises.
652 (b) Where cargo carried pursuant to this Charter is owned by an Affiliate, any claim related to the carriage of such cargo hereunder shall
653 be subject to this Clause 35, said Affiliate having authorized Charterer to so agree on Affiliate's behalf. If this subparagraph (b) applies,

654 the term "Charterer" in subparagraph (a) of this Clause 35 shall be taken to mean the aforementioned Affiliate.

CLAUSE 36. WAIVER OF CLAIMS.
655 WAIVER OF CLAIMS - SEE ADDITIONAL LITASCO CLS 2. CLAIMS ATTACHED. Any claim for freight, deadfreight, demurrage and/or charges or expenses under this Charter shall be deemed
656 waived, extinguished and absolutely barred if such claim is not received by Charterer or Owner, as the case may be, in writing with
657 supporting documentation within 90 days from the date of final discharge of the cargo on the voyage with respect to which said claim
658 arises. This Clause shall not apply with respect to claims for damage, loss or shortage of cargo.

CLAUSE 37. BUSINESS POLICY.

CLAUSE 38. INTERPRETATION.

CLAUSE 39. CHARTER ADMINISTRATION.

CLAUSE LITASCO - 1. QUESTIONNAIRE AND VESSEL DESCRIPTION
12 AMENDMENT OR MODIFICATION TO THE OWNERS' ANSWERS. IN THE EVENT ANY SUCH
13 CHANGE, AMENDMENT OR MODIFICATION IS NECESSARY, WHETHER NOTIFIED TO THE
14 CHARTERERS OR NOT, OR IF THE VESSEL IS MIS-DESCRIBED OR THERE IS ANY OTHER
15 MISSTATEMENT IN THE QUESTIONNAIRE 88 (VERSION 2), THE CHARTERERS SHALL HAVE
16 THE OPTION, BUT WITHOUT PREJUDICE TO ANY OTHER CLAIM, TO CANCEL THE
17 CHARTERPARTY WITHOUT ANY FURTHER LIABILITY WHATSOEVER.

CLAUSE LITASCO - 2. CLAIMS
22 RELEASED FROM LIABILITY IN RESPECT OF ANY **DEMURRAGE** CLAIMS OWNERS MAY HAVE UNDER THIS
23 CHARTERPARTY (SUCH AS, BUT NOT LIMITED TO, CLAIMS FOR DEADFREIGHT,
24 DEMURRAGE, SHIFTING OR PORT EXPENSES) UNLESS A CLAIM HAS BEEN PRESENTED IN
25 WRITING TO CHARTERERS WITH SUPPORTING DOCUMENTATION WITHIN NINETY (90) DAYS
26 FROM COMPLETION OF DISCHARGE OF THE CARGO UNDER THIS CHARTERPARTY **AND 120 DAYS FOR OTHER CLAIMS PROVIDED SUPPORTING DOCUMENTS ARE AVAILABLE (EXCLUDING B/L CLAIMS).**
28 B.FOR DEMURRAGE CLAIMS SUPPORTING DOCUMENTS MUST INCLUDE
29 1.OWNERS' CALCULATION OF THE DEMURRAGE DUE; AND
30 2.THE CERTIFICATE OF NOTICE OF READINESS TENDERED AT EACH PORT OF LOADING
31 AND DISCHARGE; AND
32 3.THE STATEMENT OF FACTS FOR EACH LOADING AND DISCHARGE BERTH WHICH MUST
33 BE SIGNED BY THE MASTER OR THE VESSEL'S AGENTS AND, WHEREVER POSSIBLE, THE
34 TERMINAL; AND
35 4.THE VESSEL'S PUMPING LOGS FOR EACH DISCHARGE BERTH; AND
36 5.ALL LETTERS OF PROTEST ISSUED BY THE VESSEL OR THE TERMINAL. THE NOR.

CLAUSE LITASCO - 3. STATEMENT OF FACTS CLAUSE

CLAUSE LITASCO - 4. WAITING FOR ORDERS CLAUSE
49 OR DEMURRAGE, IF VESSEL ON DEMURRAGE. ANY EXTRA EXPENSES AND BUNKERS CONSUMED TO BE PAID TOGETHER WITH FREIGHT AS PER OWNERS PRELIMINARY INVOICE AND RELEVANT DOCUMENTS TO BE SUBMITTED IN DUE COURSE.

CLAUSE LITASCO - 5. ADHERENCE TO VOYAGE INSTRUCTIONS CLAUSE
53 THE OWNERS SHALL BE RESPONSIBLE FOR ANY TIME, INDIRECT, DIRECT, PROVEN, AND
54 DOCUMENTED COSTS, DELAYS OR LOSS SUFFERED BY THE CHARTERERS DUE TO
56 SHALL BE RESPONSIBLE FOR ANY TIME, COSTS, DELAYS OR LOSS ASSOCIATED WITH
65 PRIOR TO RESUMPTION OF CARGO OPERATIONS. **ANY TIME LOST TO COUNT IN FULL AS USED LAYTIME OR DEMURRAGE, IF VESSEL ON DEMURRAGE. ANY EXPENSES AND BUNKERS CONSUMED TO BE PAID TOGETHER WITH FREIGHT AS PER OWNERS PRELIMINARY INVOICE AND RELEVANT DOCUMENTS TO BE SUBMITTED IN DUE COURSE.**

CLAUSE LITASCO - 6. HEATING
67 6.HEATING
68
69 THE MAXIMUM TEMPERATURE REFERRED TO IN PART II, CLAUSE 25 IS AMENDED TO
70 160°F/71°C.

CLAUSE LITASCO - 7. BLENDING/COMMINGLING/ADDITIVATION/DYEING/PPD
72 7.BLENDING/COMMINGLING/ADDITIVATION/DYEING/PPD
73
74 A.CHARTERERS SHALL HAVE THE OPTION TO BLEND AND/OR COMMINGLE AND/OR INJECT
75 ADDITIVES AND/OR ADD DYE AND/OR ADD PPD ("BLENDING ACTIVITIES") TO THE
76 CARGO ONBOARD THE VESSEL, PROVIDED THAT SUCH BLENDING ACTIVITIES ARE WITHIN
77 THE TECHNICAL CAPABILITY OF THE VESSEL AND THAT THE MASTER REASONABLY
78 CONSIDERS IT SAFE TO DO SO.
80 B.CHARTERERS WILL INDEMNIFY OWNERS AGAINST LIABILITY FOR ANY CARGO QUALITY
81 CLAIMS THAT MAY ARISE AS A DIRECT RESULT OF THESE ONBOARD BLENDING
82 ACTIVITIES, INCLUDING CARGO QUALITY CLAIMS FROM A THIRD PARTY.
83
84 C.ANY ADDITIONAL CHARGES THAT RESULT DIRECTLY FROM CHARTERERS CARRYING OUT
85 BLENDING ACTIVITIES, INCLUDING DEMURRAGE, PORT CHARGES, EXTRA AGENCY FEES,
86 CONSUMED BUNKERS AT DOCUMENTED REPLACEMENT COST AND WHICH ARE NOT INCLUDED

87    IN THE FREIGHT AGREED UNDER PART I(C) OF THIS CHARTERPARTY SHALL BE FOR THE
88    ACCOUNT OF CHARTERERS.
89
90    CHARTERERS WILL SURRENDER TO MASTER ALL ORIGINAL BILLS OF LADING FOR THE
91    UNBLENDED CARGO AND THE MASTER WILL PROVIDE NEW CONSOLIDATED BILLS OF
92    LADING ON COMPLETION OF BLENDING ACTIVITIES WHICH BILLS OF LADING WILL
93    REFLECT THE ACTUAL GRADE THAT HAS BEEN BLENDED/COMMINGLED/INJECTED/DYED/HAS
94    HAD PPD ADDED.

CLAUSE LITASCO - 8. MTBE CLAUSE
96    8.MTBE CLAUSE
97
98    PROVIDED THE CARGO UNDER THIS C/P IS LOADED WITH AN MTBE CONTENT LESS
99    THAN 50 PPM, OWNERS GUARANTEE THAT VESSEL WILL DISCHARGE SAME CARGO OF
100   NAPHTHA, WITH MAX MTBE CONTENT OF 50 PPM. CHARTS WANT TO HIGHLIGHT THE
101   IMPORTANCE OF CLEANING TANKS, LINES AND PUMPS TO AVOID OR MINIMIZE TRACES
102   OF MTBE, ALWAYS IN ACCORDANCE WITH THE ABOVE.

CLAUSE LITASCO - 9. DOW SHIPPING CLAUSE AS PER OPEN-SPEC NAPHTHA
104   9.DOW SHIPPING CLAUSE AS PER OPEN-SPEC NAPHTHA
105
106   (A) PERFORMING VESSEL TO BE CAPABLE OF TENDERING N.O.R. AT DISCHARGE PORT
107   WITHIN 15 YEARS OF THE DATE OF THE VESSEL'S ORIGINAL COMMISSION, UNLESS
108   VESSEL IS OWNED BY, OR ON TIMECHARTER TO A MAJOR (I.E. A MULTI NATIONAL
109   VERTICALLY INTEGRATED OIL COMPANY). IF SO, THEN VESSEL SHOULD TENDER N.O.R.
110   WITHIN 20 YEARS OF THE DATE OF ITS ORIGINAL COMMISSION.
111
112   VESSEL TO DISCHARGE HER ENTIRE CARGO WITHOUT USING HER RECIPROCATING
113   PUMPS, IF ANY.
175   VESSEL TO BE ABLE TO UNLOAD HER ENTIRE CARGO WITHIN 24 HOURS
116   OR MAINTAIN A PRESSURE OF MIN 100 PSI AT SHIPS RAIL.
117
118   (B) VESSEL TO BE FULLY SUITABLE FOR TRANSPORTING NAPHTHA.
119
120   (C) VESSEL TO RADIO 72/48/24 HOURS NOTICES THROUGH AGENTS TO RECEIVERS, IF
127   KNOWN.
122
123   (D) VESSEL MUST OPERATE A CLOSED LOADING SYSTEM AT ALL TIMES AS DEFINED
124   BELOW :
125   CLOSED LOADING REFERS TO THE PROCEDURES WHEREBY TANKERS CONDUCT ALL
126   CARGO OPERATIONS, WHETHER LOADING, DISCHARGING OR BALLASTING, WITH TANK
127   APERTURES CLOSED AND WITH VAPOUR BEING EMITTED ONLY BY MEANS OF THE
128   DEDICATED VENTING SYSTEM WHICH IS DESIGNED TO DISPERSE VAPOUR CLEAR OF
129   WORKING AREAS AND POSSIBLE IGNITION SOURCES. ALL ULLAGE, SOUNDING AND
130   SIGHTING PORTS MUST BE SECURELY CLOSED.

CLAUSE LITASCO - 10. CARGO TRANSFER CLAUSE

CLAUSE LITASCO - 11. PANAMA CANAL CLAUSE
149   11.PANAMA CANAL CLAUSE
150
151   ANY WAITING TIME FOR TRANSITING PANAMA CANAL IN LADEN CONDITION IN
152   EXCESS OF 24 HOURS IS FOR CHARTERERS ACCOUNT. WAITING TIME SHALL BE
153   CALCULATED ON THE BASIS OF THE DEMURRAGE RATE AND PAID TOGETHER WITH
154   FREIGHT.
155
156   IF CHARTERERS DO NOT GIVE TIMELY ORDERS TO TRANSIT THE PANAMA
157   CANAL, ALL WAITING AND DELAYS OCCURRED ARE FOR CHRTS ACCOUNT
158   REGARDLESS IF IT IS LESS THAN 24 HOURS OR NOT.
159
160   PRE-BOOKING FEE, IF IT IS REQUIRED, TO BE SPLIT TO CHARTERERS AND
161   OWNERS AND PAID TOGETHER WITH FREIGHT

CLAUSE LITASCO - 12. MISS RIVER CLAUSE
163   12.MISS RIVER CLAUSE
164
165   FOR MISS RIVER PORTS, SW PASS WILL BE CONSIDERED THE NORMAL ANCHORAGE
166   AND OR WAITING AREA FOR VESSEL TO TENDER NOTICE OF READINESS AND
167   LAYTIME TO COMMENCE 6 HOURS AFTER TENDERING NOR AT SW PASS OR WHEN
168   THE VESSEL IS ALL FAST WHICHEVER EARLIER.

CLAUSE LITASCO - 13. TURKISH STRAIGHTS CLAUSE
172   ANY WAITING TIME FOR TRANSITING BOSPOROUS/SEA OF MARMARA/DARDANELLES
173   (TURKISH STRAITS) IN BALLAST AND LADEN CONDITIONS IN EXCESS OF 48
174   HOURS TO COUNT AS LAYTIME OR DEMURRAGE IF ON DEMURRAGE, BUT CHARTERERS

175 ALWAYS TO HAVE THE FULL BENEFIT OF CP LAYTIME, EXTRA TIME USED TO BE PAID
176 TOGETHER WITH FREIGHT AS PER OWNERS INVOICE, WHICH LATER TO BE SUPPORTED BY
177 HARD COPY DOCUMENTATION. ANY DELAYS IN EXCESS OF 24 HOURS ON PASSING
178 TURKISH STRAITS NORTH BOUND TO BE ADDED TO LAYCAN. ANY DELAY/WAITING IN PASSING THE TURKISH STRAITS IN
EXCESS OF 48 HOURS TOTAL NORTHBOUND/SOUTHBOUND, (IF DISCH X BSEA 24 HRS/SOM 36 HRS - IF VSL N/B IN LADEN
CONDITION THEN IF B.SEA DISCHARGE 24 HRS / IF SOM 12 HRS - IF VSL IS OPENS IN B.SEA THEN 24 HRS / IF SOM 12 HOURS)
TO BE PAID ON DEMURRAGE RATE, AND THE COST OF BUNKERS CONSUMED DURING SUCH ADDITIONAL TIME TOGETHER
WITH ANY EXTRAORDINARY EXPENSES IN CONNECTION WITH COMPLYING WITH CHARTERERS VOYAGE ORDERS AS
REGARDS THE TURKISH STRAITS TO BE FOR CHARTERERS' ACCOUNT AND TO BE PAID TOGETHER WITH FREIGHT, [I.E
ADDITIONAL TUGS, PILOTS ETC] SUPPORTING DOCUMENTS TO FOLLOW.

IF VESSEL IS DELAYED BY REASON OF DELAYS IN PASSING THE TURKISH STRAITS NORTHBOUND, THE SAID CANCELLING
DATE SHALL BE EXTENDED BY ANY TIME SO DIRECTLY LOST (PROVIDED VSL ARRIVES AT BOSPHORUS CANAKKALE WITHIN
THE 3RD DECEMBER 2021 AT 14TH MARCH 2018 AT 23:59 HRS LT) OWNERS TO APPOINT THEIR AGENTS IN TURKISH STRAITS.

CLAUSE LITASCO - 14. SOX EMISSION CONTROL AREAS
180 14.SOX EMISSION CONTROL AREAS - **TO BE DISCUSSED CASE BY CASE.**

CLAUSE LITASCO - 15. CASUALTY REPORT CLAUSE

CLAUSE LITASCO - 16. ITF OR EQUIVALENT CLAUSE

CLAUSE LITASCO - 17. VITOL VACUUM GASOIL (VGO)/ LOW SULPHUR WAXY RESIDUE (LSWR) CLAUSE
209 17.VITOL VACUUM GASOIL (VGO)/ LOW SULPHUR WAXY RESIDUE (LSWR) CLAUSE
210
211 IF LOADING VGO OR LSWR AND THE PREVIOUS CARGO WAS FUEL OIL, MARINE DIESEL
212 OIL, VGO OR GASOIL, IT IS ESSENTIAL THAT NO TANK CLEANING IS PERFORMED
213 PRIOR TO LOADING EXCEPT TO ENSURE THAT ALL TANKS, LINES AND PUMPS ARE
214 STRIPPED DRY AND DRAINED OF ANY PREVIOUS CARGO AND THAT R.O.B./O.B.Q.
215 SHOULD NOT EXCEED 0.1 PER CENT OF CARGO QUANTITY AND THAT THESE SHOULD NOT
216 CONTAIN WATER.
217
218 AFTER ALL OTHER CARGOES, THE FOLLOWING TANK CLEANING MUST BE PERFORMED.
219
220 I. HOT MACHINE WASH ALL TANKS DESIGNATED TO CARRY VGO/LSWR (WATER PRESSURE
221 150 PSI, TEMPERATURE 150 DEGREES FAHRENHEIT).
222
223 II. STRIP TANKS COMPLETELY DRY AND DRAIN ALL LINES AND PUMPS OF WATER.
224
225 III. A) THOROUGHLY WASH ALL TANKS, LINES AND PUMPS DESIGNATED FOR VGO/LSWR
226 WITH FRESH WATER TO ELIMINATE ALL TRACES OF SALT WATER.
227 B) DRAIN PUMPS AND LINES.
228 C) DRY OUT TANKS.
230 IV. IRRESPECTIVE OF PREVIOUS CARGO, WHERE SALT WATER BALLAST HAS BEEN
231 LOADED INTO CARGO TANKS DESIGNATED FOR VGO/LSWR, THE VESSEL SHALL:
232 A.ON COMPLETION OF DE BALLASTING STRIP TANKS DRY.
233 B.DRAIN PUMPS AND LINES.
234 C.FRESH WATER RINSE ALL SALT WATER CONTAMINATED TANKS, LINES AND PUMPS.
235 D.DRAIN PUMPS AND LINES.
236 E.DRY OUT TANKS.
237 F.WHERE POSSIBLE, LOAD FIRST INTO TANKS WHICH PREVIOUSLY CONTAINED BALLAST
238 TO AT LEAST 25 PCT FULL BEFORE SWITCHING TO OTHER TANKS.
239
240 V. REGARDLESS OF PREVIOUS CARGO, PRIOR TO LOADING, ALL HEATING COILS MUST
241 BE BLOWN THROUGH WITH STEAM TO ENSURE THERE IS NO ENTRAPMENT OF SALT WATER
242 THROUGH HEATING COIL LEAKAGE.
243
244 VI. HEATING: THROUGHOUT THE VOYAGE AND DISCHARGE, THE VESSEL SHOULD
245 MAINTAIN LOADED TEMPERATURE OR A TEMPERATURE OF PLUS 15 DEGREES CELSIUS
246 HIGHER THAN CARGO POUR POINT WHICHEVER IS HIGHER.

CLAUSE LITASCO - 18. EXXON BLENDING CLAUSE (AMENDED) FOR LITASCO CRUDE LIFTINGS
248 18.EXXON BLENDING CLAUSE (AMENDED) FOR LITASCO CRUDE LIFTINGS
249
250 CHARTERER SHALL HAVE THE OPTION TO BLEND THE CARGO ONBOARD THE VESSEL AT
257 LOADPORT BY CO MINGLING THE CARGO, PROVIDED THAT SUCH BLENDING IS WITHIN
252 THE TECHNICAL CAPABILITY OF THE VESSEL AND THAT THE MASTER CONSIDERS IT
253 SAFE TO DO SO. CHARTERER INDEMNIFIES THE OWNER, VESSEL AND MASTER AGAINST
254 LIABILITY FOR ANY CARGO QUALITY AND QUANTITY CLAIMS THAT MAY ARISE AS A
255 DIRECT RESULT OF THIS ONBOARD BLENDING, INCLUDING CARGO QUALITY CLAIMS FROM
256 A THIRD PARTY. ANY ADDITIONAL CHARGES THAT RESULT DIRECTLY FROM CHARTERER
257 EXERCISING THIS ONBOARD BLENDING OPTION, INCLUDING DEMURRAGE, PORT CHARGES,
258 EXTRA AGENCY FEES, CONSUMED BUNKERS AT DOCUMENTED REPLACEMENT COST, ETC,
259 AND WHICH ARE NOT INCLUDED IN THE FREIGHT AGREED UNDER PART I (G) OF THIS
260 CHARTER PARTY, SHALL BE FOR THE ACCOUNT OF CHARTERER. CHARTERER WILL
261 SURRENDER TO MASTER ALL ORIGINAL BILLS OF LADING FOR THE UNBLENDED CARGO

262 AND THE MASTER WILL PROVIDE NEW CONSOLIDATED BILLS OF LADING ON COMPLETION
263 OF BLENDING OPERATIONS, WHICH BILLS OF LADING WILL REFLECT THE ACTUAL GRADE
264 THAT HAS BEEN BLENDED.
265
266 BILLS OF LADING TO SHOW RUSSIAN EXPORT BLEND CRUDE OIL.

**CLAUSE LITASCO - 19. EXXON STORAGE CLAUSE**
268 19.EXXON STORAGE CLAUSE
269
270 1.CHARTERER SHALL HAVE THE OPTION OF REQUIRING THE VESSEL TO WAIT EN ROUTE
271 AT ONE OR MORE PLACES AND/OR DISCHARGE AREAS AS FLOATING STORAGE AT A SAFE
272 ANCHORAGE. THE PERIOD OF STORAGE SHALL BE FOR UP TO _____ DAYS WITH
273 CHARTERER'S OPTION TO TERMINATE STORAGE ON GIVING OWNER _____ DAYS NOTICE.
274
275 2.IN THE EVENT CHARTERER EXERCISES THE OPTION TO UTILIZE VESSEL AS STORAGE
276 AT A PLACE EN ROUTE, CHARTERER NEED ONLY GIVE MINIMAL NOTICE. IF CHARTERER
277 WISH TO UTILIZE VESSEL FOR STORAGE AT THE DISCHARGE AREA, THEN CHARTERER
278 SHALL, IN THIS CASE, GIVE MINIMUM _____ DAYS NOTICE.
279
280 3.HIRE FOR STORAGE SHALL BE PAID FOR AT US DOLLARS _____ PER DAY FOR
281 THE FIRST _____ DAYS, OR PRO RATA, AND PAYMENTS SHALL BE MADE AT
282 COMPLETION OF EACH FIFTEEN (15) DAY PERIOD AFTER ARRIVAL AT STORAGE AREA.
284 4.IF VESSEL IS REQUIRED TO WAIT ON ROUTE, 50% OF THE OCEAN FREIGHT SHALL
285 BE PAYABLE TO OWNER NOT LATER THAN DATE WHICH WOULD BE EQUIVALENT TO THAT
286 OF FOUR DAYS AFTER VESSEL'S THEORETICAL ARRIVAL DATE AT DISCHARGE POINT. IF
287 THE VESSEL IS SUBSEQUENTLY REQUIRED TO FLOAT AT THE DISCHARGE AREA, THE
288 BALANCE OF FRIGHT UP TO 80% SHALL BE PAYABLE UPON ARRIVAL AT STORAGE AREA.
289 THE REMAINDER OF FREIGHT IS DUE UPON DISCHARGE.
290
297 5.HOTEL BUNKERS SHALL BE FOR OWNER'S ACCOUNT
292
293 6.PLUS US DOLLARS _____ PER DAY OR PRO RATA IF VESSEL IS REQUIRED TO
294 STEAM AS BELOW:
295
296 A.AS REQUESTED BY CHARTERER
297
298 B.AT MASTER'S DISCRETION SHOULD THE VESSEL BE UNABLE TO ANCHOR OR REMAIN
299 AT ANCHOR AT THE DESIGNATED LOCATION DUE TO WEATHER CONDITIONS, BOTTOM
300 CONDITIONS OR ANY OTHER FACTOR WHICH, IN THE MASTER'S JUDGEMENT REPRESENTS
301 AN UNSAFE SITUATION.
302
303 C.NO ADDITIONAL PAYMENT REQUIRED FOR STEAMING TO THE INITIAL DISCHARGE
304 PORTS OR BERTHS AS PROVIDED IN CHARTER PARTY DATED _____ PROVIDED THE
305 CHARTERER IS RESPONSIBLE FOR ANY AND ALL DEVIATION INCURRED.
307 D.OWNER WARRANTS THAT VESSEL'S ANCHOR AND ANCHOR CHAINS ARE IN GOOD
308 OPERATIONAL CONDITION AND WILL BE MAINTAINED THROUGHOUT CHARTER PARTY.
309
310 7.PLUS US DOLLARS _____ PER DAY OR PRO RATA IF VESSEL IS REQUIRED BY
311 CHARTERER TO CIRCULATE THE CARGO WITHIN THE VESSEL'S CARGO AS PROVIDED FOR
312 UNDER CHARTER PARTY DATED _____ -SHOULD THE VESSEL BE REQUIRED TO RELOAD
313 AND PUMP ONE OR MORE TIMES DURING THE STORAGE PERIOD, THE SAME RATE TO
314 APPLY FOR ALL SUCH DISCHARGE WHETHER THE VESSEL IS PUMPING ALONGSIDE THE
315 DOCK OR BY SHIP TO SHIP TRANSFER.
316
317 8.SHOULD THE PORT AUTHORITIES REQUIRE THE VESSEL TO MAINTAIN THE ENGINE ON
318 STANDBY WITH THE STEAM ON THE BOILERS AT THE STORAGE AREAS, THE CHARTERER
319 AGREES TO PAY OWNER ONE HALF THE RATE IN ITEM 6.
320
321 ALL OTHER TERMS, CONDITIONS AND EXCEPTIONS TO THE CHARTER PARTY ARE TO
322 REMAIN UNALTERED AND IN FULL FORCE AND EFFECT.

**CLAUSE LITASCO - 20. ICE CLAUSE**
324 20.ICE CLAUSE
325
326 VESSEL NOT TO FORCE ICE BUT TO FOLLOW ICEBREAKERS AS FAR AS, IN THE
327 REASONABLE OPINION OF THE MASTER, THE ICE CHANNEL IS SUFFICIENTLY WIDE. AT
328 EACH PORT VESSEL IS ENTITLED TO TENDER NOR ON ARRIVAL PILOT STATION OR
329 CUSTOMARY ANCHORAGE OR AT EDGE OF ICE WHICHEVER OCCURS FIRST. ALL TIME
330 LOST WHILST OPERATING IN ICE, WAITING IN ICE OR WAITING ON ACCOUNT OF ICE,
331 INCLUDING WAITING FOR ICE BREAKERS, PILOTS, ETC., AS WELL AS ANY DELAYS DUE
332 TO NAVIGATING IN ICE ON BOTH LADEN AND BALLAST VOYAGES TO AND FROM ANY
333 PORT(S)/BERTH(S) UNDER THIS C/P TO BE PAID BY CHARTERERS AT DEMURRAGE RATE
334 PLUS ALL BUNKERS CONSUMED PLUS ANY OTHER PROVEN COST DUE TO THE ICE SUCH AS
335 EXTRA PORT CHARGES, DELAYS DURING LOAD AND DISCHARGE. FOR THE PURPOSE OF
336 CALCULATING DELAYS A SERVICE SPEED OF 13.5 KNOTS LADEN AND 13.5 KNOTS IN

337 ~~BALLAST SHALL BE USED. CHARTERERS TO PAY AGAINST OWNERS E MAIL OR FAX~~
338 ~~INVOICE AND TOGETHER WITH FREIGHT AGAINST SUPPORTING DOCUMENTS. ANY EXTRA~~
339 ~~INSURANCE AND/OR TAXES AND/OR FEES AND/OR CHARGES~~
341 ~~INCURRED BY BREACHING IWL AND/OR TRADING IN ICE BOUND WATERS TO BE FOR~~
342 ~~CHARTERERS ACCOUNT BUT TO BE SETTLED BY OWNERS WITH FURTHER REIMBURSEMENT~~
343 ~~BY CHRTRS SIMULTANEOUSLY WITH FREIGHT AGAINST OWNERS INVOICE SUPPORTED BY~~
344 ~~RELEVANT DOCUMENTS. THIS ALWAYS TO INCLUDE BUT NOT TO BE LIMITED TO EXTRA~~
345 ~~WINTER PILOTAGE /TUGS, ICE ADVISORS, ICEBREAKER FEES AND ANY ADDITIONAL~~
346 ~~COSTS/EXPENSES ATTRIBUTABLE TO ICE AND/OR OF IWL.'~~

CLAUSE LITASCO - 21. STS CLAUSE

352 ALL FENDERS/LINES/HOSES **AS PER OCIMF STANDARDS/ REGULATIONS** AND ANY OTHER EQUIPMENT REQUIRED FOR SUCH AN

CLAUSE LITASCO - 22. WORLDSCALE CLAUSE

368 CALCULATING FLAT RATE HAS NOT MADE ANY ALLOWANCE FOR PORT COSTS**, INCLUDING AGENCY FEES,** THEN

CLAUSE LITASCO - 23. ISPS CLAUSE FOR VOYAGE CHARTER PARTIES BASED ON BIMCO WORDING WITH AMENDMENTS

372 AMENDMENTS **- BIMCO ISPS/MTSA CLAUSE FOR VOYAGE CHARTER PARTIES TO APPLY.**
374 ~~(A) (I) FROM THE DATE OF COMING INTO FORCE OF THE INTERNATIONAL CODE~~
375 ~~FOR THE SECURITY OF SHIPS AND OF PORT FACILITIES AND THE RELEVANT~~
376 ~~AMENDMENTS TO CHAPTER XI OF SOLAS (ISPS CODE) IN RELATION TO THE VESSEL,~~
377 ~~THE OWNERS SHALL PROCURE THAT BOTH THE VESSEL AND "THE COMPANY" (AS DEFINED~~
378 ~~BY THE ISPS CODE) SHALL COMPLY WITH THE REQUIREMENTS OF THE ISPS CODE~~
379 ~~RELATING TO THE VESSEL AND THE COMPANY. UPON REQUEST THE OWNERS SHALL~~
380 ~~PROVIDE A COPY OF THE RELEVANT INTERNATIONAL SHIP SECURITY CERTIFICATE (OR~~
381 ~~THE INTERIM INTERNATIONAL SHIP SECURITY CERTIFICATE) TO THE CHARTERERS. THE~~
382 ~~OWNERS SHALL PROVIDE THE CHARTERERS WITH THE FULL STYLE CONTACT DETAILS OF~~
383 ~~THE COMPANY SECURITY OFFICER (CSO).~~
385 ~~(II) EXCEPT AS OTHERWISE PROVIDED IN THIS CHARTER PARTY, LOSS, DAMAGE,~~
386 ~~EXPENSE OR DELAY, EXCLUDING CONSEQUENTIAL LOSS, CAUSED BY FAILURE ON THE~~
387 ~~PART OF THE OWNERS OR THE COMPANY TO COMPLY WITH THE REQUIREMENTS~~
388 ~~OF THE ISPS CODE OR THIS CLAUSE SHALL BE FOR THE OWNERS ACCOUNT.~~
389
390 ~~(B) (I) THE CHARTERERS SHALL PROVIDE THE CSO AND THE SHIP SECURITY~~
397 ~~OFFICER (SSO)/MASTER WITH THEIR FULL STYLE CONTACT DETAILS AND ANY~~
392 ~~OTHER INFORMATION THE OWNERS REQUIRE TO COMPLY WITH THE ISPS CODE.~~
393
394 ~~(II) EXCEPT AS OTHERWISE PROVIDED IN THIS CHARTER PARTY, LOSS, DAMAGE,~~
395 ~~EXPENSE, EXCLUDING CONSEQUENTIAL LOSS, CAUSED BY FAILURE ON THE PART OF THE~~
396 ~~CHARTERERS TO COMPLY WITH THIS CLAUSE SHALL BE FOR THE CHARTERERS ACCOUNT~~
397 ~~AND ANY DELAY CAUSED BY SUCH FAILURE SHALL BE COMPENSATED AT THE DEMURRAGE~~
398 ~~RATE.~~
400 ~~(C) PROVIDED THAT THE DELAY IS NOT CAUSED BY THE OWNERS FAILURE TO COMPLY~~
401 ~~WITH THEIR OBLIGATIONS UNDER THE ISPS CODE, THE FOLLOWING SHALL APPLY:~~
402
403 ~~(I) NOTWITHSTANDING ANYTHING TO THE CONTRARY PROVIDED IN THIS CHARTER~~
404 ~~PARTY, THE VESSEL SHALL BE ENTITLED TO TENDER NOTICE OF READINESS EVEN~~
405 ~~IF NOT CLEARED DUE TO APPLICABLE SECURITY REGULATIONS OR MEASURES IMPOSED~~
406 ~~BY A PORT FACILITY OR ANY RELEVANT AUTHORITY UNDER THE ISPS~~
407 ~~CODE.~~
408
409 ~~(II) ANY DELAY RESULTING FROM MEASURES IMPOSED BY A PORT FACILITY OR~~
410 ~~BY ANY RELEVANT AUTHORITY UNDER THE ISPS CODE SHALL COUNT AS LAYTIME~~
411 ~~OR TIME ON DEMURRAGE IF THE VESSEL IS ON LAYTIME OR DEMURRAGE. IF THE~~
412 ~~DELAY OCCURS BEFORE LAYTIME HAS STARTED OR AFTER LAYTIME OR TIME ON~~
413 ~~DEMURRAGE HAS CEASED TO COUNT, IT SHALL BE COMPENSATED BY THE CHARTERERS AT~~
414 ~~HALF DEMURRAGE RATE.~~
416 ~~(D) NOTWITHSTANDING ANYTHING TO THE CONTRARY PROVIDED IN THIS CHARTER~~
417 ~~PARTY, ANY ADDITIONAL COSTS OR EXPENSES WHATSOEVER SOLELY ARISING OUT~~
418 ~~OF OR RELATED TO SECURITY REGULATIONS OR MEASURES REQUIRED BY THE PORT~~
419 ~~FACILITY OR ANY RELEVANT AUTHORITY IN ACCORDANCE WITH THE ISPS CODE~~
420 ~~INCLUDING, BUT NOT LIMITED TO, SECURITY GUARDS, LAUNCH SERVICES, TUG~~
421 ~~ESCORTS, PORT SECURITY FEES OR TAXES AND INSPECTIONS, SHALL BE SHARED~~
422 ~~50/50, UNLESS SUCH COSTS OR EXPENSES RESULT SOLELY FROM THE OWNERS~~
423 ~~NEGLIGENCE. ALL MEASURES REQUIRED BY THE OWNERS TO COMPLY WITH THE SHIP~~
424 ~~SECURITY PLAN SHALL BE FOR THE OWNERS ACCOUNT.~~
425
426 ~~(E) IF EITHER PARTY MAKES ANY PAYMENT WHICH IS FOR THE OTHER PARTY ACCOUNT~~
427 ~~ACCORDING TO THIS CLAUSE, THE OTHER PARTY SHALL INDEMNIFY THE PAYING PARTY~~

CLAUSE LITASCO - 24. AFFILIATE ASSIGNMENT

CLAUSE LITASCO - 25. APPLICABLE LAW

CLAUSE LITASCO - 26. ARBITRATION

CLAUSE LITASCO - 27. PRIVACY CLAUSE

CLAUSE LITASCO - 28. LOI INVOCATION CLAUSE

| | |
|---|---|
| 492 | ~~DISCHARGING PORT (S) OR RANGE(S), SHOWN IN BILL (S) OF LADING NOT TO~~ |
| 493 | ~~CONSTITUTE A DECLARATION OF DISCHARGE PORT(S) OR RANGE(S) AND CHARTERERS TO~~ |
| 494 | ~~HAVE THE RIGHT TO ORDER THE VESSEL TO ANY PORT OR PLACE WITHIN THE TERMS OF~~ |
| 495 | ~~THIS CHARTER.~~ |
| 496 | |
| 497 | ~~IF AND WHEN SPECIFICALLY INSTRUCTED TO DO SO BY CHARTERERS, OWNERS AGREE TO~~ |
| 498 | ~~RELEASE THE CARGO ONBOARD IN THE FOLLOWING CASES:~~ |
| 500 | ~~A . IF NO ORIGINAL BILL OF LADING IS AVAILABLE AT DISCHARGE PORT(S)~~ |
| 501 | |
| 502 | ~~OR:~~ |
| 503 | |
| 504 | ~~B . IF VESSEL IS ORDERED TO DISCHARGE IN A PORT OR PLACE OTHER THAN THE~~ |
| 505 | ~~DESTINATION SHOWN IN THE BILL OF LADING. IN CONSIDERATION OF OWNERS~~ |
| 506 | ~~COMPLYING WITH CHARTERERS' SPECIFIC INSTRUCTIONS AS ABOVE, CHARTERERS~~ |
| 507 | ~~SHALL, UPON GIVING FORMAL NOTIFICATION TO OWNERS, INVOKE THE FOLLOWING~~ |
| 508 | ~~INDEMNITY:~~ |
| 510 | ~~1.TO INDEMNIFY OWNERS, OWNERS SERVANT(S) AND AGENT(S) AND TO HOLD OWNERS~~ |
| 511 | ~~AND THEM HARMLESS IN RESPECT OF ANY LIABILITY LOSS OR DAMAGE OF~~ |
| 512 | ~~WHATSOEVER NATURE WHICH THEY MAY SUSTAIN BY REASON OF OWNERS CAUSING THE~~ |
| 573 | ~~VESSEL TO PROCEED TO PORT(S) OTHER THAN THAT NAMED IN THE BILLS OF~~ |
| 574 | ~~LADING AND CAUSING THE VESSEL TO DELIVER THE CARGO AT SUCH PORT(S)~~ |
| 515 | ~~WITHOUT THE PRODUCTION OF THE BILLS OF LADING. FURTHERMORE, IF~~ |
| 516 | ~~CHARTERERS REQUEST OWNERS TO DELIVER THE CARGO TO A PERSON OR PERSONS~~ |
| 517 | ~~OTHER THAN THE HOLDERS OF THE BILLS OF LADING, TO INDEMNIFY OWNERS AND~~ |
| 518 | ~~HOLD OWNERS HARMLESS IN RESPECT OF ANY LOSS OR DAMAGE OF WHATSOEVER~~ |
| 519 | ~~NATURE WHICH OWNERS MAY SUSTAIN BY REASON OF OWNERS DOING SO.~~ |
| 521 | ~~2.TO PAY OWNERS ON DEMAND THE AMOUNT OF ANY LOSS OR DAMAGE OF WHATSOEVER~~ |
| 522 | ~~NATURE WHICH THE MASTER AND / OR AGENTS OF THE VESSEL AND / OR ANY OTHER~~ |
| 523 | ~~OF OWNERS SERVANTS OR AGENTS WHATSOEVER MAY INCUR AS A RESULT OF THE~~ |
| 524 | ~~VESSEL PROCEEDING AND DELIVERING THE CARGO AS SET OUT IN PARAGRAPH 1,~~ |
| 525 | ~~HEREOF.~~ |
| 526 | |
| 527 | ~~3.IN THE EVENT OF ANY PROCEEDINGS BEING COMMENCED AGAINST OWNERS OR ANY OF~~ |
| 528 | ~~OWNERS SERVANTS OR AGENTS IN CONNECTION WITH THE VESSEL HAVING PROCEEDED~~ |
| 529 | ~~AS AFORESAID AND / OR HAVING DELIVERED THE CARGO IN ACCORDANCE WITH~~ |
| 530 | ~~CHARTERERS REQUEST, TO PROVIDE OWNERS OR THEIR SERVANTS OR AGENTS FROM~~ |
| 531 | ~~TIME TO TIME ON DEMAND WITH SUFFICIENT FUNDS TO DEFEND THE SAID~~ |
| 532 | ~~PROCEEDINGS.~~ |
| 533 | |
| 534 | ~~4.IF THE VESSEL OR ANY OTHER VESSEL OR PROPERTY BELONGING TO THE OWNERS~~ |
| 535 | ~~SHOULD BE ARRESTED OR DETAINED OR IF THE ARREST OR DETENTION THEREOF BE~~ |
| 536 | ~~THREATENED, TO PROVIDE ON DEMAND SUCH BAIL OR OTHER SECURITY AS MAY BE~~ |
| 537 | ~~REQUIRED TO PREVENT SUCH ARREST OR DETENTION OR TO SECURE THE RELEASE OF~~ |
| 538 | ~~SUCH VESSEL OR PROPERTY AND TO INDEMNIFY OWNERS IN RESPECT OF ANY LOSS,~~ |
| 539 | ~~DAMAGE OR EXPENSES CAUSED BY SUCH ARREST OR DETENTION WHETHER OR NOT THE~~ |
| 540 | ~~SAME MAY BE JUSTIFIED.~~ |
| 542 | ~~5.IF CALLED UPON TO DO SO AT ANY TIME WHILE THE GOODS ARE IN CHARTERERS'~~ |
| 543 | ~~POSSESSION, CUSTODY OR CONTROL, TO REDELIVER THE SAME TO OWNERS.~~ |
| 544 | |
| 545 | ~~6.TO PRODUCE AND DELIVER UP TO OWNERS, DULY DISCHARGED ALL OF THE BILLS OF~~ |
| 546 | ~~LADING FOR THE CARGOES SIGNED BY THE MASTER OR ON HIS BEHALF, AS SOON AS~~ |
| 547 | ~~THEY HAVE ARRIVED AND / OR COME INTO CHARTERERS' POSSESSION.~~ |
| 548 | |
| 549 | ~~7.THE LIABILITY OF EACH AND EVERY PERSON UNDER THIS INDEMNITY SHALL BE~~ |
| 550 | ~~JOINT AND SEVERAL AND SHALL NOT BE CONDITIONAL UPON OWNERS PROCEEDING~~ |
| 551 | ~~FIRST AGAINST ANY PERSON, WHETHER OR NOT SUCH PERSON IS PARTY TO OR~~ |
| 552 | ~~LIABLE UNDER THIS INDEMNITY.~~ |
| 553 | |
| 554 | ~~8.THIS INDEMNITY SHALL BE CONSTRUED IN ACCORDANCE WITH ENGLISH LAW AND~~ |
| 555 | ~~EACH AND EVERY PERSON LIABLE UNDER THIS INDEMNITY SHALL AT OWNERS'~~ |
| 556 | ~~REQUEST, SUBMIT TO THE JURISDICTION OF THE HIGH COURT OF JUSTICE OF~~ |
| 557 | ~~ENGLAND.~~ |
| 559 | ~~THE ABOVE INDEMNITY SHALL AUTOMATICALLY BECOME NULL AND VOID UPON~~ |
| 560 | ~~PRESENTATION OF ONE OUT OF THREE RELEVANT BILLS OF LADING, OR 13 (THIRTEEN)~~ |
| 561 | ~~MONTHS AFTER COMPLETION OF DISCHARGE OF CARGO TO WHICH SUCH INDEMNITY~~ |
| 562 | ~~REFERS, ALWAYS PROVIDED NO LEGAL PROCEEDINGS HAVE BEEN INSTITUTED AGAINST~~ |
| 563 | ~~OWNERS. CHARTERERS TO INVOKE OWNERS P AND I CLUB WORDING.~~ |
| | LOI TO BE INVOKED AS |
| | PER OWNER'S LOI INVOCATION CLAUSE : |
| | OWNERS L.O.I INVOCATION CLAUSE - |
| | -------------- |

CHARTERERS TO INVOKE THE HEREBY ATTACHED L.O.I'S FOR
A) CHANGE OF DESTINATION OR (B) DELIVERY OF CARGO WITHOUT PRODUCTION OF
ORIGINAL B/L'S MESSAGE WORDING OR (C) CHANGE OF DESTINATION AND DELIVERY OF
CARGO WITHOUT PRODUCTION OF ORIGINAL B/L'S BY SENDING TO OWNERS THE HEREBELOW
INVOCATION
WE...(CHARTERERS)..HEREBY INVOKE THE L.O.I AS ATTACHED IN THE C/P
CLAUSE...FOR THE B/L'S OF THE FOLLOWING DETAILS:
- HEADOWNERS:
- DISPONENT OWNERS: N2 TANKERS B.V.
- B/L DATE:
- VSL'S NAME:
- SUPPLIERS:
- RECEIVERS:
- CONSIGNEE:
- CARGO GRADE:
- CARGO QUANTITY:
- LOADING PORT:
- DISCHARGE PORT:
- PARTY ISSUING THE LOI:
ATTACHED LOI DOCUMENTS FOR SITUATIONS A),B)& C).

CLAUSE LITASCO - 29. AMS CLAUSE
565    29.AMS CLAUSE - BIMCO AMS CLAUSE, (WHEN APPLICABLE)
567    (A) IF THE VESSEL LOADS OR CARRIES CARGO DESTINED FOR THE US OR PASSING
568    THROUGH US PORTS IN TRANSIT, THE OWNERS SHALL COMPLY WITH THE CURRENT US
569    CUSTOMS REGULATIONS (19 CFR 4.7) OR ANY SUBSEQUENT AMENDMENTS THERETO AND
570    SHALL UNDERTAKE THE ROLE OF CARRIER FOR THE PURPOSES OF SUCH REGULATIONS
571    AND SHALL, IN THEIR OWN NAME, TIME AND EXPENSE:
573    I. HAVE IN PLACE A SCAC (STANDARD CARRIER ALPHA CODE);
574    II.HAVE IN PLACE AN ICS (INTERNATIONAL CARRIER BOND); AND
575    III.SUBMIT A CARGO DECLARATION BY AMS (AUTOMATED MANIFEST SYSTEM)
576    TO THE US CUSTOMS.
577
578    (B) THE CHARTERERS SHALL PROVIDE ALL NECESSARY INFORMATION TO THE OWNERS
579    AND/OR THEIR AGENTS TO ENABLE THE OWNERS TO SUBMIT A TIMELY AND ACCURATE
580    CARGO DECLARATION.
581    THE CHARTERERS SHALL ASSUME LIABILITY FOR AND SHALL INDEMNIFY, DEFEND AND
582    HOLD HARMLESS THE OWNERS AGAINST ANY LOSS AND/OR DAMAGE WHATSOEVER
583    (INCLUDING CONSEQUENTIAL LOSS AND/OR DAMAGE) AND/OR ANY EXPENSES, FINES,
584    PENALTIES AND ALL OTHER CLAIMS OF WHATSOEVER NATURE, INCLUDING BUT NOT
585    LIMITED TO LEGAL COSTS, ARISING FROM THE CHARTERERS' FAILURE TO COMPLY WITH
586    ANY OF THE PROVISIONS OF THIS SUB CLAUSE. SHOULD SUCH FAILURE RESULT IN ANY
587    DELAY THEN, NOTWITHSTANDING ANY PROVISION IN THIS CHARTER PARTY TO THE
588    CONTRARY, ALL TIME USED OR LOST SHALL COUNT AS LAYTIME OR, IF THE VESSEL IS
589    ALREADY ON DEMURRAGE, TIME ON DEMURRAGE.
591    (C) THE OWNERS SHALL ASSUME LIABILITY FOR AND SHALL INDEMNIFY, DEFEND AND
592    HOLD HARMLESS THE CHARTERERS AGAINST ANY LOSS AND/OR DAMAGE WHATSOEVER
593    (INCLUDING CONSEQUENTIAL LOSS AND/OR DAMAGE) AND ANY EXPENSES, FINES,
594    PENALTIES AND ALL OTHER CLAIMS OF WHATSOEVER NATURE, INCLUDING BUT NOT
595    LIMITED TO LEGAL COSTS, ARISING FROM THE OWNERS' FAILURE TO COMPLY WITH ANY
596    OF THE PROVISIONS OF SUB CLAUSE (A). SHOULD SUCH FAILURE RESULT IN ANY
597    DELAY THEN, NOTWITHSTANDING ANY PROVISION IN THIS CHARTER PARTY TO THE
598    CONTRARY, ALL TIME USED OR LOST SHALL NOT COUNT AS LAYTIME OR, IF THE
599    VESSEL IS ALREADY ON DEMURRAGE, TIME ON DEMURRAGE.
600
601    (D) THE ASSUMPTION OF THE ROLE OF CARRIER BY THE OWNERS PURSUANT TO THIS
602    CLAUSE AND FOR THE PURPOSE OF THE US CUSTOMS REGULATIONS (19 CFR 4.7) SHALL
603    BE WITHOUT PREJUDICE TO THE IDENTITY OF CARRIER UNDER ANY BILL OF LADING,
604    OTHER CONTRACT, LAW OR REGULATION.

CLAUSE LITASCO - 30. CLINGAGE CLAUSE
606    30.CLINGAGE CLAUSE - N/A THIS CP
608    IF THE VESSEL IS EX LAY-UP, EX DRY-DOCK OR HER LAST CARGO IS DRY, A VALUE
609    OF CARGO THE FOB VALUE OF CRUDE AS WELL AS FREIGHT AND INSURANCE WITH RESPECT THERETO FOR ANY
610    SHORT OUTTURN CARGO QUANTITY, (AS DETERMINED BY AN INDEPENDENT SURVEYOR 2 (TWO) INDEPENDENT INSPECTORS,
       ONE APPOINTED AND PAID BY CHARTERERS AND ONE APPOINTED AND PAID BY OWNERS BY
612    ON SHORE TANKS GAUGING), SHALL BE DEDUCTED FROM FREIGHT CLAIMED FROM OWNERS TO THE EXTENT THAT
613    SUCH QUANTITY EXCEEDS 0.3 PERCENT OF THE BILL OF LADING QUANTITY.
       BELOW CLINCAGE CLAUSE TO APPLY :
       OWNER AND CHARTERER RECOGNISE THAT, THE
       VESSEL BEING ON HER MAIDEN VOYAGE, EX LAY-UP, EX DRY DOCK OR EX
       DRY-CARGO, A CLINGAGE OF A GREATER DEGREE THAN NORMAL CAN BE
       ANTICIPATED. THEREFORE, FOB VALUE OF CARGO AS WELL AS FREIGHT
       FOR ANY SHORT OUT-TURN CARGO QUANTITY (AS DETERMINED BY A MUTUALLY ACCEPTABLE
       INDEPENDENT SURVEYOR (OWNER'S P&I REPRESENTATIVE TO BE PERMITTED ACCESS AT LOADPORT AND DISPORT TO
       WITNESS THE SURVEYS) .
       BY COMPARING THE BILL OF LADING (B/L) QUANTITY WITH THE QUANTITY ACTUALLY DISCHARGED ASHORE ON THE
       BASIS OF SHORE TANKS GAUGES) SHALL BE CLAIMED FROM OWNERS TO THE EXTENT THAT SUCH QUANTITY EXCEEDS 0,3

PERCENT OF
THE B/L QUANTITY.

ADDITIONAL CLAUSES:

**DISCHARGE RELOAD CLAUSE:**

Not Applicable

**SUPPLIERS ALWAYS TO BE AUTHORIZED BY NOC TRIPOLI**

Not Applicable

**LIBYA STRIKE CLAUSE – N/A THIS CP**

Not Applicable

**LIBYA CLAUSE  - NOT APPLICABLE IF LOADING AL JURF, FARWAH. OR IF LOADING BOURI.**

**(1) CHARTERERS REPRESENT AND WARRANT THAT AT THE TIME OF ENTERING INTO THIS CHARTERPARTY THEY AND ANY COMPANY WITH AN INTEREST IN THE CARGO ARE NOT IN ANY WAY DIRECTLY OR INDIRECTLY OWNED, CONTROLLED BY OR RELATED TO ANY PEOPLE/ENTITIES LISTED ON THE US OFFICE OF FOREIGN ASSET'S CONTROL LIST OF SPECIALLY DESIGNATED NATIONALS AND BLOCKED PERSONS OR THE US COMMERCE DEPARTMENT'S DENIED PERSONS LIST OR ARE PEOPLE/ENTITIES SUBJECT TO EU OR UN SANCTIONS.**
(2) NOTHING IN THIS CHARTER SHALL BE READ SO AS TO REQUIRE EITHER PARTY TO ACT IN ANY MANNER WHICH IS INCONSISTENT WITH OR PROHIBITED UNDER:-
(I) ANY APPLICABLE ANTI-BRIBERY AND CORRUPTION OR ANTI-MONEY LAUNDERING LAWS AND REGULATIONS;
(II) ANY UN, EU, UK, GREEK, FRENCH OR SWISS LAWS, REGULATIONS, SANCTIONS OR OTHER OFFICIAL UN, EU, UK, GREEK, FRENCH OR SWISS GOVERNMENT REQUIREMENTS APPLICABLE TO SUCH PARTY, RELATING TO FOREIGN TRADE CONTROLS, SANCTIONS, EXPORT CONTROLS, EMBARGOES OR INTERNATIONAL BOYCOTTS OF ANY TYPE.
IF CHARTERERS OR OWNERS, FIND THEMSELVES IN BREACH (OR IN A POSITION WHERE THEY WILL BE IN BREACH) OF ANY FOREIGN TRADE RESTRICTION, SANCTION OR PROHIBITION, IMPOSED BY THE UN, EU, UK, GREECE, FRANCE OR SWITZERLAND AS A RESULT OF PERFORMING THIS CHARTERPARTY, OWNERS (OR CHARTERERS, AS
APPROPRIATE) WILL NOTIFY CHARTERERS (OR OWNERS, AS APPROPRIATE) IMMEDIATELY (WHETHER BEFORE, DURING OR AFTER LOADING) OF THE PROBLEM.
IF, PRIOR TO LOADING ANY CARGO, THE INTENDED VOYAGE CANNOT BE PERFORMED FOR REASONS COVERED BY THIS CLAUSE AND/OR REASONS COVEREWD IN THE LIBYA STRIKE CLAUSE CONTAINED ABOVE AND/OR FORCE MAJEURE, THEN THE CHARTERPARTY SHALL BE CANCELLED BUT CHARTERERS WILL PAY THE MINIMUM FREIGHT AGREED (BASIS MIN FLAT AUGUSTA) MINUS:
PORT EXPENSES AT DISCHARGE PORT (XXXXXX), MINUS THE PORT EXPENSES AT LOADPORT (IF OWNERS HAVE PAID IT, THEN NOT TO BE DEDUCTED, AND OWNERS TO SHOW PROOF OF PAYMENT), MINUS THE BUNKERS THAT THE OWNERS WOULD HAVE USED TO DISCHARGE THE CARGO, AND THE BUNKERS FOR THE STEAMING FROM LOADPORT TO THEORETICAL DISPORT PLUS ALL TIME SPENT AT LOADPORT AT DEMURRAGE RATE PLUS ALL BUNKERS CONSUMED WHILST WAITING OR ADRIFT.
IT IS UNDERSTOOD BETWEEN CHARTERERS AND OWNERS THAT ALL TIME LOST IN LIBYA DUE TO THE PRESENT POLITICAL (NOT LIMITED ONLY TO STRIKES, STOPPAGES, LOCKOUT) SITUATION TO BE PAID AT DEMURRAGE RATE. ANY EXTRA WAR RISK TO BE FOR CHARTERERS' ACCOUNT.

- OWNERS OPTION TO BUNKER ON LADEN PASSAGE. CHARTERERS ALWAYS TO BE INFORMED AND DELAYS TO BE MINIMISED.

**INTERIM PORT CLAUSE**

CHARTERERS SHALL PAY FOR ANY INTERIM LOAD/DISCHARGE PORT (S)/TRANSIMPENT AT SEA, AT COST AND AT THE RATE OF USD ($) PER DAY PRO RATA. ALL TIME IN INTERIM PORT TO RUN CONTINUOUSLY AND IN FULL W.P.O.N FROM ARRIVAL OFF PORT LIMITS (OR IN CASE OF TRANSHIPMENT, FROM ARRIVAL AT THE STS LOCATION) UNTIL DROPPING LAST OUTWARD SEA PILOT (OR IN THE CASE OF TRANSHIPMENT, UNTIL VESSEL HAS GIVEN FULL AWAY).
ADDITIONAL STEAMING TIME (IF ANY) INCURRED FOR SUCH DEVIATION WHICH EXCEEDS DIRECT ROUTE FROM FIRST LOADPORT TO FURTHEST DISCHARGE PORT SHALL BE PAID AT RATE OF USD ($) PER DAY PRO RATA PLUS ALL BUNKERS CONSUMED AT SEA AND IN PORT AS PER MASTER'S TELEXED STATEMENT, INCLUDING BUNKERS FOR HEATING.
ALL PORT COSTS, INCLUDING AGENCY FEES, EXCEPT FOR OWNERS ITEMS, TO BE FOR CHARTERERS ACCOUNT AND TO BE SETTLED BY THEM DIRECTLY.DEVIATION TIME, PORT TIME AND ALL BUNKERS CONSUMED PAYABLE BY CHARTERERS TOGETHER WITH FREIGHT AGAINST OWNERS' TELEX INVOICE AS PER MASTER'S TELEXED STATEMENTS AND BUNKERS INVOICE.

- ANY TAXES AND/OR DUES ON CARGO AND OR FREIGHT TO BE FOR  CHARTERERS' ACCOUNT AND TO BE SETTLED DIRECTLY BY THEM.

**WAR RISK INSURANCE:**

ALL WAR RISK INSURANCE PREMIUMS ON HULL AND MACHINERY, BLOCKING AND TRAPPING, LOSS OF HIRE, P+I ADDITIONAL PREMIUM, AND CREW WAR BONUS TO BE FOR CHRTS ACCOUNT AND PAID TOGETHER WITH FREIGHT WITH SUPPORTING DOCUMENTS TO FOLLOW. OWNERS BEING RESPONSIBLE FOR ONLY BASIC ANNUAL PREMIUMS.

- (WHEN APPLICABLE) OWNERS TO COMPLY WITH ISRAELI MINISTER OF TRANSPORT NOTICE TO MARINERS CONCERNING UNDER WATER OPERATION IN THEIR SHIPS.

- IF BERTH IS FREE AND CARGO AVAILABLE CHARTERERS TO DO THEIR BEST ENDEAVOURS TO LOAD VESSEL EARLIER IF POSSIBLE.

- DISCHARGE PORTS ALWAYS TO BE IN GEOGRAPHICAL ROTATION.

- ANY DELAYS/EXPENSES DUE TO U.N. INSPECTION IN ADRIATIC TO BE FOR CHARTERERS ACCOUNT AND TO BE SETTLED TOGETHER WITH THE FREIGHT.

- ANY QUAY DUES AT CROATIA IF ANY TO BE FOR CHARTERERS ACCOUNT AND SETTLED DIRECTLY BY THEM.

WEATHER CLAUSE TO READ:

CONOCO WEATHER CLAUSE TO APPLY IN ALL PORTS HOWEVER IF DISCHARGE FIUMICINO, FALCONARA, RAVENNA, PORT LA NOUVELLE, GELA, SANTA PANAGIA BAY, MELILLI, CIVITAVECCHIA, MILAZZO, SPANISH ATLANTIC, PORTUGAL, MOROCCO, ISRAEL (IF ISRAEL INCLUDED IN THE DISCHARGE OPTIONS) AND/OR IF LIGHTERING / LIGHTENING / STS OPERATION TAKES PLACE AT ANY LOCATION AND/OR IF LOADING / DISCHARGING VIA A SEALINE / SEATERMINAL ANY DELAYS OWING TO WEATHER / SEACONDITIONS TO COUNT IN FULL AS USED LAYTIME OR TIME ON DEMURRAGE IF VESSEL ON DEMURRAGE.
ANY EXPENSES INCURRED DUE TO WEATHER AND/OR SEA CONDITIONS INCLUDING UNBERTHING / REBERTHING EXPENSES AT THE ABOVE MENTIONED PORTS / PLACES TO BE FOR CHARTERERS ACCOUNT.

- STANDBY TUGS EXPENSES WHEN COMPULSORY AND NOT COVERED BY WORLDSCALE TO BE FOR CHARTERERS ACCOUNT AND SETTLED BY THEM DIRECTLY

ISRAELI CLAUSE:

ANY DELAYS IN REACHING ISRAEL OR ISRAELI WATERS AND ANY DELAYS AFTER COMPLETION OF DISCHARGING DUE TO NAVAL BLOCKADE, OTHER BLOCKADE, ORDERS TO WAIT BY AUTHORITIES OR FOR REASONS BEYOND OWNERS CONTROL, TO BE PAID BY CHARTERERS AT DEMURRAGE RATE PLUS BUNKERS PLUS OTHER EXPENSES AS INCURRED.

- ADDITIONAL WAR RISK PREMIUM AND CREW WAR BONUS TO BE FOR CHARTERERS ACCOUNT EXCEPT - IF ISRAEL EXTRA WAR RISK INSURANCE TO BE FOR CHARTERERS ACCOUNT, CREW WAR BONUS TO BE FOR OWNERS ACCOUNT.

- WITH REF TO BIMCO WAR RISK CLAUSE AS AMENDED BY OWNERS HEREBELOW THE FOLLOWING ALSO TO APPLY:
'IF DUE TO WAR VESSEL IS UNABLE TO PROCEED FOR DISCHARGING IN ISRAEL CHARTERERS TO PROVIDE AT OWNERS REQUEST AN ALTERNATIVE DISCHARGING PORT OUTSIDE ISRAELI TERRITORY'.

BIMCO WAR RISKS CLAUSE FOR VOYAGE CHARTERING, 2004 (CODE NAME: VOYWAR 2004):

Not Applicable

UKRAINIAN CLAUSE:

IF LOADING/DISCHARGIN AT/OFF UKRANIAN PORT(S) ANY PENALTIES IMPOSED BY ENVIROMENTAL CONTROL AUTHORITIES IN RELATION TO WATER BALLAST AT LOADPORT/DISCHARGE PORT TO BE FOR CHARTERERS ACCOUNT PAYABLE WITH FREIGHT AGAINST OWNERS TELEXED INVOICE WITH FULL DOCUMENTS TO FOLLOW, PROVIDED VESSEL IS IN COMPLIANCE WITH MARPOL REGULATIONS IN RELATION TO BALLAST WATER IN BLACK SEA AND A COMPLETE BALLAST WATER EXCHANGE HAS BEEN CARRIED OUT WITHIN BLACK SEA.

STRIKE CLAUSE:

ALL TIME LOST IN FRANCE BERTHING AND/OR DISCHARGING DUE TO STRIKES AND/OR LOCKOUTS, BE THEY OFFICIAL OR UN-OFFICIAL,  INCLUDING STRIKES INVOLVING TUGS AND/OR PILOTS, TO COUNT AS FULL LAYTIME OR DEMURRAGE IF VESSEL IS ON DEMURRAGE.

- BIMCO AMS CLAUSE TO APPLY.

STS LIGHTERING CLAUSE

IF STS WITHIN PORT LIMITS - PORT FLAT TO APPLY INC DIFFERENTIALS AND PORT / AGENCY / TOWAGE COSTS FOR OWNERS ACCOUNT UNLESS OTHERWISE STIPULATED AS PER WORLDSCALE.  OTHERWISE ANY FURTHER SHIFTING ETC PLS REFER TO EXXON VOY 16 (C).
OTHERWISE:
CHARTERERS SHALL HAVE THE OPTION TO LOAD AND DISCHARGE THE VESSEL VIA SHIP-TO-SHIP TRANSFER AT A SAFE LOCATION AS DESIGNATED BY THE PORT AUTHORITIES AT ANCHOR OFF ANY PORT WITHIN TRADING LIMITS OF THIS CHARTER PARTY PROVIDED WEATHER PERMITTING AND ALWAYS AT MASTER'S DISCRETION WHICH SHALL NOT BE UNREASONABLY WITHHELD.
CHARTERERS WILL PROVIDE ALL FENDERS, HOSES AND EQUIPMENT INCLUDING TUGS, MOORING ROPES, PILOTS AS NECESSARY AT THEIR TIME, RISK AND EXPENSES TO PERFORM A SAFE LIGHTERING OPERATION.
MASTER OF THE VESSEL WILL, WEATHER PERMITTING, CONDUCT SUCH LIGHTERAGE AT SUITABLE LOCATION SUBJECT TO MASTER'S APPROVAL WHICH NOT TO BE UNREASONABLY WITHHELD.
CHARTERERS WARRANT THAT THE LIGHTERING OPERATION SHALL BE CARRIED OUT IN ACCORDANCE WITH THE PROCEDURES SET OUT IN THE LAST REVISED EDITION OF THE INTERNATIONAL CHAMBER OF SHIPPING OIL COMPANIES INTERNATIONAL MARINE FORUM, SHIP-TO-SHIP TRANSFER GUIDE FOR PETROLEUM.
CHARTERERS WARRANT THAT THE SECOND VESSEL WILL PROVIDE ALL PRE-ENGAGEMENT INFORMATION IN FULL COMPLIANCE WITH THE ICS/OCIMF S-T-S TRANSFER GUIDE.
IT IS UNDERSTOOD AND AGREED THAT THE CREW OF THE VESSEL WILL BE REQUIRED TO ASSIST IN HANDLING FENDERS AND CARGO HOSES AS WELL AS MOORING AND UNMOORING AT THE TRANSFER SITE AT NO COST TO THE CHARTERERS. IF THE MASTER FEELS THAT THE SAFETY OF HIS VESSEL IS THREATENED HAS THE RIGHT TO ORDER THE LIGHTERING VESSEL AWAY.

ALL PORT CHARGES INCL TOWAGE CHARGES AND AGENCY FEES IF STS TO BE FOR CHARTERERS ACCOUNT AND TO BE SETTLED DIRECTLY BY THEM.

ALL COSTS FOR STS INCL ARRANGEMENTS OF FENDERS, HOSES AND SAFETY EQUIPMENT TO BE FOR CHRTRS ACCOUNT AND TO BE SETTLED DIRECTLY BY THEM.
ALL TIME FOR LOADING/OFFLOADING STS EQUIPMENT TO BE FOR CHARTERERS ACCOUNT.
STS OPERATIONS ALWAYS TO ALWAYS TO BE IN ACCORANCE WITH THE LATEST EDITION OF OCIMF STS TRANSFER GUIDE TIME TO COUNT FROM TENDERING OF NOR AT DESIGNATED LOCATION.

ICE CLAUSE

VESSEL NOT TO BREAK ICE BUT TO FOLLOW ICE-BREAKERS WHEN ENTERING TO AND WHEN SAILING FROM THE LOADING PORT AND THE APPROACHES OF THE LOADING PORT (IF NEEDED BUT ALWAYS AT MASTER'S DISCRETION).
ANY DELAY IN ENTERING TO AND IN SAILING FROM THE LOADING PORT AND THE APPROACHES OF THE LOADING PORT AND ANY EXTRA STEAMING TIME/DELAY ON ACCOUNT OF ICE CONDITION OVER AND ABOVE THE NORMAL STEAMING TIME AND ANY WAITING TIME FOR THE ICE BREAKER FOR APPROACHING AND ENTERING TO AND FOR SAILING FROM THE LOADING PORT AND ITS APPROACHES TO COUNT AS USED LAYTIME OR DEMURRAGE IF ON DEMURRAGE AND TO BE PAID AT DEMURRAGE RATE.
CANCELLING DATE TO BE EXTENDED ACCORDINGLY IN CASE VESSEL ENCOUNTERS DELAYS DUE TO ICE CONDITIONS AT THE LOADING PORT.
THE INCOMING DELAY SHALL BE PAYABLE IRRESPECTIVE OF VESSEL ARRIVING AT THE LOADING PORT BEFORE LAYDAYS.VESSEL TO BE PROVIDED WITH ICE-BREAKER ASSISTANCE AT ALL TIMES FROM THE MOMENT SHE ARRIVES AT THE ICE EDGE UNTIL SHE IS SAFELY MOORED AT BERTH AND REGARDLESS.
HOW FAR THE ICE EDGE POSITION IS FROM TERMINAL LIMITS AND AT ALL TIMES FROM THE MOMENT VESSEL HAS LEFT BERTH UNTIL SHE HAS PASSED THE ICE EDGE. ANY EXTRA COST CHARGED BY THE TUGS FOR EXTENDING THEIR SUPPORT OUTSIDE THE PORT LIMITS TO BE FOR CHARTERERS' ACCOUNT AND TO BE SETTLED BY THEM DIRECT.
STAND-BY TUGS AND/OR ICE BREAKER EXPENSES TO BE FOR CHARTERERS' ACCOUNT AND TO BE PAID TOGETHER WITH FREIGHT.
EXTRA INSURANCE FOR BREACHING IWL TO BE FOR OWNERS ACCOUNT.

- ANY DUES/TAXES ASSESSED OR CALCULATED ON CARGO AND/OR FREIGHT TO BE FOR CHARTERERS ACCOUNT

PRIMORSK BALLAST CLAUSE:

OWNERS/MASTER ARE AWARE THAT ACCORDING TO PRIMORSK PORT REGULATIONS THE BALLAST WATER IN BALLAST TANKS SHOULD CONTAIN OIL PRODUCTS NOT MORE THAN 0.05 MG/DM3. IN CASE OF HEIGHTENED CONTENT OF OIL PRODUCT FOUND IN BALLAST TANKS THE DISCHARGE OF SUCH WATER WILL BE PROHIBITED BY PORTAUTHORITIES. IN VIEW OF THE ABOVE THE MASTER SHOULD TAKE BALLAST WATER AT THE CONSIDERABLE SEA DEPTH PROVIDING CLEAN WATER AT BALLAST TANKS ACCORDING TO PRIMORSK REGULATIONS.
ANY TIME LOST A/O ANY COSTS DUE TO VESSEL'S FAILURE TO COMPLY WITH ABOVE, TO BE FOR OWNERS ACCOUNT AND TIME NOT TO COUNT AS LAYTIME OR AS DEMURRAGE, IF ON DEMURRAGE.

WEATHER CLAUSE:

AT SPANISH ATLANTIC, BUTINGE, PORTUGAL, FIUMICINO/FALCONARA/SANTA PANAGIA BAY/RAVENNA/LA NOUVELLE/GAETA/MOHAMMEDIA, OR IF LIGHTERING, LIGHTENING, STS TAKES PLACE AND/OR IF DISCHARGING VIA A SEALINE/SEA TERMINAL ANY DELAYS OWING TO WEATHER/SEA CONDITIONS TIME TO COUNT IN FULL AS USED LAYTIME OR DEMURRAGE IF ON DEMURRAGE AND ANY UNBERTHING/ REBERTHING/SHIFTING TIME AND ANY EXPENSES INCLUDING UNBERTHING/ REBERTHING DUE TO BAD WEATHER/SEA CONDITION (INCL SWELL) AT ABOVE PORTS/PLACES TO BE FOR CHARTERERS ACCOUNT.
FOR ALL OTHER PORTS, UNLESS OWISE MUTUALLY AGREED, BAD WEATHER PERIODS TO COUNT AS ONE HALF LAYTIME, OR IF ON DEMURRAGE, AT ONE HALF OF THE DEMURRAGE RATE. (NA) AT LOADPORT, ALL COSTS FOR UNBERTHING/REBERTHING DUE TO BAD WEATHER / SEA CONDITION TO BE FOR CHARTERERS ACCOUNT.
TIME TO COUNT AS PER CONOCO WEATHER CLAUSE (EXCEPT BUTINGE AS ABOVE) AND FOR FIRST 48 HRS VYSOTSK AFTER WHICH FULL TIME TO COUNT.

EU ADVANCE CARGO DECLARATION CLAUSE FOR VOYAGE CHARTER PARTIES:

(A) IF THE VESSEL LOADS CARGO IN ANY EU PORT OR PLACE DESTINED FOR A PORT OR PLACE OUTSIDE THE EU OR LOADS CARGO OUTSIDE THE EU DESTINED FOR AN EU PORT OR PLACE, THE OWNERS SHALL COMPLY WITH THE CURRENT EU ADVANCE CARGO DECLARATION REGULATIONS (THE SECURITY AMENDMENT TO THE COMMUNITY CUSTOMS CODE, REGULATIONS 648/2005; 1875/2006; AND 312/2009) OR ANY SUBSEQUENT AMENDMENTS THERETO AND SHALL UNDERTAKE THE ROLE OF CARRIER FOR THE PURPOSES OF SUCH REGULATIONS AND IN THEIR OWN NAME, TIME AND EXPENSE SHALL:
(I) HAVE IN PLACE AN EORI NUMBER (ECONOMIC OPERATOR REGISTRATION AND IDENTIFICATION);
(II) SUBMIT AN ENS (ENTRY SUMMARY DECLARATION) CARGO DECLARATION ELECTRONICALLY TO THE EU MEMBER STATES' CUSTOMS (FIRST PORT OF CALL).
(B) THE CHARTERERS SHALL PROVIDE ALL NECESSARY INFORMATION TO THE OWNERS AND/OR THEIR AGENTS TO ENABLE THE OWNERS TO SUBMIT A TIMELY AND ACCURATE CARGO DECLARATION. THE CHARTERERS SHALL ASSUME LIABILITY FOR AND SHALL INDEMNIFY, DEFEND AND HOLD HARMLESS THE OWNERS AGAINST ANY LOSS AND/OR DAMAGE WHATSOEVER (INCLUDING CONSEQUENTIAL LOSS AND/OR DAMAGE) AND/OR ANY EXPENSES, FINES, PENALTIES AND ALL OTHER CLAIMS OF WHATSOEVER NATURE, INCLUDING BUT NOT LIMITED TO LEGAL COSTS, ARISING FROM THE CHARTERERS' FAILURE TO COMPLY WITH ANY OF THE PROVISIONS OF THIS SUB-CLAUSE. SHOULD SUCH FAILURE RESULT IN ANY DELAY THEN, NOTWITHSTANDING ANY PROVISION IN THIS CHARTER PARTY TO THE CONTRARY, ALL TIME USED OR LOST SHALL COUNT AS LAYTIME OR, IF THE VESSEL IS ALREADY ON DEMURRAGE, TIME ON DEMURRAGE.
(C) THE OWNERS SHALL ASSUME LIABILITY FOR AND SHALL INDEMNIFY, DEFEND AND HOLD HARMLESS THE CHARTERERS AGAINST ANY LOSS AND/OR DAMAGE WHATSOEVER (INCLUDING CONSEQUENTIAL LOSS AND/OR DAMAGE) AND ANY EXPENSES, FINES, PENALTIES AND ALL OTHER CLAIMS OF WHATSOEVER NATURE, INCLUDING BUT NOT LIMITED TO LEGAL COSTS, ARISING FROM THE OWNERS' FAILURE TO COMPLY WITH ANY OF THE PROVISIONS OF SUB-CLAUSE (A). SHOULD SUCH FAILURE RESULT IN ANY DELAY THEN, NOTWITHSTANDING ANY PROVISION IN THIS CHARTER PARTY TO THE CONTRARY, ALL TIME USED OR LOST SHALL NOT COUNT AS LAYTIME OR, IF THE VESSEL IS ALREADY ON DEMURRAGE, TIME ON DEMURRAGE.
(D) THE ASSUMPTION OF THE ROLE OF CARRIER BY THE OWNERS PURSUANT TO THIS CLAUSE AND FOR THE PURPOSE OF THE EU ADVANCE CARGO DECLARATION REGULATIONS SHALL BE WITHOUT PREJUDICE TO THE IDENTITY OF CARRIER UNDER ANY BILL OF

LADING, OTHER CONTRACT, LAW OR REGULATION.

**USG COC CLAUSE:**

IF T/A NOR TO BE VALID IRRESPECTIVE OF VESSEL HAVING COC ON BOARD ON ARRIVAL, WHICH THE OWNERS UNDERTAKE TO APPLY FOR ITS ISSUANCE FROM USCG ON ARRIVAL.
ALL TIME WAITING FOR AN INSPECTION AND DURING WHICH THE ACTUAL INSPECTION IS CONDUCTED BY USCG TO BE FOR OWNERS ACCOUNT. WAITING FOR INSPECTION TIME IS ONLY TO BE FOR OWNERS ACCOUNT SHOULD THE BERTH BE AVAILABLE FOR THE VESSEL TO DISCHARGE, IF THE BERTH IS UNAVAILABLE THEN TIME WAITING TO BERTH TO BE FOR CHARTERERS ACCOUNT AS PER CP TERMS.
ALSO IN CASE VSL IS DELAYED IN BERTHING DUE TO BAD WEATHER THEN THESE DELAYS TO COUNT AS PER WEATHER CLAUSE REGARDLEES OF VSL BEING INSPECTED OR NOT.

**EUROPEAN UNION (EU) LOW SULPHUR FUEL DIRECTIVE:**

OWNER IS REMINDED THAT EU DIRECTIVE 2005/33/EC REGARDING LOW SULPHUR FUEL OIL BECOMES EFFECTIVE ON 1 JANUARY 2010.  AS PER THE TERMS OF PURCHASE, ANY DELAYS, LOST TIME, OR EXPENSES RESULTING FROM OR ATTRIBUTABLE TO NONCOMPLIANCE WITH THE EU DIRECTIVE SHALL BE FOR OWNERS ACCOUNT.

**INCIDENT REPORTING:**

IF THE VESSEL IS INVOLVED IN AN INCIDENT THAT INVOLVES COLLISION, GROUNDING, POLLUTION, FIRE OR ANY OTHER EMERGENCY, LITASCO GENEVA MUST BE CONTACTED BY TELEPHONE AT THE EARLIEST OPPORTUNITY.

TELEPHONE FIRST CONTACT: DAVID WALKER
MOBILE PHONE: +41 79 448 92 79
OFFICE PHONE: +41 22 705 21 16

TELEPHONE SECOND CONTACT: THIES PETERSEN
MOBILE PHONE: +41 79 255 67 82
OFFICE PHONE: +41 22 705 24 14

TELEPHONE THIRD CONTACT: GUSTAV LIND
MOBILE PHONE: +41 79 370 59 54
OFFICE PHONE: +41 22 705 21 43

IT IS IMPORTANT THAT THE FOLLOWING INFORMATION IS RECONFIRMED AT THE EARLIEST OPPORTUNITY BY EMAIL TO "FIREWALL@LITASCO.CH" THE FIRST WORDS IN THE MESSAGE SHOULD COMMENCE LITASCO INCIDENT REPORT AND CONTAIN THE FOLLOWING INFORMATION:
AA TIME IN GMT AND LT OF INCIDENT AND TIME THAT THIS INCIDENT WAS REPORTED TO THE PERSON FORWARDING THE REPORT TO THE FIREWALL MANAGER
BB NAME OF THE VESSEL
CC LATITUDE OF THE INCIDENT
DD LONGITUDE OF THE INCIDENT
EE NATURE OF THE INCIDENT
FF IF THE INCIDENT INVOLVES ANOTHER VESSEL, THE NAME AND LR/IMO NUMBER OF THE OTHER VESSEL AND THE CARGO THAT OTHER VESSEL IS CARRYING
GG A STATEMENT AS TO ANY INJURIES OR FATALITIES
HH A DESCRIPTION OF THE EXTENT OF THE DAMAGE TO THE VESSEL AND THIRD PARTY VESSEL OR PROPERTY.
II NOTIFICATION AS TO WHETHER THE VESSEL WILL BE ABLE OR HAS CONTINUED ON THE VOYAGE.
JJ IF THE INCIDENT HAS CAUSED DELAY, AN ESTIMATE OF THE DURATION OF THE DELAY.
KK IF THE INCIDENT INVOLVES POLLUTION, STATE:
THE CAUSE OF THE INCIDENT;
THE GRADE(S) OF CARGO THAT HAVE BEEN SPILLED;
THE QUANTITY IN BARRELS THAT HAVE BEEN SPILLED;
A STATEMENT AS TO WHETHER THE POLLUTION IS CONTINUING OR HAS BEEN STOPPED IF THE SPILL IS CONTINUING, AN ESTIMATE OF THE TOTAL AMOUNT IN BARRELS THAT WILL BE SPILLED;
THE LOCAL TIME OF THE OCCURRENCE;
WHAT CLEAN-UP MEASURES ARE BEING TAKEN;
THE LOCATION OF THE VESSEL (CONVENTIONAL TERMINAL, CBM OR SPM);
THE NAME OF THE OPERATOR OF THE INSTALLATION;
THE TIDAL FLOW RATE OR RATE OF CURRENT
LL CURRENT WEATHER AND SEA CONDITION
MM FORECASTED WEATHER AND SEA CONDITIONS FOR NEXT 48 HOURS
NN WHETHER ASSISTANCE HAS ALREADY BEEN SOUGHT AND THE TYPE
OO WHETHER ASSISTANCE HAS BEEN PROVIDED, AND IF SO, THE NATURE AND EXTENT.
PP ESTIMATE OF THE SITUATION IN 12 HOURS TIME
QQ OTHER COMMENTS

**SANCTIONS CLAUSE:**

Not Applicable

**NEW COVID CLAUSE**

1) IF, WHILE THE VESSEL IS AT HER LOAD OR DISCHARGE PORT, OR AT ANOTHER PORT OR PLACE NOMINATED BY CHARTERERS (TOGETHER REFERRED TO AS THE "NOMINATED PORT), THE VESSEL IS IN FACT DELAYED IN BERTHING, LOADING AND/OR DISCHARGING OPERATIONS DUE TO LOCAL LAW OR REGUALTION OR MEASURES (INCLUDING VESSEL QUARANTINE) TAKEN BY THAT NOMINATED PORT'S AUTHORITY AS A DIRECT CONSEQUENCE OF THE CORONA-VIRUS (COVID-19) OUTBREAK (HEREINAFTER A "CORONA VIRUS MEASURE"), ALL TIME LOST DUE TO THE CORONA VIRUS MEASURE SHALL COUNT AS LAYTIME OR IF THE VESSEL IS ON DEMURRAGE, AS TIME ON DEMURRAGE.

2) IF, AT THE NOMINATED PORT, FREE PRATIQUE IS DELAYED, REVOKED OR REFUSED DUE TO A CORONA VIRUS MEASURE AND, AS A CONSEQUENCE THEREOF, OWNERS ARE UNABLE TO TENDER OR RETENDER A VALID NOR WITHIN THE CHARTERPARTY LAYCAN, THEN ALL TIME SPENT AWAITING FREE PRATIQUE SHALL COUNT AS LAYTIME OR IF THE VESSEL IS ON DEMURRAGE, AS TIME ON DEMURRAGE.

3) SHOULD THE NOMINATED PORT BE CLOSED BY THE PORT AUTHORITY DUE TO A CORONA VIRUS MEASURE, TIME SPENT WAITING FOR THE NOMINATED PORT TO REOPEN SHALL COUNT AS LAYTIME OR IF THE VESSEL IS ON DEMURRAGE, TIME ON DEMURRAGE.

4) IF PURSUANT TO PARAGRAPHS (1), (2) AND (3) ABOVE, THE DELAY OR THE WAITING TIME AT THE NOMINATED PORT EXCEEDS FOURTEEN (14) DAYS, THEN THE OWNERS AND CHARTERERS AGREE THAT FROM THE FIFTEEN-TH (15TH) DAY ONWARDS, TIME SHALL COUNT AS HALF LAYTIME, OF IF THE VESSEL IS ON DEMURRAGE, HALF DEMURRAGE.

5) OWNERS AND CHARTERERS AGREE THAT THE OUTBREAK OF CORONA VIRUS (AND CORONA VIRUS MEASURES TAKEN BY THE NOMINATED PORT) SHALL NOT BE CONSIDERED AS A FORCE MAJEURE EVENT OR AS A FRUSTRATING EVENT OF THE CHARTERPARTY.

6) NOTWITHSTANDING ANYTHING TO THE CONTRARY IN PARAGRAPHS 1 TO 5 ABOVE, OR ANYWHERE ELSE IN THE CHARTERPARTY, THE SAFETY AND PROTECTION OF THE CREW AND THE VESSEL REMAINS OWNERS' ABSOLUTE RESPONSIBILTY AND OBLIGATION. OWNERS ARE EXPECTED TO HAVE ENFORCED PRUDENT AND APPROPRIATE CHECKS (INCLUDING BUT NOT LIMITED TO REPEATED TESTING) TO ENSURE THAT THE PERSONS COMING ON BOARD THE VESSEL AND/OR IN CONTACT WITH THE VESSEL ARE NOT INFECTED WITH ANY INFECTUOUS DISEASE (SUCH AS COVID-19) AND ARE FIT AND HEALTHY SO AS NOT TO DELAY OR IMPEDE THE VESSEL´S INTENDED VOYAGE, BERTHING, UNBERTHING AND SAILING OUT, LOADING OR DISCHARGE. PARAGRAPHS 1, 2, 3 AND 4 ABOVE SHALL NOT APPLY WHERE ANY DELAY, COSTS OR WAITING TIME INCURRED IS DUE TO (A) A BREACH BY OWNERS OF THEIR OBLIGATIONS UNDER THIS PARAGRAPH 6, (B) THE NEGLIGENCE OR FAULT OF THE OWNERS, OR (C) A CONFIRMED CASE OF INFECTIOUS DISEASE OF A CREW MEMBER.


Not Applicable


EUROPEAN UNION (EU) LOW SULPHUR FUEL DIRECTIVE:

EUROPEAN UNION (EU) LOW SULPHUR FUEL DIRECTIVE:
OWNER IS REMINDED THAT EU DIRECTIVE 2005/33/EC REGARDING LOW SULPHUR FUEL OIL BECOMES
EFFECTIVE ON 1 JANUARY 2010. AS PER THE TERMS OF PURCHASE, ANY DELAYS, LOST TIME, OR
EXPENSES RESULTING FROM OR ATTRIBUTABLE TO NONCOMPLIANCE WITH THE EU DIRECTIVE SHALL BE
FOR OWNERS ACCOUNT.


LUKOIL ANCHORED COMPLAINCE CLAUSE:

LUKOIL ANCHORED COMPLAINCE CLAUSE:
OWNERS WARRANT THAT THE VESSEL SHALL WHEN STATIONARY BE ANCHORED IN ACCORDANCE WITH
ALL LOCAL REGULATIONS AND REPORTED AS SUCH TO LOCAL AUTHORITIES AS MAY BE NECESSARY OR REQUIRED BY SUCH
COMPETENT AUTHORITIES. VESSEL OWNER WILL KEEP PERMANENT WATCH OVER VESSEL'S DECK AND ENGINE FOR SAFETY AND SECURITY
PURPOSES.


KOREAN AND/OR JAPANESE SUPERINTENDENT:

KOREAN AND/OR JAPANESE SUPERINTENDENT:
IF REQUIRED, KOREAN AND/OR JAPANESE SPEAKING SUPERINTENDENT TO BE FOR OWNER'S ACCOUNT.
(MAX USD 2,500 FOR OWNER'S ACCOUNT)


LUKOIL VETTING CLAUSE

Not Applicable


SUNSET CLAUSE - (APPLICABLE FOR CHINA, SKOREA & JAPAN ONLY):

SUNSET CLAUSE - (APPLICABLE FOR CHINA, SKOREA & JAPAN ONLY):
IF VESSEL ARRIVES AT LOAD PORT AND/OR DISCHARGE PORT AT 15:00 HOURS LT OR LATER THEN TIME TO
COMMENCE AT 07:00HOURS LT THE NEXT MORNING, UNLESS VESSEL ACTUALLY BERTH EARLIER. OWNER
HAS THE OPTION TO ADJUST SPEED IN ORDER TO ARRIVE DISCHARGE PORT WITHIN 07:00 HOURS LT AND
15:00 HOURS LT.


KYC CLAUSE:

KYC CLAUSE:
UPON REQUEST OF EITHER PARTY, THE OTHER PARTY SHALL PROMPTLY PROVIDE SUFFICIENT
DOCUMENTATION TO MEET THE REQUESTING PARTIES INTERNAL DUE DILIGENCE REQUIREMENTS.



tanker voyage charter party

**ExxonMobil VOY2005**

## PREAMBLE

____LONDON____

PLACE

24th February 2022

DATE

IT IS THIS DAY AGREED between _____N2  TANKERS  B.V_____ (hereinafter called "Owner") of the _____Portugal_____ Flag MS / SS _____Nordbay_____ (hereinafter called "Vessel") and _____Litasco SA_____ (hereinafter called "Charterer") that the transportation herein provided for shall be performed subject to the terms and conditions of this Charter, which includes this Preamble and Part I and II. In the event of a conflict, the provisions of Part I will prevail over those contained in Part II to the extent of such conflict.

## PART I

**(A) VESSEL DESCRIPTION AND POSITION:**

Year built:       2007-03-14       Classed:       DNV GL       IMO#:       9319870

Hull Type (as per IOPPC): Double Hull P&I Club:       GARD       H&M value:       22600000

Summer Deadweight: 116104 Metric tons on 14.665 metres in salt water on assigned summer freeboard.

Maximum Cargo Capacity:       128714       Metric tons 37.90% more or less. Vessel's option.

Cubic capacity for cargo (at 98%):       128714       cubic metres, **EXCLUDING SLOPS. SLOP TANK CAPACITY AT 98%: 15,102.80 CUBIC METRES.**
Length overall: 249.00  metres   Beam:   44.00    metres

Inert Gas System:   YES

Crude Oil Wash System:   YES   If Crude Oil Wash is required, the allowed pumping hours specified in Part II, Clause 18 (g) shall be increased by a maximum of       **8 hours AFRAMAX/10 HOURS SUEZMAX** pursuant to Part II, Clause 18 (g).
Vessel has full segregated ballast tanks (SBT):   Yes

Vessel has clean ballast tanks (CBT):

Cargo Tanks Coated:  Yes  Type: EPOXY

Cargo Tanks Coiled:  Yes  Type: heating pipes

Last cargo:   NHC / Novorossiysk to Bourgas     Next to last cargo: Azeri Crude / Ceyhan to Augusta**NEXT TO LAST CARGO: AZERI CRUDE**
Vessel onboard quantity (gross standard volume) on date of Charter:

Vessel location on date of Charter:

Expected ready to load:                         BEFORE LAYCAN

Charter speed in all weather: about 12.5 knots wsnp knots laden.

**(B) LAYDAYS:** Commencing: 05TH MARCH 2022 (00.01) Cancelling: 06TH MARCH 2022 (23.59) - TO BE NARROWED ONE DAY IN CHARTERERS OPTION
**(C) LOADING RANGE(S) / PORT(S) / PLACE(S):** One (1) or **TWO (2)** safe **PORT(S)** 1 SAFE PORT  NOVOROSSIYSK EXCL STS

IF ANY AWRP AT LOAD TO BE FOR CHARTS ACCOUNT.

NO OPEN HATCH SAMPLING – NO INTERNAL TANK TRANSFER

CHOPT TO TOP UP/DISCH RELOAD UNROUTE
AT 1/2 SAFE PORT/STS UKC H-H RANGE INCL STS SKAW WHICH IF EXERCISED TO BE COVERED UNDER THE INTERIM PORT CLAUSE. - N/A THIS CP
**(D) DISCHARGING RANGE(S) / PORT(S) / PLACE(S):** One (1) or **TWO (2)** safe **PORT(S)** 1/2 SAFE PORTS EUROMED NEOBIG EXCL Y/FY/ALB BUT INCL R+O , OR CHOPT

1/2 SAFE PORTS ROMANIAN-BULGARIAN BSEA, OR IN CHOPT

1/2 SAFE PORTS UKC GIB-HAMBURG RANGE INCL STS SKAW BUT EXCL MSC, AVONMOUTH, PETERHEAD, LYME BAY AND DUNDEE.

OR IN CHOPT
1-2 PORT(S) TURKISH MED INCL SEA OF MARMARA EXCL TOC (DISPORT TO BE IN GEO-ROTATION)

BSEA DISCHARGE TO BE DECLARED BY 1200HRS LONDON 01ST MARCH 2022 OTHERWISE THE OPTION BECOMES NULL AND VOID
**(E) CARGO QUANTITY:** MIN 80,000 MTS CHARTERERS OPTION UP TO FULL CARGO, NO DEADFREIGHT FOR CHARTERERS ACCOUNT PROVIDED MIN QUANTITY SUPPLIED.

Full Cargo as defined in Part II, Clause 1 subject to the Maximum Cargo Capacity limits specified in Part I(A):

or

Part Cargo Minimum   100,000  Metric tons with Charterer's option to load up to Full Cargo as described in this

Paragraph (E); provided Part Cargo Minimum is supplied by Charterer, no deadfreight for Charterer's account **PROVIDED MINIMUM QUANTITY SUPPLIED** whether option
exercised or not.

**(F) CARGO DESCRIPTION:** MAX 3 GRADES CRUDE OIL WVNS.

HEAT :  CHARTERERS OPTION TO REQUEST VESSEL TO MAINTAIN/HEAT UP LOADED TEMP UP TO MAX 135 DEG F PROVIDED TIME PERMITS, MAX LOADED TEMP 158F.  ALL COSTS FOR MAINTAINING/HEATING UP TO BE FOR CHARTERERS ACCOUNT PAYABLE AT COST AGAINST SUPPORTING DOCUMENTS  PRESENTED BY OWNERS.

LOT TO APPLY HOWEVER VSL TO WELL DRAIN AND STRIP ALL LINES, TANKS AND PUMPS. IF NECESSARY TANKS TO BE PURGED IN ORDER TO BE SUITABLE TO LOAD FUEL OIL.

OWNERS OPTION TO BUNKER LADEN ALWAYS WITH CHARTERERS PRIOR CONSENT NOT TO BE UNREASONALY WITHELD
**(G) FREIGHT RATE:**

Freight rate for Full Cargo or Part Cargo Minimum (hereinafter called "Base Freight Rate"): WS 110 IF MED/TURKEY/UKC USD 682,500 BSS 1/1 IF ROMANIAN/BULGARIAN BSEA

MIN FLAT AUGUSTA TO APPLY (IF DISCHARGE 2 PORTS TURKEY, THEN + 50 CENTS TO BE ADDED ON

RATE TO BE BASIS GREAT BELT LADEN AND BALLAST - N/A THIS CP

RATE TO BE CALCULATED BASIS SIC/MSN IF APPLICABLE, IF SIC/SIC IS LOWER THEN SIC/SIC TO APPLY

IF STS SKAW MF WHAVEN TO APPLY LESS USD 67,500 - N/A THIS CP

IF TA VESSEL TO TAKE THE SHORTEST ROUTE POSSIBLE HOWEVER IF DUE TO WEATHER CONDITIONS VESSEL GOES VIA DOVER LADEN THEN FREIGHT
TO BE PAID BSS ACTUAL ROUTE TAKEN. OWNERS TO ADVISE CHARTERERS PRIOR WITH SUPPORTING DOCS AS TO INTENDED ROUTING – N/A THIS CP

WSTC 2022 TO APPLY

COMMINGLING/BLENDING CLAUSE –

CHARTERERS TO HAVE THE RIGHT TO COMMINGLE/BLEND AND MASTER TO
EXECUTE THIS OPERATION (THESE OPERATIONS) AS PER CHARTERER'S
INSTRUCTIONS SUBJECT TO SHIP'S SAFETY AND PHYSICAL CAPABILITIES AND BELOW -

A) CHARTERERS WARRANT THAT ANY CARGOES TO BE COMMINGLED/BLENDED ON BOARD SHALL BE STABLE AND
COMPATIBLE AND THAT NO PRECIPITATION OF SOLID DEPOSITS IN CARGO TANKS, PIPES, PUMPS,
VALVES WILL OCCUR, AND IT IS FURTHER AGREED THAT;
B) SUCH BLENDING/COMINGLING SHALL BE ALWAYS IN STRICT COMPLIANCE WITH SAFETY RULES AND CONVENTIONS, AND SUBJECT TO
THE TECHNICAL CHARACTERISTICS OF THE VESSEL;
C) ANY ADDITIONAL COSTS INCURRED AS A RESULT OF BLENDING/COMINGLING OPERATIONS SHALL BE FOR CHARTERER'S ACCOUNT;
D) CHARTERERS SHALL RETURN TO OWNERS FOR CANCELLATION ALL THREE ORIGINALS OF ALL BILLS OF LADING ISSUED IN RESPECT OF THE CARGOES BEING BLENDED/COMINGLED AND FOLLOW BELOW PROCEDURE

FOR REDOCUMENTATION -

1. ALL ORIGINAL BLS TO BE MARKED NULL AND VOID AND THE SCAN COPY SENT IN ADVANCE INCLUDING AIR WAY BILLS TO BE PROVIDED FOR TRACKING. OBLS TO BE SENT TO OWNER'S AMSTERDAM ADDRESS.

2. CHARTERERS ALSO TO CONFIRM IN WRITING THAT ALL BLS HAVE BEEN CANCELLED AND WILL NOT BE USED FOR COMMERCIAL PURPOSE.

3. NEW BL WILL NOT BE AUTHORISED AND VESSEL WILL NOT BE ALLOWED TO DISCHARGE UNTIL SCANS OF ALL CANCELLED BL'S AND AIR WAY BILLS ARE RECEIVED BY OWNERS. CHARTERERS TO RETURN CANCELLED B/L'S ASAP TO OWNERS OFFICE. IF CHARTERERS DELAY TO SEND SCANS OF ALL CANCELLED BL'S AND AIR WAY BILLS OF THE BLS THEN OWNERS / VESSEL /AGENTS AND OR SERVANTS (INCLUDING CREW) WILL NOT BE HELD RESPONSIBLE FOR ANY DELAYS AND ALL TIME FOR SUCH DELAYS WILL BE FOR CHARTERERS ACCOUNT AND COUNT AS LAYTIME /DEMURRAGE.

4. THE NEW BL WILL HAVE TO INCLUDE FOLLOWING WORDING IN ORDER TO CLEARLY REFLECT THE ORIGIN OF THE CARGO -  A+B MT OF XXXX OIL COMMINGLED/BLENDED ONBOARD OF QTY A MT OF XXXX OIL LOADED AT XXXXXX ON XX OF MONTH 20XX, AND QTY B MT OF FUEL OIL LOADED AT XXXX ON XX OF MONTH 20XX.

5. RECUT B/LS WILL BE COVERED BY THE INDEMNITY SET OUT IN THIS CLAUSE.


IF CHARTERERS EXERCISE THIS OPTION THEY WILL HOLD OWNERS HARMLESS AND KEEP THEM FULLY INDEMNIFIED AGAINST ALL CLAIMS FOR COMINGLING/BLENDING AND / OR CONTAMINATION OR QUALITY/QUANTITY DETERIORATION OR OFFSPECIFICATION RESULTING DIRECTLY FROM THE CARGO OPERATIONS PERFORMED AND ISSUE ATTACHED LETTER OF INDEMNITY TO COVER THE OPERATION/OPERATIONS.

LOI FOR BLENDING COMMINGLING ATTACHED
Freight rate for quantity above Part Cargo Minimum (hereinafter called "Overage Freight Rate"): IF ANY AT 50 %

**(H) BILLING:**

Freight, deadfreight, demurrage and any other monies payable to Owner pursuant to this Charter shall be payable in

United States dollars and invoiced to Charterer at:

and paid to Owner at: FREIGHT PAYMENT DETAILS:
N2 TANKERS B.V.


**(I) LAYTIME:** Total Laytime in running hours: 72 HOURS

**(J) DEMURRAGE / DEVIATION PER DAY:**

In accordance with Part II, Clause 8, demurrage and/or deviation per day shall be based on:

Summer deadweight of     116104          Metric tons

or

Part Cargo Minimum plus      100,000      Metric tons totalling       Metric tons

or

United States dollars $24,000 USD PDPR per day pro rata

**(K) SPECIAL PROVISIONS:**

**(L) INCORPORATED CLAUSE(S):**

The following specified Clause(s), the text(s) of which are attached hereto, **ADDITIONAL LITASCO CLAUSES 1-30 AS ATTACHED** shall be deemed incorporated in and made
a part of this Part I.


IN WITNESS WHEREOF, the parties have caused this Charter, consisting of a Preamble, Parts I and II, to be executed in

duplicate as of the day and year first above written.


WITNESS:                                        _____
                                                                Owner
_____     By:_____

WITNESS:

_____

_____

Charterer

By:_____

PART II

1. DEFINITIONS. In this Charter:
  (a) "place" shall mean any berth, dock, anchorage, sea terminal, submarine line, alongside vessel and/or lighter, whether at anchor or
underway, and/or any other place to which Charterer is entitled to order Vessel hereunder.
  (b) "ILL Convention" shall mean the International Load Line Convention, 1966, or any amendment thereof as may be applicable to the
voyage(s) to be performed hereunder.
  (c) "Full Cargo" shall mean a cargo which fills Vessel to its minimum freeboard, as permitted by the ILL Convention, or fills the cubic
capacity of Vessel's available cargo spaces, whichever occurs first, after leaving appropriate space in the tanks for the expansion of
cargo.
  (d) "Arrival in Berth" shall mean the completion of mooring of the Vessel when loading or discharging at a sea terminal, Vessel being all
fast with gangway down and secure when loading or discharging alongside a wharf/berth or Vessel being all fast alongside a barge,
lighter or other vessel when loading from or discharging to a barge, lighter or other vessel.
  (e) Where it is stipulated herein that the Vessel shall meet some "requirement", such stipulation shall be taken to include any requirement
that might be placed upon the Owner, operator, and/or personnel of the Vessel.
  (f) "Affiliate" shall mean any company which is directly or indirectly owned or controlled, in whole or in part, by Exxon Mobil Corporation.
  (g) Where it is stipulated herein that notices, advices, consents, approvals and other communications be given, same may, unless otherwise
specified herein, be given by electronic mail, telex, facsimile, telephone or radio (if telephone or radio, subsequently confirmed in writing).

2. VESSEL
  (a) DESCRIPTION / CONDITION. Owner warrants that, from the time when the obligation to proceed to the loading port(s) or place(s)
attaches and throughout Vessel's service under this Charter, Vessel shall be as described in Part I (A). Owner further warrants that, during
the period just described, Owner shall exercise due diligence to ensure that Vessel and its hull, machinery, boilers, all tanks and all other
equipment including, but not limited to, pipes, pumps, valves, inert gas and crude oil wash systems (if Vessel is so equipped), navigational
equipment, heating coils and facilities, shall be fully functional and in good working order and condition and in every way seaworthy and fit
to carry cargo and perform the voyage(s) required under this Charter.
  (b) COMPLEMENT. Owner warrants that, during the period described in Paragraph (a) of this Clause, Vessel shall have a full and
efficient complement of Master, officers and crew, with adequate training and experience in operating all Vessel's equipment, including,
but not limited to, inert gas and crude oil wash systems (if Vessel is so equipped), and that Master and all officers shall possess valid
and current certificates/documents issued or approved by the country of Vessel's registry. Owner further warrants the conversational
English language proficiency of Master and officer(s) in charge of cargo and bunker oil handling.
  (c) COMPLIANCE. Owner warrants that Vessel shall, during the period described in Paragraph (a) of this Clause, be in full compliance with
all applicable international conventions, all applicable laws, regulations and/or other requirements of the country of Vessel registry and of
the countries of the port(s) and/or place(s) to which Vessel may be ordered hereunder and all applicable regulations and/or requirements
of any terminals or facilities in such port(s) or place(s) where Vessel shall load or discharge. Owner further warrants that Vessel shall have
on board, during the subject period, all certificates, records or other documents required by the aforesaid conventions, laws, regulations
and/or requirements.
  (d) BREACH. If any of the warranties stipulated in this Clause are breached, any **DIRECT** delay resulting therefrom shall not count as laytime or,
if Vessel is on demurrage, as time on demurrage, and any expense attributable to such delay shall be for Owner's account.
  (e) SALE. Owner warrants that the Vessel has not been sold, is not on offer to be sold, and will not be offered for sale during the period
of this Charter.

3. CLEANING.
  (a) Owner shall clean the tanks, pipes and pumps of Vessel at its expense to the satisfaction of ~~Charterer's representative(s)~~ **INDEPENDENT
SURVEYOR ACCEPTABLE BY BOTH PARTIES**. If the cargo
specified in Part I (F) is clean product and inspection of the tanks is required, Owner shall gasfree the tanks as necessary. Any time used
for tank inspection and any re-inerting of Vessel shall count as laytime or, if Vessel is on demurrage, as time on demurrage. Any time
required for cleaning and gasfreeing shall not count as laytime or, if Vessel is on demurrage, as time on demurrage. Compliance with this
Clause shall not be deemed compliance with Owner's obligations under Clause 2, which are in no way lessened by this Clause.
  (b) Vessel shall not be responsible for any admixture, if more than one quality of cargo is shipped, nor for contamination or deterioration
in quality of the cargo unless the admixture, contamination or deterioration results from (i) unseaworthiness existing at the inception of
loading which was discoverable by the exercise of due diligence or (ii) error or fault of the servants of Owner in the loading, care or
discharging of the cargo.
  (c) In performing its obligations under this Clause 3, Owner shall comply with the latest ISGOTT guidelines.

4. VOYAGE(S)
  (a) Vessel shall proceed ~~with utmost dispatch~~ **AS PER THE AGREED C/P SPEED - ABOUT 12.5 KNOTS -** to any port(s) or place(s) as ordered by
Charterer in accordance with Part I (C) and there load
a cargo as specified in Part I (E) and (F). On completion of loading, Vessel shall then with utmost dispatch proceed to any port(s) or place(s)
as ordered by Charterer in accordance with Part I (D) and there deliver said cargo. Except when required by reason of Vessel fault,
lightering within port limits shall be at Charterer's expense.
  (b) Owner shall timely transmit Charterer's voyage instructions in their entirety to the Vessel for Master's implementation. Owner shall ensure
that Charterer is promptly advised of all accidents to, and/or pollutions involving, the Vessel and of any Vessel system failure.
Notwithstanding anything contained in this Charter or in the voyage instructions, the Master and Owner shall continue to be fully and solely
responsible for the operation, management and navigation of the Vessel throughout the Vessel's service under this Charter.
  (c) Owner warrants that, throughout Vessel's service under this Charter, Owner shall have full and valid Protection and Indemnity
Insurance ("P&I Insurance") for the Vessel, as described herein, with the P&I Insurance placed with a P&I Club which is a Member of the
International Group of P&I Clubs. This P&I Insurance shall be at no cost to Charterer. The P&I Insurance must include full coverage against
liability for cargo loss/damage and coverage against liability for pollution for an amount not less than US $1,000 Million (One Billion
Dollars) per incident. If requested by Charterer, Owner shall promptly furnish to the Charterer proper evidence of such P&I Insurance upon
signing this Charter or at any time during the Charter term. The above warranty is to be regarded as an essential part of this Charter,
which is conditional on its truth or performance, so that its breach entitles the Charterer, in Charterer's option, to terminate the Charter
and/or to recover any **DIRECT** damages allowable in law.

5. MAXIMUM CARGO. In no event shall Charterer be required to provide, nor shall Vessel load, a cargo quantity in excess of a Full Cargo.
In addition, Charterer shall not be required to provide a cargo quantity in excess of the maximum cargo capacity specified in Part I (A).
All time lost and **DIRECT** expense incurred by reason of Vessel loading a quantity of cargo which puts Vessel, at any stage of the voyage(s)
hereunder, below the marks permissible under the ILL Convention shall be for Owner's sole account.

6. FREIGHT.
  (a) Freight shall be paid at the rate stipulated in Part I (G) and shall be computed on gross quantity as stated on the Bill of Lading and

on quantity of documented tank washings if freight thereon is payable in accordance with Clause 33 (a); provided, however, that no freight shall be payable on any quantity of cargo which puts Vessel, at any stage of the voyage(s) hereunder, below the marks permissible under the ILL Convention. Deadfreight shall be paid in accordance with Clause 7. Except as provided in Clause 18 (h), no deduction from freight shall be made for water and/or sediment contained in the cargo, nor for any claim Charterer or cargo interests may have against Owner or Vessel arising under this Charter or Bills of Lading issued for the cargo. Payment of freight shall be made by Charterer without discount upon Charterer's receipt of notice of completion of discharge of cargo at last discharging place less any disbursements made to Master or Owner's agent(s) at port(s) or place(s) of loading and/or discharging plus cost of insurance, commissions and expenses on said disbursements and/or other costs incurred by Charterer on Owner's behalf pursuant to this Charter.

(b) WORLDSCALE. Unless otherwise stipulated herein, all rates, hours, terms and conditions in the Worldwide Tanker Nominal Freight Scale current on the date of this Charter (hereinafter called "WORLDSCALE") shall apply to this Charter regardless of when Vessel loads.

(c) If cargo is carried between places and/or by a route for which no rate is expressed in WORLDSCALE, then, in the absence of agreement as to the freight rate, the parties hereto will apply to either of the publishers of WORLDSCALE for a binding determination of an appropriate WORLDSCALE rate.

(d) Regardless of whether or not the freight specified in Part I (G) is lumpsum, for the purposes of Section 4(5) of the Carriage of Goods by Sea Act of the United States, or the corresponding provisions of any international regime that may otherwise apply in accordance with Clause 27, Owner and Charterer agree that the customary freight unit, shipping unit or unit (as the case may be) of the cargo is Metric ton.

(e) Owner shall deduct in favor of Charterer an address commission of one point two five percent (1.25%) from freight, deadfreight, and demurrage payable under this Charter. Owner shall clearly identify such deduction on the freight, deadfreight and/or demurrage invoice.

7.    DEADFREIGHT. Should the entire cargo quantity specified in Part I (E) not be supplied, Master shall give immediate notice to Charterer that such cargo quantity has not been furnished, indicating shortage, and shall then await Charterer's instructions. Should Charterer fail to provide further cargo, Vessel, upon request of Charterer, shall then proceed on its voyage provided that the tanks in which the cargo is loaded are sufficiently filled to put it in a seaworthy condition. If any delay is caused to Vessel by reason of Master waiting for Charterer's instructions as aforesaid, such delay shall count as laytime or, if Vessel is on demurrage, as time on demurrage and any expense incurred by Vessel attributable solely to such delay shall be for Charterer's account. Deadfreight shall be paid at the Base Freight Rate on the shortage (being the difference between the cargo quantity specified in Part I (E) and the quantity loaded as shown on the Bills of Lading) provided such deadfreight charge is fully documented by cable advice from Master or by deadfreight certificate. Charterer shall be credited with any freight on residues earned by Owner in accordance with Clause 33(a)(iii).

8.    DEMURRAGE / DEVIATION RATE. The rate for demurrage and/or deviation shall be the fixed dollar figure specified in Part I (J) or the rate derived by determining the applicable rate from the WORLDSCALE Demurrage Table for tonnage specified in Part I (J) and multiplying that rate by the Base Freight Rate. If a Part Cargo Minimum basis is specified in Part I (E) and Charterer exercises its option to load additional cargo, any demurrage and/or deviation shall, nevertheless, remain payable at either the aforesaid fixed dollar rate or at the aforesaid rate based on the tonnage specified in Part I (J), whichever is applicable. The applicable rate under this Clause shall hereinafter be called "Demurrage Rate" or "Deviation Rate" as is appropriate.

9.    LOADING AND DISCHARGING PORT(S) / PLACE(S).
(a) Charterer shall nominate loading or discharging port(s) and/or place(s) or order Vessel to a destination for orders. If Vessel is ordered to a destination for orders, Charterer shall thereafter nominate loading or discharging port(s) and/or place(s). All such nominations or orders shall be made in sufficient time to avoid delay to Vessel.

(b) CHANGE OF DESTINATION. After nominating loading and/or discharging port(s) or place(s) pursuant to Paragraph (a) of this Clause, Charterer may nominate new port(s) or place(s), whether or not they are within the range of the previously nominated port(s) or place(s) and/or vary the rotation of any nominated port(s) or place(s) and Owner shall issue instructions necessary to make such change(s). It is understood and agreed, however, that the aforesaid option to nominate new loading port(s) or place(s) in different ranges shall lapse on Vessel tendering Notice of Readiness at a nominated loading port or place and that aforesaid option to nominate new discharging port(s) or place(s) in different ranges shall lapse on Vessel tendering Notice of Readiness at a nominated discharging port or place. If a change to, or varying the rotation of, nominated port(s) or place(s) occurs or if Vessel is sent to a destination for orders, any time by which the steaming time to the port(s) or place(s) to which Vessel is finally ordered exceeds that which would have been taken if Vessel had been ordered to proceed to such port(s) or place(s) in the first instance shall be compensated at the Deviation Rate per running day and pro rata for a part thereof. In addition, Charterer shall pay for extra bunkers consumed during such excess time at Owner's documented actual replacement cost at the port where bunkers are next taken.

(c) Any order of Vessel to a destination for orders, all nominations and any renominations pursuant to this Clause shall be consistent with Part I (C) and (D).

10.    ESTIMATED TIME OF ARRIVAL (ETA) - WHERE APPLICABLE.
(a) Unless otherwise instructed, the following Estimated Time of Arrival (ETA) notifications shall be given. As soon as commencing the voyage to the nominated loading port(s) or place(s), but in no event later than seventy-two (72) hours prior to the commencement of laydays specified in Part I (B), PROVIDED DURATION OF VOYAGE PERMITS, Master shall advise Charterer and Vessel's agent and terminal of Vessel's estimated date and time of arrival
at the nominated loading port(s) or place(s). Further, provided the length of the voyage permits, Master shall confirm or amend such advice seventy-two (72), forty-eight (48) and twenty-four (24) hours prior to Vessel's arrival at the loading port(s) or place(s). On leaving the final loading port or place, Master shall advise Charterer and Vessel's agent of Vessel's estimated date and hour of arrival at the nominated discharging port(s) or place(s). Further, provided the length of the voyage permits, Master shall confirm or amend such advice seventy-two (72), forty-eight (48) and twenty-four (24) hours prior to Vessel's arrival at the discharging port(s) or place(s). In addition, on leaving the final loading port or place, Master shall advise Charterer of expected maximum draft at arrival and, provided the length of voyage permits, shall confirm or amend such advice no later than seventy-two (72) hours prior to Vessel's arrival at the discharging port(s) or place(s).

(b) An alteration of more than three (3) hours in the twenty-four (24) hour notice or an alteration of more than twelve (12) hours in any other advice given pursuant to Paragraph (a) of this Clause shall be advised by Master to Charterer and Vessel's agent.

(c) If, for any reason, Vessel is unable to trim to even keel for arrival at the discharging port(s) or place(s), Master shall give notice of this to Charterer as soon as possible after receiving such loading instructions but no later than sailing from the final loading port or place. Such notice shall include Vessel's estimated arrival draft forward and aft.

(d) If Master fails to comply with the requirements of Paragraphs (a), (b) and/or (c) of this Clause, any delay resulting therefrom at loading and/or discharging port(s) or place(s) shall not count as laytime or, if Vessel is on demurrage, as time on demurrage.

(e) At each loading and discharging port or place, Master or Vessel's agent shall promptly notify Charterer of the dates and times the following events occurred:
  • Notice of Readiness to load/discharge tendered;
  • All fast;
  • Hoses connected;
  • Hoses disconnected;

- All cargo documents on board; and    147
- Vessel sailed.    148

11.   NOTICE OF READINESS. Upon arrival at customary anchorage or waiting place at each loading and discharging port or place, Master   149
or Vessel's agent shall give Charterer or its representative notice that Vessel is in all respects ready to load or discharge cargo, berth or   150
no berth. ~~At each load port or place, the Vessel shall be fully bunkered for the intended voyage and the Notice of Readiness shall, without~~   151
~~limitation, confirm such bunkering.~~ VESSEL SHALL HAVE SUFFICIENT BUNKERS TO PERFORM INTENDED VOYAGE. IN CASE OF NEED   152
FOR BUNKERING DURING LADEN PASSAGE OWNERS TO GET CHARTERERS' CONSENT PRIOR ARRANGING SUCH AN OPERATION
EXCEPT IN CASE OF EMERGENCY AND STATUS OF FORCE MAJEURE.

12.   CANCELLATION OF CHARTER. ~~If Vessel has not tendered a valid Notice of Readiness ("NOR") by 1600 hours local time on the~~   153
~~Cancelling Date specified in Part I (B) ("Cancelling Date"), Charterer shall have the right to cancel this Charter by notifying Owner or~~   154
~~Owner's agent of such cancellation within forty-eight (48) hours local time after expiration of the said Cancelling Date, falling which this~~   155
~~Charter shall remain in full force and effect; in which case, laytime shall commence no earlier than forty-eight (48) hours after the tender~~   156
~~of NOR or on the commencement of loading, whichever occurs first. Charterer's cancellation option shall continue to apply even if Vessel~~   157
~~tenders NOR within the forty-eight (48) hour period after expiration of the Cancelling Date. However, if Vessel is delayed by reason of~~   158
~~Charterer's change of orders pursuant to Clause 9 and/or by ice risks as stipulated in Clause 21, the Cancelling Date shall be extended,~~   159
~~with the option of cancellation as aforesaid, by any time so directly lost. Cancellation or failure to cancel shall be without prejudice to any~~   160
~~claims for damages Charterer may have for late tender of Vessel's services.~~ IF DUE TO CIRCUMSTANCES VESSEL APPEARS TO BE MISSING   161
HER CANCELLING DATE OWNERS TO NOTIFY CHARTERERS OF THE DELAY INVOLVED AND CHARTERERS TO DECLARE WITHIN 48
WORKING HOURS FROM RECEIPT OWNERS NOTIFICATION THEIR DECISION TO MAINTAIN THE CHARTER PARTY OR CANCEL SAME
WITHOUT ANY RECOURSE / RESERVATION BY EITHER PARTY.

13.   LAYTIME / DEMURRAGE.   162

(a) COMMENCEMENT / RESUMPTION. Laytime or time on demurrage, as herein provided, shall commence or resume upon the   163
expiration of six (6) hours after receipt by Charterer or its representative of Notice of Readiness or upon Vessel's Arrival in Berth, whichever   164
occurs first. Laytime shall not commence before 0600 hours local time on the Commencing Date specified in Part I (B) unless Charterer   165
shall otherwise agree, in which case Laytime shall commence upon commencement of loading.   166

(b) EARLY LOADING. In the event Charterer agrees to load Vessel prior to commencement of laydays, laytime will begin at   167
commencement of loading and the amount of this LAYTIME from commencement of loading until 0600 hours local time on the commencing date   168
specified in Part I (B), shall be added to the laytime specified in Part I (I).   169

(c) DURATION. The laytime specified in Part I (I) shall be allowed free of expense to Charterer for the purpose of loading and discharging   170
cargo and all other Charterer's purposes. Laytime or, if Vessel is on demurrage, time on demurrage, shall continue until all cargo hoses   171
have been completely disconnected upon the final termination of the loading or discharging operation. Disconnection of all cargo hoses   172
shall be promptly effected. If Vessel is delayed in excess of ~~two (2)~~ THREE (3) hours after such disconnection of cargo hoses solely for Charterer's   173
purpose, laytime or, if Vessel is on demurrage, time on demurrage shall resume upon the expiration of said two (2)-hour period and shall   174
continue from that point until the termination of such delay.   175

(d) PAYMENT. Charterer shall pay demurrage per running day and pro rata for a part thereof for all time by which the allowed laytime   176
specified in Part I (I) is exceeded by the time taken for loading and discharging and for all other Charterer's purposes and which, under   177
this Charter, counts as laytime or as time on demurrage.   178

14.   LAYTIME / DEMURRAGE CONSEQUENCES.   179

(a) SPECIFIED. Any delay to Vessel after the expiration of six (6) hours from Charterer's receipt of Notice of Readiness before Arrival in   180
Berth or any delay to Vessel after Arrival in Berth, due to unavailability of berth (prior to Arrival in Berth), unavailability of cargo, or solely   181
for Charterer or terminal purposes, shall count as laytime or, if Vessel is on demurrage, as time on demurrage.   182

(b) HALF-RATE DEMURRAGE. If demurrage is incurred and the Vessel has been delayed in berthing, loading and/or discharging   183
(hereinafter in this Paragraph (b) called "Delay") due to: weather and/or sea conditions; fire; explosion; strike; picketing, lockout,   184
slowdown, stoppage or restraint of labor; breakdown of machinery or equipment in or about the facilities of Charterer, supplier, shipper   185
or consignee of the cargo (hereinafter in this Paragraph (b) separately and jointly called "Listed Conditions"), be the Delay prior to or after   186
the expiration of laytime, that span of time on demurrage equal to the period or periods of Delay as just described shall be paid at half   187
of the Demurrage Rate. If, during a period of Delay, Listed Conditions co-existed, along with any of the other conditions described in   188
Paragraph (a) of this Clause 14, the Listed Conditions shall conclusively be deemed to be sole cause of the Delay, either if they caused   189
the Delay independently of the other conditions or could have caused the Delay if the other conditions had not so co-existed. Weather   190
and/or sea conditions shall include, but not be limited to, lightning, restricted visibility (the term "restricted visibility" shall mean any   191
condition in which visibility is restricted by fog, mist, falling snow, ice, heavy rainstorms, sandstorms and any other similar causes), storm,   192
wind, waves and/or swells. The provisions of Paragraph 14(b) shall apply irrespective of any option given in Part I (C) and (D). The   193
foregoing provisions as to payment of half the Demurrage Rate in respect to weather and/or sea conditions shall not apply where the   194
Vessel is lightered or discharged at sea.   195

(c) EXCLUSIONS. Notwithstanding the provisions of any other Paragraph of this Clause or any other Clause of this Charter to the   196
contrary, time shall not count as laytime or, if Vessel is on demurrage, as time on demurrage, if such time is spent or lost:   197

(i) As a result of labor dispute, strike, go slow, work to rule, lockout, stoppage or restraint of labor involving Master, officers or   198
crew of Vessel or tugboats or pilots unless, in the case where Charterer has load/discharge port options, a labor dispute, strike, go slow,   199
work to rule, lockout, stoppage or restraint of labor of tug boats or pilots, is in force at the port at the time Charterer nominated such port;   200

(ii) On an inward passage, including, but not limited to, ~~awaiting daylight, tide, tugs or pilot,~~ and moving from anchorage or   201
other waiting place, even if lightering has taken place at the anchorage or other waiting place, until Vessel's Arrival in FIRST Berth;   202

(iii) Due to overflow, breakdown, inefficiency, repairs, or any other conditions whatsoever attributable to Vessel, Master,   203
officers, crew and/or Owner, including inability to load or discharge the cargo within the time allowed and/or failure to meet Vessel   204
warranties stipulated in this Charter;   205

(iv) Due to Owner ~~or port authority~~ prohibiting loading or discharging;   206

(v) By reason of local law or regulations, action or inaction by local authorities (including, but not limited to, Port, Coast Guard,   207
Naval, Customs, Immigration and/or Health authorities), with the exception, however, of port closure due to weather and/or sea conditions;   208

(vi) In ballasting or deballasting, lining up and/or draining of pumps/pipelines, cleaning of tanks, pumps, pipelines, bunkering   209
or for any other purposes of the Vessel only, unless same is carried out concurrent with loading and/or discharging so that no loss of   210
time is involved; or   211

(vii) Due to an escape or discharge of cargo and/or pollutant substances (herein after called "pollutants") or the threat of an   212
escape or discharge of pollutants on or from Vessel. (The phrase "threat of an escape or discharge of pollutants" shall for the purposes   213
of this paragraph (vii) mean a grave and imminent danger of the escape or discharge of pollutants which, if it occurred, would create a   214
serious danger of pollution damage).   215

(d) OTHER REFERENCES. Laytime and demurrage references are also contained in the following Clauses:   216

Clause: 2 (d) Vessel-Breach   217

| | |
|---|---|
| 3 (a) Cleaning | 218 |
| 5 Maximum Cargo | 219 |
| 7 Deadfreight | 220 |
| 8 Demurrage/Deviation Rate | 221 |
| 10 (d) Estimated Time of Arrival (ETA) | 222 |
| 13 Laytime/Demurrage | 223 |
| 15 (b) and (c) Lightering/Cargo Advisor | 224 |
| 16 (c) and (d) Shifting and Off Berth | 225 |
| 17 (d) Cargo Measurement | 226 |
| 18 (a) (c) (d) (f) and (g) Pumping In and Out | 227 |
| 19 Back Loading | 228 |
| 21 (b) Ice-At Port | 229 |
| 22 Dry Cargo | 230 |
| 23 Quarantine | 231 |
| 24 (b) Inspection-Bunker Sampling | 232 |
| 25 Heat | 233 |
| 27 (c) Bills of Lading | 234 |
| 29 (b) Exceptions | 235 |
| 33 (a) Clean Seas-Handling of Tank Washings | 236 |
| 36 Waiver of Claims | 237 |

(e) UNSPECIFIED. Any delays for which laytime/demurrage consequences are not specifically allocated in this or any other Clause of this Charter and which are beyond the reasonable control of Owner or Charterer shall count as laytime or, if Vessel is on demurrage, as time on demurrage. If demurrage is incurred, on account of such delays, it shall be paid at half the Demurrage Rate.    238 239 240

15.   LIGHTERING / CARGO ADVISOR.    241

(a) Any partial lightering or lightering to extinction, at sea or at a place outside a port, shall be conducted in accordance with the latest OCIMF guidelines for ship-to-ship transfers and with port authority approval, if applicable. The Vessel shall not lighter, either partially or to extinction, as just described, without prior consent or specific request from Charterer.    242 243 244

(b) Where lightering is requested by Owner or required by reason of fault attributable to Vessel, all expense and time related to the lightering shall be for the account of Owner, irrespective of any consent from Charterer.    245 246

(c) Any lightering, at sea or at a place outside a port, except as described in subparagraph (b), shall be at the expense of Charterer and, notwithstanding Clauses 11, 13 (a) and 14 (a) and (b), time used for such lightering shall count as laytime or as time on demurrage, as provided below:    247 248 249

    (i) If Vessel is partially lightered at sea or at a place outside a port, laytime or, if Vessel is on demurrage, time on demurrage shall commence when Vessel arrives at the lightering site designated by Charterer and shall end when disconnecting of the cargo hoses **AND MOORING LINES RELEASED AND CHARTERERS AND THEIR AGENTS PERSONNEL DISEMBARK** from the last cargo receiving vessel has been completed.    250 251 252

    (ii) If Vessel is lightered to extinction at sea or at a place outside a port, laytime or, if Vessel is on demurrage, time on demurrage shall commence upon the expiration of six (6) hours after Vessel arrives at the lightering site designated by Charterer or when Vessel is all fast alongside the first cargo receiving vessel, whichever occurs first, and end when disconnection of the cargo hoses from the last cargo receiving vessel has been completed.    253 254 255 256

(d) If Vessel is lightered to extinction at sea, freight payment shall, in the absence of agreement as to the appropriate freight rate, be based on the freight rate stipulated in Part I (G) multiplied by a flat rate which shall be obtained from the Worldscale Association (London) Limited or the Worldscale Association (NYC) Inc. If Vessel is partially lightered at sea, the lightering site shall not constitute a port or place additional to those specified in Part I (D) and the freight rate for the voyage shall be the same as if the lightering had not taken place, **UNLESS IT IS SO DESIGNATED BY WORLDSCALE** Charterer,    257 258 259 260

however, shall reimburse Owner for any time by which the steaming time to the final discharging port or place exceeds that which would have been taken if Vessel had not lightered at the Deviation Rate per day or pro rata for a part thereof. In addition, Charterer shall pay for extra bunkers consumed by Vessel during such excess time at Owner's documented actual replacement cost at the port where bunkers are next taken.    261 262 263 264

(e) With respect to any loading or discharging in port or at sea, Charterer may, at its option and cost, place on the Vessel one or more cargo advisors to monitor the loading, lightering and/or discharge of cargo and, if applicable, the inert gas and/or crude oil washing. It is understood and agreed however, that the Master and Owner shall continue to be fully and solely responsible for the operation, management and navigation of Vessel during the entire loading, lightering and/or discharging operation.    265 266 267 268

16.   LOADING / DISCHARGING PLACE.    269

(a) Vessel shall not be required to berth where the maximum draft of Vessel is greater than the depth of water at low tide. In such cases, Charterer undertakes to discharge sufficient cargo into vessels and/or lighters within port limits to enable Vessel to safely reach and lie at berth always afloat.    270 271 272

(b) SAFE LOCATION(S). Charterer shall exercise due diligence to order Vessel to port(s) or place(s) which are safe for Vessel and where it can lie always safely afloat. Notwithstanding anything contained in this or any other Clause in this Charter to the contrary, Charterer shall not be deemed to warrant the safety of any such port(s) or place(s) and shall not be liable for any loss, damage, injury or delay resulting from any unsafe condition at such port(s) or place(s) which could have been avoided by the exercise of reasonable care on the part of the Master or Owner. The term "safe", as used in Part I (C) and (D), shall be construed to be consistent with Charterer's obligation as set forth in this Paragraph (b).    273 274 275 276 277 278

(c) SHIFTING. Charterer shall have the right to shift Vessel within any port of loading and/or discharging from one loading or discharging place back to the same or to another such place once or more often. In the event that Charterer exercises this right, Charterer shall pay all additional expenses properly incurred, including additional Bunkers. Time spent shifting shall count as laytime or, if Vessel is on demurrage, as time on demurrage. For purposes of freight payment, the places grouped in port and terminal combinations in WORLDSCALE are to be considered as berths within a single port, with Charterer paying shifting expenses in accordance with the foregoing.    279 280 281 282 283

(d) OFF BERTH. Charterer or terminal operator shall have the right to shift Vessel from a loading and/or discharging place if Vessel fails to meet the pumping and/or heating warranties stipulated in Clauses 18 and 25 so as to avoid delay to other vessels waiting to use such place. Charterer or terminal operator shall also have the right to shift Vessel from a loading and/or discharging place due to an unsafe condition of Vessel or failure of Vessel to meet the warranties of Clauses 2(a), (b) and/or (c). In such situation(s), Charterer shall not be obliged to provide an alternative loading or discharging place to the place from which Vessel was shifted. However, Charterer shall exercise due diligence to arrange prompt reberthing and commencement of loading or discharging once Vessel has corrected deficiency(ies). All expenses related to this shifting and any reberthing shall be for Owner's account and all time lost by reason of the    284 285 286 287 288 289 290

foregoing shall not count as laytime or, if Vessel is on demurrage, as time on demurrage. An Off Berth reference is also contained in Clause 291
24 (b).                                                                                                                                                                                                                                                     292

17.       CARGO MEASUREMENT.                                                                                                                                                                                       293
(a) Prior to loading, Master shall measure the on board quantities of cargo, water and sediment residues which are segregated in all 294
holding tanks and slop tanks and those which remain in cargo tanks and, if requested, shall advise supplier(s) and Charterer of such 295
quantities. After loading, Master shall determine the cargo quantities loaded, expressing these cargo quantities in barrels at standard 296
temperature (60°F), using for such calculations the latest Manual of Petroleum Measurement Standards issued by the American Petroleum 297
Institute (API MPMS) or similar standards issued by the American Society for Testing and Materials. A written tank-by-tank ullage report 298
containing all measurements of oil, water and sediment residues on board prior to loading and quantities of cargo loaded shall be 299
prepared and promptly submitted by Master to Charterer.                                                                                                                        300
(b) If Master's calculations of cargo loaded (oil, water and sediment residues on board excluded), after applying the Vessel's Experience 301
Factor (VEF), show any deficiency from the Bill of Lading figures, Master shall, if investigation and recalculation verify such deficiency, issue 302
a Letter of Protest to supplier(s) (which should, if practical, be acknowledged) and shall advise Charterer of such deficiency immediately 303
and thereafter shall send a copy of the Letter of Protest to Charterer. Vessel shall have on board sufficient historical information for the 304
calculation of a VEF using the latest edition of the API MPMS. Master shall calculate and apply the VEF as so determined during all 305
loadings.                                                                                                                                                                                                                      306
(c) Prior to discharging, Master shall measure the quantity of each grade of cargo on board, expressing these quantities in barrels at 307
standard temperature (60°F), using the same calculation procedures specified in Paragraph (a) of this Clause. Before and after discharging, 308
Master shall cooperate with shore staff to ascertain discharged quantities. Vessel shall be obliged to discharge all liquid cargo and, if 309
ordered by Charterer, any residues of cargo, water and sediment. Vessel's just-mentioned obligation shall not in any way be qualified or 310
limited by any purported custom of the trade which is based on a stated in-transit loss or which otherwise would excuse Vessel from 311
discharging all liquid cargo and residues.                                                                                                                                                         312
(d) An inspector may be employed by Charterer at its expense to verify quantities and qualities of cargo and residues on board Vessel at 313
both loading and discharging port(s) and/or place(s). If Vessel is equipped with an Inert Gas System, depressurization of tanks to permit 314
ullage measurements shall be allowed in accordance with the provisions of the most recent Inert Gas Systems for Oil Tankers publication 315
issued by the International Maritime Organization (IMO). Any time used solely for such inspections and/or measurements shall count as 316
laytime or, if Vessel is on demurrage, as time on demurrage.                                                                                                                              317

18.       PUMPING IN AND OUT.                                                                                                                                                                                           318
(a) Hoses for loading and discharging shall be furnished by Charterer and shall be connected and disconnected by Charterer or by Owner, 319
at Charterer's option. When Vessel loads and/or discharges at sea terminal(s), Vessel shall be properly equipped, at Owner's expense, 320
for operations at such terminal(s), including suitable anchors, ground tackle, mooring lines and equipment for handling submarine hoses. 321
Vessel shall also be properly equipped with a sufficient number of cargo manifold reducing pieces of steel or comparable material 322
(excluding aluminum and gray cast iron) which meet the most recent Oil Companies International Marine Forum (OCIMF) standards, to 323
make available appropriate flanges for cargo hoses/arms at all manifold connections on one side of Vessel. If Vessel is not properly 324
equipped as required in this Paragraph (a), any time thereby lost shall not count as laytime or, if Vessel is on demurrage, as time on 325
demurrage.                                                                                                                                                                                                                     326
(b) The cargo shall be pumped into Vessel at the expense and risk of Charterer only up to Vessel's permanent hose connections. The 327
cargo shall be discharged from Vessel at the expense and risk of Owner only up to Vessel's permanent hose connections. Vessel shall 328
provide all necessary pumps, power, and hands required on board for mooring and unmooring, connecting and disconnecting of hoses 329
and loading and discharging. If requested by Charterer, Vessel shall load and/or discharge more than one grade simultaneously if Vessel 330
is technically capable of doing so.                                                                                                                                                                          331
(c) Owner warrants that Vessel shall arrive at the loading place(s) with cargo tanks properly inerted and that such tanks shall so remain 332
inerted throughout the loading of the cargo, the voyage and the subsequent discharging of the cargo. In case of an Inert Gas System 333
failure during loading and/or discharging, cargo operations shall be suspended immediately until the System becomes fully operational, 334
any deficiency in inerting is fully corrected and the terminal (or other loading and/or discharging facility) has given permission to resume 335
operations. Time used from cessation to resumption of cargo operations shall not count as laytime or, if Vessel is on demurrage, as time 336
on demurrage.                                                                                                                                                                                                                337
(d) If required by Charterer, Vessel, after loading or discharging, shall clear shore pipelines of cargo by pumping water through them and 338
the time thereby consumed shall count as laytime or, if Vessel is on demurrage, as time on demurrage.                                                   339
(e) All overtime incurred by officers and crew in loading and/or discharging shall be for the account of Owner.                                          340
(f) Vessel shall load at rates requested by Charterer having due regard for the safety of Vessel. Owner warrants that Vessel shall discharge 341
entire cargo (be it one or more grades) within twenty-four (24) hours pumping time or maintain the maximum safe psi pressure at Vessel's 342
rail that the Vessel can discharge at, but always at a minimum **AN AVERAGE** of 100 psi, **EXCLUDING STRIPPING AND COW,** over the entire 343
period of discharge provided shore facilities
permit. **IN ADDITION, THERE IS A THREE HOUR PER GRADE ALLOWANCE FOR STRIPPING, INCLUSIVE OF STOPS FOR INTERNAL** 344
**STRIPPING.** All time lost as a result of Vessel being unable to discharge its cargo in accordance with the pumping warranty above shall not
count as laytime or, if Vessel is on demurrage, as time on demurrage. If the terminal or place of discharging does not allow or permit Vessel 345
to meet the above warranty or requires discharging grades consecutively, Master shall forthwith issue a Letter of Protest (which should, 346
if practical, be acknowledged) to such terminal or place and shall immediately advise Charterer. If Master fails to issue the Letter of 347
Protest, Owner shall be deemed to waive any rights to contest that time was lost as a result of Vessel's failure to comply with the above 348
pumping warranty. Any pumping time lost solely due to restrictions imposed by the terminal or place of discharging shall count as laytime 349
or, if Vessel is on demurrage, as time on demurrage.                                                                                                                                          350
(g) Charterer shall have the right to require Vessel, if it is so equipped, to Crude Oil Wash the cargo tanks and, in such case, the allowed 351
pumping hours (i.e. the twenty-four (24) hours of pumping time specified in Paragraph (f) of this Clause or the number of pumping hours 352
taken to discharge the entire cargo when Vessel maintains the applicable rail pressure in accordance with Paragraph (f) of this Clause, 353
whichever is applicable) shall be increased by the maximum hours specified in Part I (A) for Crude Oil Wash operations. If less than all of 354
the tanks are washed, the said maximum hours shall be prorated on the basis of the number of tanks washed to the total number of 355
cargo tanks and the hours resulting from such proration shall be added to the allowed pumping hours. If Crude Oil Wash is not conducted, 356
Charterer shall have the right to require Vessel to remain at berth for clingage rundown or other cargo recovery technique. The time for 357
such clingage rundown or other cargo recovery technique shall not exceed ten (10) hours and the time so used shall count as laytime 358
or, if Vessel is on demurrage, as time on demurrage.                                                                                                                                          359
(h) In the event that any liquid cargo remains on board at completion of discharge for the final voyage under this Charter, then Charterer 360
shall have the right to deduct from freight an amount equal to the Free On Board (FOB) port of loading value of such cargo plus freight due 361
with respect thereto **AS SECURITY FOR CARGO CLAIMS.** The quantity and quality of such liquid hydrocarbon material shall be determined by a 362
mutually                                                                                                                                                                                                                                  agreeable
independent cargo inspector. The quantity of Remaining On Board (ROB) material shall be measured using the Vessel's wedge tables, if 363

available, or otherwise by wedge formula. **SHOULD OWNERS ASSERT THAT ROB CARGO IS NOT REACHABLE OR PUMPABLE, OWNER SHALL PROVIDE SATISFACTORY DOCUMENTARY EVIDENCE TO DEMONSTRATE SAME.** 364

19. ~~BACK-LOADING. Charterer shall have the option of loading Vessel with a part-cargo at any discharging port or place to which Vessel may have been ordered, provided that such part-cargo is as described in Part I (F) and is compatible with cargo then on board. Owner shall discharge such part-cargo at any other discharging port(s) or place(s) previously nominated, provided such port(s) or place(s) is within the rotation of the discharging ports or places previously nominated. If this option is exercised, additional time consumed awaiting berth and/or e_____a_____o and/or tank preparation and/or loading and discharging such part-cargo shall count as laytime or, if Vessel is on demurrage, as time on demurrage. Any additional expenses, including part-charges, incurred as sole result of loading and discharging such part-cargo shall be for Charterer's account.~~ 365–371

20. DUES, TAXES AND OTHER CHARGES.
    (a) Unless otherwise specified in WORLDSCALE and to the extent not prohibited by law, dues, taxes and other charges upon Vessel (including those assessed on the quantity of cargo loaded or discharged or on the freight) shall be paid by Owner and dues, taxes and other charges on the cargo shall be paid by Charterer. Vessel shall be free of charges for the use of any place(s) arranged by Charterer solely for the purpose of loading or discharging cargo. However, Owner shall be responsible for charges for any such place(s) when used solely for Vessel's purposes, such as, but not limited to, awaiting Owner's orders, tank cleaning, repairs, before, during or after loading and/or discharging. 372–378
    (b) ~~Notwithstanding the provisions of Clause 20(a),~~ dockage and wharfage shall be deemed included in the freight rate specified in Part I (G), **UNLESS OTHERWISE SPECIFIED IN WORLDSCALE.** 379

21. ~~ICE.~~ 380
    ~~(a) DURING VOYAGE. In case a nominated port or place of loading or discharging should be inaccessible due to ice, Master shall immediately notify Charterer, requesting revised orders and shall remain safely outside the ice bound area. Charterer shall give orders for another port or place which is free from ice and where there are facilities for the loading or discharging of the cargo in bulk. In this event, freight shall be paid at the rate stipulated in Part I (G) from or to such alternate port or place and any time by which the steaming time from or to such port or place exceeds that which would have been taken if the Vessel had been ordered to proceed from or to such port or place. In the first instance shall be compensated at the Deviation Rate per running day and pro rata thereof. In addition, Charterer shall pay for extra bunkers consumed during such excess time at Owner's documented actual replacement cost for such bunkers at the port where bunkers are next taken.~~ 381–388
    ~~(b) AT PORT. If, on or after Vessel's arrival at the loading or discharging port or place, it is dangerous to remain at such port or place for fear of Vessel being frozen in or damaged, Master shall notify Charterer who shall give orders for Vessel either to proceed to another port or place where there is no danger of ice and where there are facilities for the loading or discharging of the cargo in bulk or to remain at such original port or place at Charterer's risk. If Vessel is ordered to proceed to another port or place, the sum in respect of freight and delay to be paid by Charterer shall be as stipulated in Paragraph (a) of this Clause. If Vessel remains at such original port or place, any time so lost on account of ice shall count as laytime or, if Vessel is on demurrage, as time on demurrage.~~ 389–394

22. ~~DRY CARGO. Charterer has the option of shipping packaged and/or general cargo (including oils and bitumen in drums) in the available dry cargo spaces. Freight shall be payable on such cargo in accordance with Clause 6 at the Base Freight Rate and Charterer shall pay, in addition, all expenses, including part-dues, incurred solely as a result of the packaged and/or general cargo being carried. The time used loading and discharging such dry cargo shall count as laytime or, if Vessel is on demurrage, as time on demurrage, but only to the extent that such time is not concurrent with time used loading and/or discharging the liquid cargo carried hereunder.~~ 395–399

23. QUARANTINE. Time lost at any port or place due to quarantine shall not count as laytime or, if Vessel is on demurrage, as time on demurrage unless such quarantine was in force at the time when such port or place was nominated by Charterer. 400–401

24. INSPECTION. 402
    (a) OPERATIONS/INCIDENTS. Charterer's representative(s) shall have the right at loading and/or discharging port(s) or place(s) to inspect Vessel and observe operations. Charterer's representatives shall also have the right to attend on board the Vessel to ascertain the circumstances of any incident involving cargo carried hereunder. Owner shall instruct Master to give every assistance so as to enable said representative(s) to properly observe operations throughout Vessel and to ascertain any incident circumstances. 403–406
    (b) BUNKER SAMPLING. Charterer's representative(s) shall have the right to survey and take samples of all Vessel's bunker tanks and non-cargo spaces. Refusal by Master to permit such bunker surveying and sampling shall give Charterer or terminal operator the right to order Vessel off berth. All time lost by reason of such refusal, including any time used in shifting Vessel off and back to berth, shall not count as laytime or, if Vessel is on demurrage, as time on demurrage. Further, all expenses related to such refusal, including Vessel shifting expenses, shall be for Owner's account. Any delay to Vessel caused solely by bunker surveying and sampling shall count as laytime or, if Vessel is on demurrage, as time on demurrage. 407–412

25. HEAT. If Vessel is described as coiled in Part I (A), Owner warrants that Vessel is capable of heating the cargo up to and maintaining it at a maximum temperature of 135°F/57°C. However, unless otherwise requested by Charterer, Vessel shall only be required to maintain the cargo at the temperature loaded (up to a maximum of 135°F/57°C) throughout the voyage and the entire discharge. If requested by Charterer and if the length of the voyage allows, Vessel shall increase and maintain the temperature of the cargo from the loaded temperature to a temperature specified by Charterer, up to a maximum of 135°F/57°C, and Charterer shall pay for extra bunkers consumed solely in increasing the temperature as aforesaid at Owner's documented actual replacement cost for such bunkers at the port where bunkers are next taken. If Vessel fails to maintain the loaded temperature or to increase and maintain the temperature of the cargo, as requested by Charterer, Charterer shall have the option to hold Vessel off berth and/or to suspend discharging, all until the cargo is properly heated, all time and expense in connection with the foregoing being for Owner's account. 413–421

26. BUNKERS. When, in connection with the performance of any voyage provided for in this Charter, Owner plans to purchase bunkers at any port(s) outside the United States or its territories, Owner shall purchase the bunkers from Charterer or its designated Affiliate(s) whenever they are so available at competitive prices **AND TERMS.** In the event lower prices are quoted to Owner by any supplier at the port(s) in question, O_____w_____e_____r shall give Charterer or its designated Affiliate(s) the opportunity to meet such quotation. 422–425

27. BILLS OF LADING. 426
    (a) Bills of Lading shall be signed by Master as presented, Master attending daily, if required, at the offices of Charterer or its agents. However, at Charterer's option, Charterer or its agents may sign Bills of Lading on behalf of Master. All Bills of Lading shall be without prejudice to this Charter and Charterer shall indemnify Owner against all consequences or liabilities which may arise from any inconsistency between this Charter and any Bills of Lading or other documents signed by Charterer or its agents or by Master at their request or which may arise from an irregularity in papers supplied by Charterer or its agents. 427–431
    (b) Notwithstanding anything in this Charter to the contrary, the carriage of cargo under this Charter and under all Bills of Lading issued for the cargo shall be subject to the statutory provisions and other terms set forth or specified in sub-paragraphs (i) through (vi) of this Clause and such terms shall be incorporated verbatim or be deemed incorporated by reference in any such Bill of Lading. In such sub-paragraphs and in any Act referred to therein, the word "Carrier" shall include Owner and Chartered Owner of Vessel. 432–435

(i) CLAUSE PARAMOUNT. This Bill of Lading shall have effect subject to the provisions of the Carriage of Goods By Sea Act of the United States, approved April 16, 1936, except that if this Bill of Lading is issued at a place where any other Act, ordinance or legislation gives statutory effect to: (i) the International Convention for the Unification of certain Rules relating to Bills of Lading at Brussels, August 1924 ("Hague Rules"), or (ii) the Hague Rules as amended by the Protocol signed at Brussels, February 1968 ("Hague/Visby Rules"), or (iii) the United Nations Convention on the Carriage of Goods by Sea 1978 ("Hamburg Rules"), then this Bill of Lading shall have effect subject to the provisions of such Act, ordinance or legislation. The applicable Act, ordinance or legislation (hereinafter called "Act") shall be deemed to be incorporated herein and nothing herein contained shall be deemed a surrender by the Carrier of any of its rights or immunities or an increase of any of its responsibilities or liabilities under the Act. If any term of this Bill of Lading be repugnant to the Act to any extent, such term shall be void to that extent but no further.

(ii) JASON CLAUSE. In the event of accident, danger, damage or disaster before or after the commencement of the voyage, resulting from any cause whatsoever, whether due to negligence or not, for which, or for the consequence of which, the Carrier is not responsible, by statute, contract or otherwise, the cargo shippers, consignees or owners of the cargo shall contribute with the Carrier in General Average to the payment of any sacrifices, losses or expenses of a General Average nature that may be made or incurred and shall pay salvage and special charges incurred in respect of the cargo. If a salving ship is owned or operated by the Carrier, salvage shall be paid for as fully as if the said salving ship or ships belonged to strangers. Such deposit as the Carrier or his Agents may deem sufficient to cover the estimated contribution of the cargo and any salvage and special charges thereon shall, if required, be made by the cargo shippers, consignees or owners of the cargo to the Carrier before delivery.

(iii) GENERAL AVERAGE. General Average shall be adjusted, stated, and settled according to the York Antwerp Rules 2004 ("Rules") and, as to matters not provided for by those Rules, according to the laws and usages at the port of **LONDON** New York; provided that, when there is an actual escape or release of oil or pollutant substances from the Vessel (irrespective of Vessel location), the cost of any measures, continued or undertaken on that account, to prevent or minimize pollution or environmental damage shall not be allowable in General Average; and, provided further, that any payment for pollution damage (as defined in Article I 6.(a) of the 1992 Protocol to the International Convention on Civil Liability for Oil Pollution Damage) shall also not be allowable in General Average. It is understood and agreed, however, that the cost of measures to prevent pollution or environmental damage, undertaken in respect of oil or pollutant substances which have not escaped or been released from the Vessel, shall be included in General Average to the extent permitted by the Rules. If a General Average statement is required, it shall be prepared at such port by an Adjuster from the port of **LONDON** New York appointed by the Carrier and approved by Charterer of Vessel. Such Adjuster shall attend to the settlement and the collection of the General Average, subject to customary charges. General Average Agreements and/or security shall be furnished by Carrier and/or Charterer, and/or Owner, and/or Consignee of cargo, if requested. Any cash deposit being made as security to pay General Average and/or salvage shall be remitted to the Average Adjuster and shall be held by the Adjuster at the Adjuster's risk in a special account in a duly authorized and licensed bank at the place where the General Average statement is prepared.

(iv) BOTH TO BLAME. If Vessel comes into collision with another ship as a result of the negligence of the other ship and any act, neglect or default of Master, mariner, pilot or the servants of the Carrier in the navigation or in the management of Vessel, the owners of the cargo carried hereunder shall indemnify the Carrier against all loss or liability to the other or non-carrying ship or its owners insofar as such loss or liability represents loss of or damage to or any claim whatsoever of the owners of said cargo, paid or payable by the other or recovered by the other or non-carrying ship or its owners as part of their claim against the carrying ship or Carrier. The foregoing provisions shall also apply where the owners, operators or those in charge of any ships or objects other than, or in addition to, the colliding ships or objects are at fault in respect of a collision or contact. The provisions in this subparagraph (iv) shall only apply if the Owner shall have exercised due diligence to make the Vessel seaworthy, and properly manned, equipped, and supplied, with the burden of proof in this regard resting solely on Owner.

(v) LIMITATION OF LIABILITY. Any provision of this Charter to the contrary notwithstanding, the Carrier shall have the benefit of all limitations of, and exemptions from, liability accorded to owner or chartered owner of vessels by any statute or rule of law for the time being in effect.

(vi) DEVIATION. Vessel shall have liberty to sail with or without pilots, to tow or be towed, to go to the assistance of vessels in distress, to deviate for the purpose of saving life or property or of landing any ill or injured person on board, and to call for fuel at any port or ports in or out of the regular course of the voyage.

(c) Except as provided in Paragraph (d) of this Clause, Owner and Vessel shall not be required to deliver cargo at a discharging port or place nominated by Charterer unless the party claiming right to such delivery shall first surrender to Vessel at such port or place one of the original Bills of Lading issued for the cargo, duly endorsed; provided however that, if the Bills of Lading name specific port(s) or place(s) of discharging and the nominated port or place is different or if the Bills of Lading provide for discharge at port(s) or place(s) as ordered, Owner and Vessel shall not be required to deliver the cargo unless the party claiming right to such delivery first surrenders to Vessel all the original Bills of Lading, duly endorsed. The foregoing shall apply even in the situation where one but not all of the original Bills of Lading have been placed on board Vessel at loading but, in such case, only the original Bill(s) of Lading not on board Vessel need first to be surrendered to Vessel in accordance with the foregoing requirements. Any delay to Vessel at the nominated port or place due to the unavailability at such port or place of original Bill(s) of Lading and/or the failure to timely surrender such Bill(s) of Lading to Vessel in accordance with the foregoing requirements shall count as laytime or, if Vessel is on demurrage, as time on demurrage.

(d) If original Bill(s) of Lading are not available at the discharging port or place for timely surrender to Vessel as provided in Paragraph (c) of this Clause, Vessel shall deliver the cargo to a party and at a facility at the discharging port or place as directed by Charterer in writing, if Charterer first executes a written indemnity in connection with such delivery in favor of Owner, Vessel, any Chartered Owner(s) of Vessel, Master, Vessel operators, agents and underwriters and delivers such indemnity to Owner or Owner's designee. The subject indemnity shall meet the requirements of Paragraph (e) of this Clause, and shall be limited in value to 200 per cent of the CIF value of the cargo.

(e) The indemnity referred to in Paragraph (d) of this Clause shall be a short form indemnity incorporating the terms and conditions set forth in Clause 27(f) of this Charter. This document (which must be properly filled in) shall be given to Owner by telex, electronic mail, letter or facsimile as requested by Owner and be in the exact form quoted below, which document, when transmitted, shall be deemed to have been signed by person acting on behalf of Charterer.

"VOYAGE CHARTER OF _____

DATED _____

BETWEEN _____ AS OWNER

AND

_____ , AS CHARTERER

~~Reference is made to the cargo ('Cargo') now laden aboard the above Vessel ('Vessel'). Pursuant to Clause 27(e) of the above-captioned Charter ('Charter'), the undersigned requests that Owner(s) of the Vessel deliver the Cargo at _____ unto _____ without prior discharge-site presentation to the Vessel of all original bills of lading issued for the Cargo appropriately endorsed for such delivery and/or at a discharge port or site other than one specifically named in said bills of lading.~~    511
512
513
514
515

~~In consideration of such delivery, the undersigned hereby gives an Indemnity containing the terms and conditions set forth in Clause 27(f) of the Charter ('Indemnity Terms And Conditions'). The Indemnity Terms And Conditions are deemed incorporated in and made a part of this document. The term 'Indemnifier' in the Indemnity Terms And Conditions shall be deemed to refer to the undersigned. The term 'Cargo' and the phrase 'Requested Delivery' in the Indemnity Terms And Conditions shall be deemed to, respectively, mean the Cargo and the delivery request set forth in the preceding paragraph of this document. The term 'Ship' as used in the Indemnity Terms And Conditions shall be deemed to refer to the Vessel. Print the following information:~~    516
517
518
519
520
521
522

~~Name of Charterer _____~~    523
524
~~Name of Person Acting on Behalf of Charterer _____~~    525
526
~~Authority/Title of Above Person _____~~    527
528
~~Date Indemnity Given _____"~~    529

~~(f) Indemnity Terms and Conditions:~~    530

~~"1. Indemnifier shall indemnify and hold harmless the Owner of the Ship, any chartered Owner of the Ship, the Ship operator, the Ship Master, the Ship underwriters and the Ship agents (hereinafter jointly and individually called 'Indemnitees') in respect of any liability, loss, damage, costs (including, but not limited, to Attorney/Client costs) and other expense of whatever nature which the Indemnitees may sustain or incur by reason of the Requested Delivery.~~    531
532
533
534

~~2. In the event of any legal action or proceeding being commenced against the Indemnitees in connection with the Requested Delivery, Indemnifier shall provide Indemnitees from time to time, on the Indemnitees' demand, with sufficient funds to defend same.~~    535
536

~~3. If the Ship or any other vessel or other property belonging to the Indemnitees should be arrested or detained or if the arrest or detention thereof should be threatened for any claim in connection with the Requested Delivery, the Indemnifier shall provide, upon demand of the Indemnitees, such bail or other security as may be required to prevent such arrest(s) or detention(s) or to secure the release of the Ship or such vessel or other property from arrest or detention, and shall indemnify and hold harmless the Indemnitees against and from any loss, damage, costs (including but not limited to Attorney/Client costs) and other expense resulting from such arrest or detention or threatened arrest or detention, whether or not same may be justified and to pay to the Indemnitees, on the Indemnitees' demand, the amount of such loss, damage, costs and/or expense.~~    537
538
539
540
541
542
543

~~4. This Indemnity shall automatically become null and void, and Charterer's liability hereunder shall cease, upon presentation of all original Bills of Lading duly endorsed to reflect delivery of Cargo in accordance with the Requested Delivery, or upon the expiration of 36 months after completion of discharge, whichever occurs first; provided that no legal proceedings arising from delivery of the Cargo in accordance with the Requested Delivery have been instituted against the Indemnitees and/or Vessel within such 36 month period. Owner shall advise Charterer with reasonable dispatch in writing if any proceeding are instituted.~~    544
545
546
547
548

~~5. The within Indemnity shall be governed and construed in accordance with the internal substantive laws of the State of New York, USA. The Indemnitees may, but shall not be obligated to, bring any legal action or proceeding with respect to such Indemnity in the Courts of the State of New York, USA or in the U.S. Federal Court situated therein and the Indemnifier unconditionally and generally accepts in regard to such legal action or proceeding, for itself and its property, the jurisdiction and venue of the aforesaid courts."~~    549
550
551
552

**LOI AS PER OWNERS P&I CLUB WORDING.**    553

28.   **WAR.**    553

(a) No contraband of war shall be shipped, but petroleum and/or its products shall not be deemed contraband of war for the purposes of this Clause. Vessel shall not, however, be required, without the consent of Owner, which shall not be unreasonably withheld, to enter any port, place, or zone which is involved in a state of war, warlike operations or hostilities, civil strife, terrorism and other politically or religiously motivated activities, or piracy, whether there be a declaration of war or not, where it might reasonably be expected to be subject to capture, seizure or arrest, or to a hostile act by a belligerent power (the term "power" meaning any de jure or de facto authority or any other purported governmental organization maintaining naval, military or air forces or any terrorist group or organization).    554
555
556
557
558
559

(b) For the purposes of this Clause, it shall be unreasonable for Owner to withhold consent to any voyage, route, or port or place of loading or discharging if insurance against all risks defined in Paragraph (a) of this Clause is then available commercially or under a government program in respect of such voyage, route or port/place of loading or discharging. If such consent is given by Owner, Charterer shall pay any provable additional cost of insuring Vessel against Hull war risks over and above such costs in effect on the date of this Charter in an amount equal to the insured value stipulated in its ordinary marine policy as of the date of this Charter. If such insurance is not obtainable commercially or through a government program, Vessel shall not be required to enter or remain at any such port, place or zone and, in such case, Charterer shall have the right to order Vessel to load or discharge, as the case may be, at any other port(s) or place(s) consistent with Part I (C) and (D).    560
561
562
563
564
565
566
567

(c) In the event of the existence of the conditions described in Paragraph (a) of this Clause subsequent to the date of this Charter, Charterer shall, in respect of a voyage to any such port, place or zone, assume any provable additional cost of wages and insurance properly incurred in connection with Master, officers and crew as a consequence of such war, warlike operations or hostilities over and above such costs in effect on the date of this Charter.    568
569
570
571

29.   **EXCEPTIONS.**    572

(a) Vessel, Master and Owner shall not, unless otherwise expressly provided in this Charter, be responsible for any loss or damage to cargo arising or resulting from: any act, neglect, default or barratry of Master, pilots, mariners or other servants of Owner in the navigation or management of Vessel; fire, unless caused by the personal design or neglect of Owner; collision, stranding, or peril, danger or accident of the sea or other navigable waters; or from explosion, bursting of boilers, breakage of shafts, or any latent defect in hull, equipment or machinery. Neither Vessel, Master or Owner, nor Charterer, shall, unless otherwise expressly provided in this Charter, be responsible for any loss or damage or delay or failure in performing hereunder arising or resulting from: act of God; act of war; perils of the sea; act of public enemies, pirates or assailing thieves; arrest or restraint of princes, rulers or people, or seizure under legal process provided bond is promptly furnished to release Vessel or cargo; strike or lockout or stoppage or restraint of labor from whatever cause, either partial or general; or riot or civil commotion.    573
574
575
576
577
578
579
580
581

(b) The exceptions stated in Paragraph (a) of this Clause shall not affect Owner's warranties and undertakings herein with respect to the condition of Vessel, the obligations of Owner in respect of the loading, handling, stowage, carriage, custody, care and discharge of the cargo and/or the rights or obligations of either Owner or Charterer with respect to laytime or demurrage as elsewhere provided in this    582
583
584

Charter.

30.   LIEN. Owner shall have a lien on all cargoes and subfreights for all amounts due under this Charter, and Charterer shall have a lien on Vessel for all monies paid in advance and not earned, and all disbursements for Owner's account, including commissions, cost of insurance and expenses thereon and for any damages sustained by Charterer as a result of the breach of this Charter by Owner.

31.   AGENTS. Unless otherwise agreed, Charterer shall nominate Vessel's agents at all port(s) and place(s), **PROVIDED MARKET COMPETITIVE, IF TURKEY OR ISRAEL, THEN OWERS AGENTS.** Such agents shall be appointed, instructed and paid for by Owner and represent solely the Owner and Vessel.

32.   ASSIGNMENT / SUBLET. Charterer shall have the option of assigning this Charter or of subletting Vessel, but in either case, Charterer shall always remain responsible for the due fulfillment of this Charter in all terms and conditions.

33.   CLEAN SEAS.

(a) HANDLING OF TANK WASHINGS. Owner agrees to participate in Charterer's program covering oil pollution avoidance. Such Program requires compliance with latest IMO and Port State regulations. The Program prohibits discharge overboard of all oil and all oily water, oily ballast or cargo in any form unless in compliance with IMO and Port State local regulations or under extreme circumstances whereby the safety of Vessel, cargo or life at sea would be imperiled. Owner shall ensure that Vessel's personnel comply with the following:

(i) Subsequent to the date of this Charter and in the course of the ballast passage before presenting for loading hereunder, any oily residues remaining in Vessel from its previous cargoes shall be retained on board and shall be handled according to Charterer's instructions.

(ii) During tank washing, the tank washings shall be collected into one cargo compartment and, after maximum separation of free water, such free water shall be discharged overboard to the extent permitted by applicable international regulations.

(iii) Thereafter, Charterer shall be notified promptly of the estimated quantities of the segregated tank washings and the type and source of such washings. If Charterer requires that demulsifiers shall be used for the separation of oil/water, such demulsifiers shall be obtained by Owner and paid for by Charterer. Any additional Canal dues incurred on the ballast passage by reason of Vessel having tank washings on board shall be for the sole account of Owner. Owner shall ensure that Master, on Vessel's arrival at the loading port(s) or place(s), does the following:

- arranges for the measurement of the segregated tank washings in conjunction with the cargo supplier(s);
- records the quantity of tank washings so measured in Vessel's ullage record;
- issues a Slop Certificate; and
- arranges that the Slop Certificate and/or Vessel's ullage record be duly signed by the cargo supplier(s)

and promptly sent to Charterer.

The segregated tank washings and any other oily residues on board (hereinafter called "residues") shall, at Charterer's option, be pumped ashore into slop facilities at the loading port(s) or place(s), commingled with the cargo to be loaded or segregated from the cargo to be loaded.

If Charterer requires Master to discharge the residues at facilities at loading port(s) or place(s), no freight shall be payable on same but the time involved in accomplishing such discharge shall count as laytime or, if Vessel is on demurrage, as time on demurrage, including, but not limited to, waiting for availability of, or for berthing at, the slop receiving facility and shifting to and from such facility. Further, the cost of such facilities and the ultimate disposal of the residues shall be for Charterer's sole account. If Charterer requires residues to be kept separate from the cargo to be loaded, same shall, at Charterer's option, be discharged at the discharging port(s) or place(s) in accordance with Charterer's instructions.

If Charterer requires that the cargo be loaded on top of residues or that such residues be kept separate from the cargo to be loaded, in either case freight shall be payable in accordance with Clause 6 on the quantity of residues at the Overage Rate, if such rate exists, or otherwise at the Base Freight Rate, up to a maximum tonnage equivalent to one percent (1.0%) of Vessel's deadweight as specified in Part I (A), with the exception that, in the case of a Part Cargo Minimum, no freight shall be paid if the residues are kept separate and not discharged. In no event shall Charterer hold any liability for deadfreight in connection with residues, except where the Vessel is ordered to load a full cargo and is required to keep residues segregated, in which case deadfreight shall be due. Nothing in Charterer's instruction shall be construed as permission to contravene any applicable laws or regulations by the discharging of oily residues.

(b) CLEAN BALLAST. Owner warrants that Vessel will arrive at load port(s) with clean ballast.

(c) ITOPF. Owner warrants that it is a Member of the International Tanker Owners Pollution Federation ("ITOPF") and that Owner will retain such membership during the entire period of the services of the Vessel under this Charter.

34.   DRUG AND ALCOHOL POLICY. Owner warrants that it has a policy on Drug and Alcohol Abuse ("Policy") applicable to the Vessel which meets or exceeds the standards in the Oil Companies International Marine Forum Guidelines For the Control of Drugs and Alcohol Onboard Ship. Under the Policy, alcohol impairment shall be defined as a blood alcohol content of 40 mg/100 ml or greater; the appropriate seafarers to be tested shall be all Vessel officers and the drug/alcohol testing and screening shall include unannounced testing in addition to routine medical examinations. An objective of the Policy should be that the frequency of the unannounced testing be adequate to act as an effective abuse deterrent, and that all officers be tested at least once a year through a combined program of unannounced testing and routine medical examinations. Owner further warrants that the Policy will remain in effect during the term of this Charter and that Owner shall exercise due diligence to ensure that the Policy is complied with. It is understood that an actual impairment or any test finding of impairment shall not in and of itself mean the Owner has failed to exercise due diligence.

35.   ARBITRATION - **SEE ADDITIONAL LITASCO CLS 26.ARBITRATION ATTACHED.**

~~(a) Any and all differences and disputes of whatsoever nature arising out of this Charter shall be put to arbitration in the City of New York, pursuant to the laws relating to arbitration there in force, before a board of three persons, consisting of one arbitrator to be appointed by Owner, one by Charterer and one by the two so chosen. The decision of any two of the three on any point or points shall be final. Until such time as the arbitrators finally close the hearings either party shall have the right by written notice served on the arbitrator and on the other party to specify further disputes or differences under this Charter for hearing and determination. The arbitrators may grant any relief which they, or a majority of them, deem just and equitable and within the scope of the agreement of the parties, including, but not limited to, specific performance. Awards made in pursuance to this Clause may include costs, including a reasonable allowance for attorney's fees, and judgment may be entered upon any award made hereunder in any Court having jurisdiction in the premises.~~

~~(b) Where cargo carried pursuant to this Charter is owned by an Affiliate, any claim related to the carriage of such cargo hereunder shall be subject to this Clause 35, said Affiliate having authorized Charterer to so agree on Affiliate's behalf. If this subparagraph (b) applies, the term "Charterer" in subparagraph (a) of this Clause 35 shall be taken to mean the aforementioned Affiliate.~~

36.   WAIVER OF CLAIMS - **SEE ADDITIONAL LITASCO CLS 2. CLAIMS ATTACHED.** ~~Any claim for freight, deadfreight, demurrage and/or charges or expenses under this Charter shall be deemed~~

~~waived, extinguished and absolutely barred if such claim is not received by Charterer or Owner, as the case may be, in writing with supporting documentation within 90 days from the date of final discharge of the cargo on the voyage with respect to which said claim~~

585
586
587
588
589
590
591
592
593
594
595
596
597
598
599
600
601
602
603
604
605
606
607
608
609
610
611
612
613
614
615
616
617
618
619
620
621
622
623
624
625
626
627
628
629
630
631
632
633
634
635
636
637
638
639
640
641
642
643
644
645
646
647
648
649
650
651
652
653
654
655
656
657

arises. This Clause shall not apply with respect to claims for damage, loss or shortage of cargo.   658

37.   BUSINESS POLICY. Owner agrees to comply with all laws and lawful regulations applicable to any activities carried out in the name, or   659
otherwise on behalf, of Charterer under the provisions of this Charter. Owner agrees that all financial settlements, billings and reports   660
rendered by Owner to Charterer, as provided for in this Charter, shall, in reasonable detail, accurately and fairly reflect the facts about all   661
activities and transactions handled for the account of Charterer.   662

38.   INTERPRETATION. The interpretation of this Charter and the rights and obligations of the parties thereto shall be governed by the   663
Federal Maritime Law of the United States and where applicable by the Law of the State of New York, without taking into consideration   664
any conflict of laws principles. The heading of Clauses and Paragraphs are for convenience of reference only and shall not affect the   665
interpretation of this Charter. No modification, waiver or discharge of any term of this Charter shall be valid unless in writing and signed   666
by the party to be charged therewith. Notwithstanding anything in this Charter to the contrary, this Charter shall not be interpreted or   667
applied so as to require Owner or Charterer to do, or to refrain from doing, anything which would constitute a violation of, or result in a   668
loss of economic benefit under, United States anti-boycott laws and regulations.   669

39.   CHARTER ADMINISTRATION. All Charter terms and conditions finally agreed to by the parties shall be evidenced by a fixture   670
confirmation notice approved by Owner and Charterer. Charterer shall cause the fixture confirmation notice to be transmitted to both   671
Owner and Charterer and each party shall give approval of the fixture confirmation notice one to the other no later than three (3)   672
business days after transmission of the notice. Failure of either party to respond within the said three (3) days shall be conclusively   673
deemed to constitute that party's unqualified acceptance of the fixture confirmation notice. Except as requested in writing by either   674
Owner or Charterer, there shall be no formal written and signed Charter Party.   675


**COMMISSION:** 2.50 PERCENT ADDRESS COMMISSION ON HIRE
1.25 PERCENT BROKERAGE COMMISSION TO HOWE ROBINSON PARTNERS (UK) LTD ON
FREIGHT/DEADFREIGHT/DEMURRAGE

# INDEX OF CLAUSES

## PART I

(A) VESSEL DESCRIPTION AND POSITION
(B) LAYDAYS
(C) LOADING RANGE(S) / PORT(S) / PLACES(S)
(D) DISCHARGING RANGE(S) / PORT(S) / PLACE(S)
(E) CARGO QUANTITY
(F) CARGO DESCRIPTION
(G) FREIGHT RATE
(H) BILLING
(I) LAYTIME
(J) DEMURRAGE / DEVIATION PER DAY
(K) SPECIAL PROVISIONS
(L) INCORPORATED CLAUSE(S)

## PART II

1. DEFINITIONS.
2. VESSEL.
3. CLEANING.
4. VOYAGE(S).
5. MAXIMUM CARGO.
6. FREIGHT.
7. DEADFREIGHT.
8. DEMURRAGE / DEVIATION RATE.
9. LOADING AND DISCHARGING PORT(S) / PLACE(S).
10. ESTIMATED TIME OF ARRIVAL (ETA).
11. NOTICE OF READINESS.
12. CANCELLATION OF CHARTER.
13. LAYTIME / DEMURRAGE.
14. LAYTIME / DEMURRAGE CONSEQUENCES.
15. LIGHTERING / CARGO ADVISOR.
16. LOADING / DISCHARGING PLACE.
17. CARGO MEASUREMENT.
18. PUMPING IN AND OUT.
19. BACK LOADING.
20. DUES, TAXES AND OTHER CHARGES.

21. ICE.
22. DRY CARGO.
23. QUARANTINE.
24. INSPECTION.
25. HEAT.
26. BUNKERS.
27. BILLS OF LADING.
28. WAR.
29. EXCEPTIONS.
30. LIEN.
31. AGENTS.
32. ASSIGNMENT / SUBLET.
33. CLEAN SEAS.
34. DRUG AND ALCOHOL POLICY.
35. ARBITRATION.
36. WAIVER OF CLAIMS.
37. BUSINESS POLICY.
38. INTERPRETATION.
39. CHARTER ADMINISTRATION.

# LITASCO

**LUKOIL INTERNATIONAL TRADING AND SUPPLY COMPANY**

## LITASCO EXXONVOY 2005 CLAUSES
### DATED 30.05.2006

1. QUESTIONNAIRE AND VESSEL DESCRIPTION

CHARTERERS HAVE ENTERED INTO THIS CHARTERPARTY IN RELIANCE ON THE
REPRESENTATIONS CONTAINED IN THE OWNERS' ANSWERS TO THE COMPLETED
INTERTANKO STANDARD TANKER VOYAGE CHARTERING QUESTIONNAIRE 1988 (VERSION 2)
('QUESTIONNAIRE 88 (VERSION 2)) WHICH SHALL BE DEEMED INCORPORATED INTO AND
FORM PART OF THE CHARTERPARTY. OWNERS SHALL NOTIFY CHARTERERS IMMEDIATELY
OF ANY MATTER, EVENT OR CIRCUMSTANCE, WHICH NECESSITATES ANY CHANGE,
AMENDMENT OR MODIFICATION TO THE OWNERS' ANSWERS. ~~IN THE EVENT ANY SUCH~~
~~CHANGE, AMENDMENT OR MODIFICATION IS NECESSARY, WHETHER NOTIFIED TO THE~~
~~CHARTERERS OR NOT, OR IF THE VESSEL IS MIS-DESCRIBED OR THERE IS ANY OTHER~~
~~MISSTATEMENT IN THE QUESTIONNAIRE 88 (VERSION 2), THE CHARTERERS SHALL HAVE~~
~~THE OPTION, BUT WITHOUT PREJUDICE TO ANY OTHER CLAIM, TO CANCEL THE~~
~~CHARTERPARTY WITHOUT ANY FURTHER LIABILITY WHATSOEVER.~~

2. CLAIMS

A. PART II CLAUSE 36 IS DELETED. CHARTERERS SHALL BE DISCHARGED AND
RELEASED FROM LIABILITY IN RESPECT OF ANY **DEMURRAGE** CLAIMS OWNERS MAY HAVE
UNDER THIS
CHARTERPARTY (~~SUCH AS, BUT NOT LIMITED TO, CLAIMS FOR DEADFREIGHT,~~
~~DEMURRAGE, SHIFTING OR PORT EXPENSES~~) UNLESS A CLAIM HAS BEEN PRESENTED IN
WRITING TO CHARTERERS WITH SUPPORTING DOCUMENTATION WITHIN NINETY (90) DAYS
FROM COMPLETION OF DISCHARGE OF THE CARGO UNDER THIS CHARTERPARTY **AND 120 DAYS
FOR OTHER CLAIMS PROVIDED SUPPORTING DOCUMENTS ARE AVAILABLE (EXCLUDING B/L
CLAIMS).**

~~B. FOR DEMURRAGE CLAIMS SUPPORTING DOCUMENTS MUST INCLUDE -~~
~~1. OWNERS' CALCULATION OF THE DEMURRAGE DUE; AND~~
~~2. THE CERTIFICATE OF NOTICE OF READINESS TENDERED AT EACH PORT OF LOADING~~
~~AND DISCHARGE; AND~~
~~3. THE STATEMENT OF FACTS FOR EACH LOADING AND DISCHARGE BERTH WHICH MUST~~
~~BE SIGNED BY THE MASTER OR THE VESSEL'S AGENTS AND, WHEREVER POSSIBLE, THE~~
~~TERMINAL; AND~~
~~4. THE VESSEL'S PUMPING LOGS FOR EACH DISCHARGE BERTH; AND~~
~~5. ALL LETTERS OF PROTEST ISSUED BY THE VESSEL OR THE TERMINAL. THE NOR.~~

3. STATEMENT OF FACTS CLAUSE

IN ORDER TO BE CONSIDERED AN AUTHORIZED DOCUMENT, STATEMENTS OF FACTS MUST
BE SIGNED BY THE MASTER OF VESSEL, VESSEL'S AGENTS, SUPPLIERS OR RECEIVERS,
IF POSSIBLE. IF NOT POSSIBLE, THEN MASTER TO ISSUE A LETTER OF PROTEST TO
THE DISSENTING PARTY, SUBMITTED TOGETHER WITH OWNERS' DEMURRAGE CLAIM.

4. WAITING FOR ORDERS CLAUSE

IF CHARTERERS REQUIRE VESSEL TO INTERRUPT HER VOYAGE AWAITING FURTHER
ORDERS, SUCH DELAY TO BE FOR CHARTERERS' ACCOUNT AND SHALL COUNT AS LAYTIME
OR DEMURRAGE, IF VESSEL ON DEMURRAGE. **ANY EXTRA EXPENSES AND BUNKERS CONSUMED
TO BE PAID TOGETHER WITH FREIGHT AS PER OWNERS PRELIMINARY INVOICE AND
RELEVANT DOCUMENTS TO BE SUBMITTED IN DUE COURSE.**

5. ADHERENCE TO VOYAGE INSTRUCTIONS CLAUSE

THE OWNERS SHALL BE RESPONSIBLE FOR ANY TIME, ~~INDIRECT,~~ DIRECT, ~~PROVEN,~~ AND
~~DOCUMENTED~~ COSTS, DELAYS ~~OR LOSS~~ SUFFERED BY THE CHARTERERS DUE TO
FAILURE TO COMPLY FULLY WITH CHARTERERS' VOYAGE INSTRUCTIONS. THE OWNERS

**LITASCO**

LUKOIL INTERNATIONAL TRADING AND SUPPLY COMPANY

56   SHALL BE RESPONSIBLE FOR ANY TIME, COSTS, DELAYS ~~OR LOSS~~ ASSOCIATED WITH
57   VESSEL LOADING CARGO QUANTITY IN EXCESS OF VOYAGE ORDERS. ADDITIONALLY,
58   THE CHARTERERS SHALL NOT BE RESPONSIBLE FOR ANY DEADFREIGHT DUE TO OWNERS'
59   FAILURE TO LIFT MINIMUM QUANTITY SPECIFIED IN VOYAGE ORDERS.
60
61   IF A CONFLICT ARISES BETWEEN TERMINAL ORDERS AND CHARTERERS' VOYAGE
62   INSTRUCTIONS, THE MASTER SHALL STOP CARGO OPERATIONS AND CONTACT THE
63   CHARTERERS IMMEDIATELY. THE TERMINAL ORDERS SHALL NEVER SUPERSEDE
64   CHARTERERS' VOYAGE INSTRUCTIONS AND ANY CONFLICT SHALL BE RESOLVED
65   PRIOR TO RESUMPTION OF CARGO OPERATIONS. **ANY TIME LOST TO COUNT IN FULL AS
     USED LAYTIME OR DEMURRAGE, IF VESSEL ON DEMURRAGE. ANY EXPENSES AND BUNKERS
     CONSUMED TO BE PAID TOGETHER WITH FREIGHT AS PER OWNERS PRELIMINARY INVOICE
     AND RELEVANT DOCUMENTS TO BE SUBMITTED IN DUE COURSE.**
66
67   ~~6. HEATING~~
68
69   ~~THE MAXIMUM TEMPERATURE REFERRED TO IN PART II, CLAUSE 25 IS AMENDED TO~~
70   ~~160°F/71°C.~~
71
72   ~~7. BLENDING/COMMINGLING/ADDITIVATION/DYEING/PPD~~
73
74   ~~A. CHARTERERS SHALL HAVE THE OPTION TO BLEND AND/OR COMMINGLE AND/OR INJECT~~
75   ~~ADDITIVES AND/OR ADD DYE AND/OR ADD PPD ("BLENDING ACTIVITIES") TO THE~~
76   ~~CARGO ONBOARD THE VESSEL, PROVIDED THAT SUCH BLENDING ACTIVITIES ARE WITHIN~~
77   ~~THE TECHNICAL CAPABILITY OF THE VESSEL AND THAT THE MASTER REASONABLY~~
78   ~~CONSIDERS IT SAFE TO DO SO.~~
79
80   ~~B. CHARTERERS WILL INDEMNIFY OWNERS AGAINST LIABILITY FOR ANY CARGO QUALITY~~
81   ~~CLAIMS THAT MAY ARISE AS A DIRECT RESULT OF THESE ONBOARD BLENDING~~
82   ~~ACTIVITIES, INCLUDING CARGO QUALITY CLAIMS FROM A THIRD PARTY.~~
83
84   ~~C. ANY ADDITIONAL CHARGES THAT RESULT DIRECTLY FROM CHARTERERS CARRYING OUT~~
85   ~~BLENDING ACTIVITIES, INCLUDING DEMURRAGE, PORT CHARGES, EXTRA AGENCY FEES,~~
86   ~~CONSUMED BUNKERS AT DOCUMENTED REPLACEMENT COST AND WHICH ARE NOT INCLUDED~~
87   ~~IN THE FREIGHT AGREED UNDER PART I(G) OF THIS CHARTERPARTY SHALL BE FOR THE~~
88   ~~ACCOUNT OF CHARTERERS.~~
89
90   ~~CHARTERERS WILL SURRENDER TO MASTER ALL ORIGINAL BILLS OF LADING FOR THE~~
91   ~~UNBLENDED CARGO AND THE MASTER WILL PROVIDE NEW CONSOLIDATED BILLS OF~~
92   ~~LADING ON COMPLETION OF BLENDING ACTIVITIES WHICH BILLS OF LADING WILL~~
93   ~~REFLECT THE ACTUAL GRADE THAT HAS BEEN BLENDED/COMMINGLED/INJECTED/DYED/HAS~~
94   ~~HAD PPD ADDED.~~
95
96   ~~8. MTBE CLAUSE~~
97
98   ~~PROVIDED THE CARGO UNDER THIS C/P IS LOADED WITH AN MTBE CONTENT LESS~~
99   ~~THAN 50 PPM, OWNERS GUARANTEE THAT VESSEL WILL DISCHARGE SAME CARGO OF~~
100  ~~NAPHTHA, WITH MAX MTBE CONTENT OF 50 PPM. CHARTS WANT TO HIGHLIGHT THE~~
101  ~~IMPORTANCE OF CLEANING TANKS, LINES AND PUMPS TO AVOID OR MINIMIZE TRACES~~
102  ~~OF MTBE, ALWAYS IN ACCORDANCE WITH THE ABOVE.~~
103
104  ~~9. DOW SHIPPING CLAUSE AS PER OPEN SPEC NAPHTHA~~
105
106   ~~(A) PERFORMING VESSEL TO BE CAPABLE OF TENDERING N.O.R. AT DISCHARGE PORT~~
107  ~~WITHIN 15 YEARS OF THE DATE OF THE VESSEL'S ORIGINAL COMMISSION, UNLESS~~
108  ~~VESSEL IS OWNED BY, OR ON TIMECHARTER TO A MAJOR (I.E. A MULTI NATIONAL~~
109  ~~VERTICALLY INTEGRATED OIL COMPANY). IF SO, THEN VESSEL SHOULD TENDER N.O.R.~~
110  ~~WITHIN 20 YEARS OF THE DATE OF ITS ORIGINAL COMMISSION.~~
111
112       ~~VESSEL TO DISCHARGE HER ENTIRE CARGO WITHOUT USING HER RECIPROCATING~~

# LITASCO

**LUKOIL INTERNATIONAL TRADING AND SUPPLY COMPANY**

```
113   PUMPS, IF ANY.
114
115       VESSEL TO BE ABLE TO UNLOAD HER ENTIRE CARGO WITHIN 24 HOURS
116       OR MAINTAIN A PRESSURE OF MIN 100 PSI AT SHIPS RAIL.
117
118   (B) VESSEL TO BE FULLY SUITABLE FOR TRANSPORTING NAPHTHA.
119
120   (C) VESSEL TO RADIO 72/48/24 HOURS NOTICES THROUGH AGENTS TO RECEIVERS, IF
127   KNOWN.
122
123   (D) VESSEL MUST OPERATE A CLOSED LOADING SYSTEM AT ALL TIMES AS DEFINED
124   BELOW :
125       CLOSED LOADING REFERS TO THE PROCEDURES WHEREBY TANKERS CONDUCT ALL
126   CARGO OPERATIONS, WHETHER LOADING, DISCHARGING OR BALLASTING, WITH TANK
127   APERTURES CLOSED AND WITH VAPOUR BEING EMITTED ONLY BY MEANS OF THE
128   DEDICATED VENTING SYSTEM WHICH IS DESIGNED TO DISPERSE VAPOUR CLEAR OF
129   WORKING AREAS AND POSSIBLE IGNITION SOURCES. ALL ULLAGE, SOUNDING AND
130   SIGHTING PORTS MUST BE SECURELY CLOSED.
131
132   10.CARGO TRANSFER CLAUSE
133
134   AT NO TIME DURING THE VOYAGE SHALL CARGO BE TRANSFERRED BETWEEN VESSEL'S
135   TANKS WITHOUT THE EXPRESS CONSENT OF THE CHARTERERS. SUCH CONSENT SHALL BE
136   REQUESTED BY MEANS OF WRITTEN TELEX, EMAIL OR RADIO COMMUNICATION,
137   SPECIFYING LOADED AND REVISED ULLAGES AND CARGO QUANTITIES FOR THE TANKS
138   CONCERNED AND REASONS NECESSITATING A CARGO TRANSFER. CHARTERERS' CONSENT
139   SHALL NOT BE UNREASONABLY WITHHELD AND SHALL BE PROVIDED EXPEDITIOUSLY BY
140   WRITTEN TELEX. MASTER TO CONFIRM TO THE CHARTERERS THAT OPERATION HAS BEEN
141   CARRIED OUT.
142
143   IN THE EVENT TRANSFER OF CARGO IS UNAVOIDABLE FOR EMERGENCY REASONS
144   INVOLVING RISK TO VESSEL'S STRUCTURAL INTEGRITY OR SAFETY OF LIFE OR FOR
145   SAFE NAVIGATION, THE PRIOR CONSENT OF THE CHARTERERS SHALL NOT BE REQUIRED.
146   HOWEVER, THE MASTER SHALL INFORM THE CHARTERERS OF ANY SUCH TRANSFER AND OF
147   CIRCUMSTANCES THAT NECESSITATED IT AS SOON AS POSSIBLE THEREAFTER.
148
149   11.PANAMA CANAL CLAUSE
150
151   ANY WAITING TIME FOR TRANSITING PANAMA CANAL IN LADEN CONDITION IN
152   EXCESS OF 24 HOURS IS FOR CHARTERERS ACCOUNT. WAITING TIME SHALL BE
153   CALCULATED ON THE BASIS OF THE DEMURRAGE RATE AND PAID TOGETHER WITH
154   FREIGHT.
155
156   IF CHARTERERS DO NOT GIVE TIMELY ORDERS TO TRANSIT THE PANAMA
157   CANAL, ALL WAITING AND DELAYS OCCURRED ARE FOR CHRTS ACCOUNT
158   REGARDLESS IF IT IS LESS THAN 24 HOURS OR NOT.
159
160   PRE-BOOKING FEE, IF IT IS REQUIRED, TO BE SPLIT TO CHARTERERS AND
161   OWNERS AND PAID TOGETHER WITH FREIGHT
162
163   12.MISS RIVER CLAUSE
164
165   FOR MISS RIVER PORTS, SW PASS WILL BE CONSIDERED THE NORMAL ANCHORAGE
166   AND OR WAITING AREA FOR VESSEL TO TENDER NOTICE OF READINESS AND
167   LAYTIME TO COMMENCE 6 HOURS AFTER TENDERING NOR AT SW PASS OR WHEN
168   THE VESSEL IS ALL FAST WHICHEVER EARLIER.
169
170   13.TURKISH STRAIGHTS CLAUSE
171
172   ANY WAITING TIME FOR TRANSITING BOSPOROUS/SEA OF MARMARA/DARDANELLES
```

# LITASCO

**LUKOIL INTERNATIONAL TRADING AND SUPPLY COMPANY**

173 ~~(TURKISH STRAITS) IN BALLAST AND LADEN CONDITIONS IN EXCESS OF 48~~
174 ~~HOURS TO COUNT AS LAYTIME OR DEMURRAGE IF ON DEMURRAGE, BUT CHARTERERS~~
175 ~~ALWAYS TO HAVE THE FULL BENEFIT OF CP LAYTIME. EXTRA TIME USED TO BE PAID~~
176 ~~TOGETHER WITH FREIGHT AS PER OWNERS INVOICE, WHICH LATER TO BE SUPPORTED BY~~
177 ~~HARD COPY DOCUMENTATION. ANY DELAYS IN EXCESS OF 24 HOURS ON PASSING~~
178 ~~TURKISH STRAITS NORTH BOUND TO BE ADDED TO LAYCAN.~~ ANY DELAY/WAITING IN
PASSING THE TURKISH STRAITS IN EXCESS OF 48 HOURS TOTAL NORTHBOUND/SOUTHBOUND,
(IF DISCH X BSEA 24 HRS/SOM 36 HRS - IF VSL N/B IN LADEN CONDITION THEN IF
B.SEA DISCHARGE 24 HRS / IF SOM 12 HRS - IF VSL IS OPENS IN B.SEA THEN 24 HRS
/ IF SOM 12 HOURS) TO BE PAID ON DEMURRAGE RATE, AND THE COST OF BUNKERS
CONSUMED DURING SUCH ADDITIONAL TIME TOGETHER WITH ANY EXTRAORDINARY EXPENSES
IN CONNECTION WITH COMPLYING WITH CHARTERERS VOYAGE ORDERS AS REGARDS THE
TURKISH STRAITS TO BE FOR CHARTERERS' ACCOUNT AND TO BE PAID TOGETHER WITH
FREIGHT, [I.E ADDITIONAL TUGS, PILOTS ETC] SUPPORTING DOCUMENTS TO FOLLOW.

IF VESSEL IS DELAYED BY REASON OF DELAYS IN PASSING THE TURKISH STRAITS
NORTHBOUND, THE SAID CANCELLING DATE SHALL BE EXTENDED BY ANY TIME SO DIRECTLY
LOST (PROVIDED VSL ARRIVES AT BOSPHORUS ~~CANAKKALE~~ WITHIN THE 3RD DECEMBER 2021
AT ~~14TH MARCH 2018 AT~~ 23:59 HRS LT) OWNERS TO APPOINT THEIR AGENTS IN TURKISH
STRAITS.

179
180 14.SOX EMISSION CONTROL AREAS - TO BE DISCUSSED CASE BY CASE.
181
182 OWNERS CONFIRM THAT THEY ARE AWARE THAT, WITH EFFECT FROM 19TH MAY 2006,
183 IMO MARPOL 73/78 ANNEX VI ON THE PREVENTION OF AIR POLLUTION FROM SHIPS
184 BECAME MANDATORY FOR ALL INTERNATIONALLY TRADING VESSELS ABOVE 400GT AND
185 THAT, IN PARTICULAR, ANNEX VI PROVIDES FOR THE CREATION OF SOX EMISSION
186 CONTROL AREAS IN WHICH HIGHTENEND CONTROLS ON SULPHUR EMISSIONS APPLY.
187 OWNERS CONFIRM THAT THEY WILL COMPLY WITH ALL OBLIGATIONS SET OUT IN IMO
188 MARPOL 73/78 ANNEX VI WHERE THE VESSEL IS OPERATING WITHIN SUCH SOX
189 EMISSION CONTROL AREAS.
190
191 15.CASUALTY REPORT CLAUSE
192
193 IN THE EVENT THAT THE VESSEL IN INVOLVED IN A COLLISION, GROUNDING,
194 FIRE, EXPLOSION, SPILLAGE OR ANY OTHER INCIDENT / ACCIDENT WHICH CAUSES
195 DAMAGE TO THE VESSEL OR THE PORT OR THE TERMINAL AND IS LIKELY TO AFFECT
196 THE SHIPMENT OF THE CARGO UNDER THIS CHARTER PARTY, A THIRD PARTY AND /
197 OR GENERATE MEDIA ATTENTION, THEN MASTER AND OWNERS ARE TO ADVISE
198 CHARTERERS IMMEDIATELY.
199
200 16.ITF OR EQUIVALENT CLAUSE
201
202 OWNERS WARRANT THAT THE VESSEL HAS A VALID BLUE CARD CERTIFICATE OR
203 EQUIVALENT BONA FIDE TRADE UNION CERTIFICATE ON BOARD CERTIFYING THAT
204 OFFICER AND CREW WAGES AND CONDITIONS ARE IN ACCORDANCE WITH ITF STANDARDS
205 OR EQUIVALENT DURING THE CURRENCY OF THE CHARTERPARTY. ANY DELAYS AND/OR
206 EXPENSES RESULTING FROM NON-COMPLIANCE WITH THIS WARRANTY NOT TO COUNT AS
207 LAYTIME OR DEMURRAGE IF VESSEL ON DEMURRAGE.
208
209 ~~17.VITOL VACUUM GASOIL (VGO)/ LOW SULPHUR WAXY RESIDUE (LSWR) CLAUSE~~
210
211 ~~IF LOADING VGO OR LSWR AND THE PREVIOUS CARGO WAS FUEL OIL, MARINE DIESEL~~
212 ~~OIL, VGO OR GASOIL, IT IS ESSENTIAL THAT NO TANK CLEANING IS PERFORMED~~
213 ~~PRIOR TO LOADING EXCEPT TO ENSURE THAT ALL TANKS, LINES AND PUMPS ARE~~
214 ~~STRIPPED DRY AND DRAINED OF ANY PREVIOUS CARGO AND THAT R.O.B./O.B.Q.~~
215 ~~SHOULD NOT EXCEED 0.1 PER CENT OF CARGO QUANTITY AND THAT THESE SHOULD NOT~~
216 ~~CONTAIN WATER.~~
217

# LITASCO

**LUKOIL INTERNATIONAL TRADING AND SUPPLY COMPANY**

218   AFTER ALL OTHER CARGOES, THE FOLLOWING TANK CLEANING MUST BE PERFORMED.
219
220   I. HOT MACHINE WASH ALL TANKS DESIGNATED TO CARRY VGO/LSWR (WATER PRESSURE
221   150 PSI, TEMPERATURE 150 DEGREES FAHRENHEIT).
222
223   II. STRIP TANKS COMPLETELY DRY AND DRAIN ALL LINES AND PUMPS OF WATER.
224
225   III. A) THOROUGHLY WASH ALL TANKS, LINES AND PUMPS DESIGNATED FOR VGO/LSWR
226   WITH FRESH WATER TO ELIMINATE ALL TRACES OF SALT WATER.
227   B) DRAIN PUMPS AND LINES.
228   C) DRY OUT TANKS.
229
230   IV. IRRESPECTIVE OF PREVIOUS CARGO, WHERE SALT WATER BALLAST HAS BEEN
231   LOADED INTO CARGO TANKS DESIGNATED FOR VGO/LSWR, THE VESSEL SHALL:
232   A. ON COMPLETION OF DE-BALLASTING STRIP TANKS DRY.
233   B. DRAIN PUMPS AND LINES.
234   C. FRESH WATER RINSE ALL SALT WATER CONTAMINATED TANKS, LINES AND PUMPS.
235   D. DRAIN PUMPS AND LINES.
236   E. DRY OUT TANKS.
237   F. WHERE POSSIBLE, LOAD FIRST INTO TANKS WHICH PREVIOUSLY CONTAINED BALLAST
238   TO AT LEAST 25 PCT FULL BEFORE SWITCHING TO OTHER TANKS.
239
240   V. REGARDLESS OF PREVIOUS CARGO, PRIOR TO LOADING, ALL HEATING COILS MUST
241   BE BLOWN THROUGH WITH STEAM TO ENSURE THERE IS NO ENTRAPMENT OF SALT WATER
242   THROUGH HEATING COIL LEAKAGE.
243
244   VI. HEATING: THROUGHOUT THE VOYAGE AND DISCHARGE, THE VESSEL SHOULD
245   MAINTAIN LOADED TEMPERATURE OR A TEMPERATURE OF PLUS 15 DEGREES CELSIUS
246   HIGHER THAN CARGO POUR POINT WHICHEVER IS HIGHER.
247
248   18.EXXON BLENDING CLAUSE (AMENDED) FOR LITASCO CRUDE LIFTINGS
249
250   CHARTERER SHALL HAVE THE OPTION TO BLEND THE CARGO ONBOARD THE VESSEL AT
251   LOADPORT BY CO-MINGLING THE CARGO, PROVIDED THAT SUCH BLENDING IS WITHIN
252   THE TECHNICAL CAPABILITY OF THE VESSEL AND THAT THE MASTER CONSIDERS IT
253   SAFE TO DO SO. CHARTERER INDEMNIFIES THE OWNER, VESSEL AND MASTER AGAINST
254   LIABILITY FOR ANY CARGO QUALITY AND QUANTITY CLAIMS THAT MAY ARISE AS A
255   DIRECT RESULT OF THIS ONBOARD BLENDING, INCLUDING CARGO QUALITY CLAIMS FROM
256   A THIRD PARTY. ANY ADDITIONAL CHARGES THAT RESULT DIRECTLY FROM CHARTERER
257   EXERCISING THIS ONBOARD BLENDING OPTION, INCLUDING DEMURRAGE, PORT CHARGES,
258   EXTRA AGENCY FEES, CONSUMED BUNKERS AT DOCUMENTED REPLACEMENT COST, ETC,
259   AND WHICH ARE NOT INCLUDED IN THE FREIGHT AGREED UNDER PART I (G) OF THIS
260   CHARTER PARTY, SHALL BE FOR THE ACCOUNT OF CHARTERER. CHARTERER WILL
261   SURRENDER TO MASTER ALL ORIGINAL BILLS OF LADING FOR THE UNBLENDED CARGO
262   AND THE MASTER WILL PROVIDE NEW CONSOLIDATED BILLS OF LADING ON COMPLETION
263   OF BLENDING OPERATIONS, WHICH BILLS OF LADING WILL REFLECT THE ACTUAL GRADE
264   THAT HAS BEEN BLENDED.
265
266   BILLS OF LADING TO SHOW RUSSIAN EXPORT BLEND CRUDE OIL.
267
268   19.EXXON STORAGE CLAUSE
269
270   1. CHARTERER SHALL HAVE THE OPTION OF REQUIRING THE VESSEL TO WAIT EN ROUTE
271   AT ONE OR MORE PLACES AND/OR DISCHARGE AREAS AS FLOATING STORAGE AT A SAFE
272   ANCHORAGE. THE PERIOD OF STORAGE SHALL BE FOR UP TO _____ DAYS WITH
273   CHARTERER'S OPTION TO TERMINATE STORAGE ON GIVING OWNER _____ DAYS NOTICE.
274
275   2. IN THE EVENT CHARTERER EXERCISES THE OPTION TO UTILIZE VESSEL AS STORAGE
276   AT A PLACE EN-ROUTE, CHARTERER NEED ONLY GIVE MINIMAL NOTICE. IF CHARTERER
277   WISH TO UTILIZE VESSEL FOR STORAGE AT THE DISCHARGE AREA, THEN CHARTERER

# LITASCO

**LUKOIL INTERNATIONAL TRADING AND SUPPLY COMPANY**

278   SHALL, IN THIS CASE, GIVE MINIMUM _____ DAYS NOTICE.                    :
279
280   3. HIRE FOR STORAGE SHALL BE PAID FOR AT US DOLLARS _____ PER DAY FOR
281   THE FIRST _____ DAYS, OR PRO-RATA, AND PAYMENTS SHALL BE MADE AT
282   COMPLETION OF EACH FIFTEEN (15) DAY PERIOD AFTER ARRIVAL AT STORAGE AREA.
283
284   4. IF VESSEL IS REQUIRED TO WAIT ON ROUTE, 50% OF THE OCEAN FREIGHT SHALL
285   BE PAYABLE TO OWNER NOT LATER THAN DATE WHICH WOULD BE EQUIVALENT TO THAT
286   OF FOUR DAYS AFTER VESSEL'S THEORETICAL ARRIVAL DATE AT DISCHARGE POINT. IF
287   THE VESSEL IS SUBSEQUENTLY REQUIRED TO FLOAT AT THE DISCHARGE AREA, THE
288   BALANCE OF FRIGHT UP TO 80% SHALL BE PAYABLE UPON ARRIVAL AT STORAGE AREA.
289   THE REMAINDER OF FREIGHT IS DUE UPON DISCHARGE.
290
291   5. HOTEL BUNKERS SHALL BE FOR OWNER'S ACCOUNT
292
293   6. PLUS US DOLLARS _____ PER DAY OR PRO-RATA IF VESSEL IS REQUIRED TO
294   STEAM AS BELOW:
295
296   A. AS REQUESTED BY CHARTERER
297
298   B. AT MASTER'S DISCRETION SHOULD THE VESSEL BE UNABLE TO ANCHOR OR REMAIN
299   AT ANCHOR AT THE DESIGNATED LOCATION DUE TO WEATHER CONDITIONS, BOTTOM
300   CONDITIONS OR ANY OTHER FACTOR WHICH, IN THE MASTER'S JUDGEMENT REPRESENTS
301   AN UNSAFE SITUATION.
302
303   C. NO ADDITIONAL PAYMENT REQUIRED FOR STEAMING TO THE INITIAL DISCHARGE
304   PORTS OR BERTHS AS PROVIDED IN CHARTER PARTY DATED _____ PROVIDED THE
305   CHARTERER IS RESPONSIBLE FOR ANY AND ALL DEVIATION INCURRED.
306
307   D. OWNER WARRANTS THAT VESSEL'S ANCHOR AND ANCHOR CHAINS ARE IN GOOD
308   OPERATIONAL CONDITION AND WILL BE MAINTAINED THROUGHOUT CHARTER PARTY.
309
310   7. PLUS US DOLLARS _____ PER DAY OR PRO-RATA IF VESSEL IS REQUIRED BY
311   CHARTERER TO CIRCULATE THE CARGO WITHIN THE VESSEL'S CARGO AS PROVIDED FOR
312   UNDER CHARTER PARTY DATED _____. SHOULD THE VESSEL BE REQUIRED TO RELOAD
313   AND PUMP ONE OR MORE TIMES DURING THE STORAGE PERIOD, THE SAME RATE TO
314   APPLY FOR ALL SUCH DISCHARGE WHETHER THE VESSEL IS PUMPING ALONGSIDE THE
315   DOCK OR BY SHIP-TO-SHIP TRANSFER.
316
317   8. SHOULD THE PORT AUTHORITIES REQUIRE THE VESSEL TO MAINTAIN THE ENGINE ON
318   STANDBY WITH THE STEAM ON THE BOILERS AT THE STORAGE AREAS, THE CHARTERER
319   AGREES TO PAY OWNER ONE HALF THE RATE IN ITEM 6.
320
321   ALL OTHER TERMS, CONDITIONS AND EXCEPTIONS TO THE CHARTER PARTY ARE TO
322   REMAIN UNALTERED AND IN FULL FORCE AND EFFECT.
323
324   20.ICE CLAUSE
325
326   VESSEL NOT TO FORCE ICE BUT TO FOLLOW ICEBREAKERS AS FAR AS, IN THE
327   REASONABLE OPINION OF THE MASTER, THE ICE CHANNEL IS SUFFICIENTLY WIDE. AT
328   EACH PORT VESSEL IS ENTITLED TO TENDER NOR ON ARRIVAL PILOT STATION OR
329   CUSTOMARY ANCHORAGE OR AT EDGE OF ICE WHICHEVER OCCURS FIRST. ALL TIME
330   LOST WHILST OPERATING IN ICE, WAITING IN ICE OR WAITING ON ACCOUNT OF ICE,
331   INCLUDING WAITING FOR ICE BREAKERS, PILOTS, ETC., AS WELL AS ANY DELAYS DUE
332   TO NAVIGATING IN ICE ON BOTH LADEN AND BALLAST VOYAGES TO AND FROM ANY
333   PORT(S)/BERTH(S) UNDER THIS C/P TO BE PAID BY CHARTERERS AT DEMURRAGE RATE
334   PLUS ALL BUNKERS CONSUMED PLUS ANY OTHER PROVEN COST DUE TO THE ICE SUCH AS
335   EXTRA PORT CHARGES, DELAYS DURING LOAD AND DISCHARGE. FOR THE PURPOSE OF
336   CALCULATING DELAYS A SERVICE SPEED OF 13.5 KNOTS LADEN AND 13.5 KNOTS IN
337   BALLAST SHALL BE USED. CHARTERERS TO PAY AGAINST OWNERS E-MAIL OR FAX

# LITASCO

**LUKOIL INTERNATIONAL TRADING AND SUPPLY COMPANY**

338 ~~INVOICE AND TOGETHER WITH FREIGHT AGAINST SUPPORTING DOCUMENTS. ANY EXTRA~~
339 ~~INSURANCE AND/OR TAXES AND/OR FEES AND/OR CHARGES~~
340
341 ~~INCURRED BY BREACHING IWL AND/OR TRADING IN ICE BOUND WATERS TO BE FOR~~
342 ~~CHARTERERS ACCOUNT BUT TO BE SETTLED BY OWNERS WITH FURTHER REIMBURSEMENT~~
343 ~~BY CHRTRS SIMULTANEOUSLY WITH FREIGHT AGAINST OWNERS INVOICE SUPPORTED BY~~
344 ~~RELEVANT DOCUMENTS. THIS ALWAYS TO INCLUDE BUT NOT TO BE LIMITED TO EXTRA~~
345 ~~WINTER PILOTAGE /TUGS, ICE ADVISORS, ICEBREAKER FEES AND ANY ADDITIONAL~~
346 ~~COSTS/EXPENSES ATTRIBUTABLE TO ICE AND/OR OF IWL.~~
347
348 21.STS CLAUSE
349
350 IF LIGHTERING/STS TRANSFER OPERATION IS REQUIRED SAME ALWAYS TO BE IN
351 ACCORDANCE WITH OCIMF LATEST EDITION OF STS TRANSFER. CHARTERERS TO SUPPLY
352 ALL FENDERS/LINES/HOSES **AS PER OCIMF STANDARDS/ REGULATIONS** AND ANY OTHER
EQUIPMENT REQUIRED FOR SUCH AN
353 OPERATION AT CHARTERERS TIME AND EXPENSES AND ALWAYS SUBJECT TO MASTERS
354 APPROVAL. TIME TO COUNT IN FULL 6HRS AFTER TENDERING NOR OR WHEN FIRST
355 LIGHTER VESSEL IS ALONGSIDE, WHICHEVER EARLIER, UNTIL LAST LINE/FENDER IS
356 OFF AND LIGHTER VESSEL HAS SAILED. TIME LOST DUE TO TIDE AND/OR WEATHER
357 AND/OR SEA CONDITIONS TO COUNT IN FULL AS LAYTIME OR DEMURRAGE IF ON
358 DEMURRAGE. IF THE VESSEL IS REQUIRED TO COMPLETE CARGO OPERATION AT A BERTH
359 IN PORT CHARTERERS WILL NOT HAVE THE BENEFIT OF 6 HRS NOR PRIOR BERTHING IN
360 PORT. CHARTERERS WARRANT THAT THERE IS NO PROHIBITION OR RESTRICTION ON STS
361 OPERATION AT THE PORT/PLACE TO WHICH THE VESSEL IS ORDERED TO PERFORM STS
362 TRANSFER AND FURTHER THAT THEY HAVE OBTAINED ANY/ALL NECESSARY LOCAL
363 APPROVALS OR LICENSES TO CARRY OUT OPERATIONS AT THE DESIGNATED PROT/PLACE.
364
365 22.WORLDSCALE CLAUSE
366
367 WORLDSCALE HOURS TERMS AND CONDITIONS TO APPLY AND IF WORLDSCALE WHEN
368 CALCULATING FLAT RATE HAS NOT MADE ANY ALLOWANCE FOR PORT COSTS, **INCLUDING
AGENCY FEES,** THEN
369 SAME TO BE FOR CHARTERERS ACCOUNT.
370
371 23.ISPS CLAUSE FOR VOYAGE CHARTER PARTIES BASED ON BIMCO WORDING WITH
372 AMENDMENTS - **BIMCO ISPS/MTSA CLAUSE FOR VOYAGE CHARTER PARTIES TO APPLY.**
373
374 ~~(A) (I) FROM THE DATE OF COMING INTO FORCE OF THE INTERNATIONAL CODE~~
375 ~~FOR THE SECURITY OF SHIPS AND OF PORT FACILITIES AND THE RELEVANT~~
376 ~~AMENDMENTS TO CHAPTER XI OF SOLAS (ISPS CODE) IN RELATION TO THE VESSEL,~~
377 ~~THE OWNERS SHALL PROCURE THAT BOTH THE VESSEL AND "THE COMPANY" (AS DEFINED~~
378 ~~BY THE ISPS CODE) SHALL COMPLY WITH THE REQUIREMENTS OF THE ISPS CODE~~
379 ~~RELATING TO THE VESSEL AND THE COMPANY. UPON REQUEST THE OWNERS SHALL~~
380 ~~PROVIDE A COPY OF THE RELEVANT INTERNATIONAL SHIP SECURITY CERTIFICATE (OR~~
381 ~~THE INTERIM INTERNATIONAL SHIP SECURITY CERTIFICATE) TO THE CHARTERERS. THE~~
382 ~~OWNERS SHALL PROVIDE THE CHARTERERS WITH THE FULL STYLE CONTACT DETAILS OF~~
383 ~~THE COMPANY SECURITY OFFICER (CSO).~~
384
385 ~~(II) EXCEPT AS OTHERWISE PROVIDED IN THIS CHARTER PARTY, LOSS, DAMAGE,~~
386 ~~EXPENSE OR DELAY, EXCLUDING CONSEQUENTIAL LOSS, CAUSED BY FAILURE ON THE~~
387 ~~PART OF THE OWNERS OR THE COMPANY TO COMPLY WITH THE REQUIREMENTS~~
388 ~~OF THE ISPS CODE OR THIS CLAUSE SHALL BE FOR THE OWNERS ACCOUNT.~~
389
390 ~~(B) (I) THE CHARTERERS SHALL PROVIDE THE CSO AND THE SHIP SECURITY~~
397 ~~OFFICER (SSO)/MASTER WITH THEIR FULL STYLE CONTACT DETAILS AND ANY~~
392 ~~OTHER INFORMATION THE OWNERS REQUIRE TO COMPLY WITH THE ISPS CODE.~~
393
394 ~~(II) EXCEPT AS OTHERWISE PROVIDED IN THIS CHARTER PARTY, LOSS, DAMAGE,~~
395 ~~EXPENSE, EXCLUDING CONSEQUENTIAL LOSS, CAUSED BY FAILURE ON THE PART OF THE~~

# LITASCO
LUKOIL INTERNATIONAL TRADING AND SUPPLY COMPANY

396 ~~CHARTERERS TO COMPLY WITH THIS CLAUSE SHALL BE FOR THE CHARTERERS ACCOUNT~~
397 ~~AND ANY DELAY CAUSED BY SUCH FAILURE SHALL BE COMPENSATED AT THE DEMURRAGE~~
398 ~~RATE.~~
399
400 ~~(C) PROVIDED THAT THE DELAY IS NOT CAUSED BY THE OWNERS FAILURE TO COMPLY~~
401 ~~WITH THEIR OBLIGATIONS UNDER THE ISPS CODE, THE FOLLOWING SHALL APPLY:~~
402
403 ~~(I) NOTWITHSTANDING ANYTHING TO THE CONTRARY PROVIDED IN THIS CHARTER~~
404 ~~PARTY, THE VESSEL SHALL BE ENTITLED TO TENDER NOTICE OF READINESS EVEN~~
405 ~~IF NOT CLEARED DUE TO APPLICABLE SECURITY REGULATIONS OR MEASURES IMPOSED~~
406 ~~BY A PORT FACILITY OR ANY RELEVANT AUTHORITY UNDER THE ISPS~~
407 ~~CODE.~~
408
409 ~~(II) ANY DELAY RESULTING FROM MEASURES IMPOSED BY A PORT FACILITY OR~~
410 ~~BY ANY RELEVANT AUTHORITY UNDER THE ISPS CODE SHALL COUNT AS LAYTIME~~
411 ~~OR TIME ON DEMURRAGE IF THE VESSEL IS ON LAYTIME OR DEMURRAGE. IF THE~~
412 ~~DELAY OCCURS BEFORE LAYTIME HAS STARTED OR AFTER LAYTIME OR TIME ON~~
413 ~~DEMURRAGE HAS CEASED TO COUNT, IT SHALL BE COMPENSATED BY THE CHARTERERS AT~~
414 ~~HALF DEMURRAGE RATE.~~
415
416 ~~(D) NOTWITHSTANDING ANYTHING TO THE CONTRARY PROVIDED IN THIS CHARTER~~
417 ~~PARTY, ANY ADDITIONAL COSTS OR EXPENSES WHATSOEVER SOLELY ARISING OUT~~
418 ~~OF OR RELATED TO SECURITY REGULATIONS OR MEASURES REQUIRED BY THE PORT~~
419 ~~FACILITY OR ANY RELEVANT AUTHORITY IN ACCORDANCE WITH THE ISPS CODE~~
420 ~~INCLUDING, BUT NOT LIMITED TO, SECURITY GUARDS, LAUNCH SERVICES, TUG~~
421 ~~ESCORTS, PORT SECURITY FEES OR TAXES AND INSPECTIONS, SHALL BE SHARED~~
422 ~~50/50, UNLESS SUCH COSTS OR EXPENSES RESULT SOLELY FROM THE OWNERS~~
423 ~~NEGLIGENCE. ALL MEASURES REQUIRED BY THE OWNERS TO COMPLY WITH THE SHIP~~
424 ~~SECURITY PLAN SHALL BE FOR THE OWNERS ACCOUNT.~~
425
426 ~~(E) IF EITHER PARTY MAKES ANY PAYMENT WHICH IS FOR THE OTHER PARTY ACCOUNT~~
427 ~~ACCORDING TO THIS CLAUSE, THE OTHER PARTY SHALL INDEMNIFY THE PAYING PARTY~~
428
429 24.AFFILIATE ASSIGNMENT
430
431 NOTWITHSTANDING ANY OTHER PROVISIONS OF THIS CHARTER PARTY, CHARTERER MAY
432 ASSIGN ALL OF ITS RIGHTS AND DELEGATE OBLIGATIONS UNDER THIS CHARTER PARTY
433 TO ANY AFFILIATE (THE TERM "AFFILIATE" SHALL MEAN ANY COMPANY WHICH IS
434 DIRECTLY OWNED IN WHOLE OR IN PART BY LITASCO SA.
435
436 25.APPLICABLE LAW
437
438 THIS CHARTER SHALL BE CONSTRUED AND THE RELATIONS BETWEEN THE OWNER AND
439 CHARTERER DETERMINED IN ACCORDANCE WITH THE LAWS OF ENGLAND.
440
441 26.ARBITRATION
442
443 1. ANY DISPUTE ARISING UNDER THIS CHARTER SHALL BE REFERRED TO ARBITRATION
444 IN LONDON IN ACCORDANCE WITH THE LMAA TERMS (2002) OF THE LONDON MARITIME
445 ARBITRATORS' ASSOCIATION, OR ANY MODIFICATION OR RE-ENACTMENT THEREOF AT
446 THE TIME IN FORCE.
447
448 2. UNLESS THE PARTIES AGREE IN ANY SUCH WRITTEN AGREEMENT TO ARBITRATE THAT
449 THE TRIBUNAL SHALL CONSIST OF A SOLE ARBITRATOR WHO IS IDENTIFIED IN SAID
450 AGREEMENT, ONE ARBITRATOR SHALL BE APPOINTED BY EACH PARTY. THE
451 ARBITRATORS SO APPOINTED SHALL APPOINT A THIRD ARBITRATOR AND THE REFERENCE
452 SHALL BE TO THE THREE-MAN TRIBUNAL THUS CONSTITUTED. THE THIRD ARBITRATOR
453 SHALL BE A PRACTICING SOLICITOR OR BARRISTER EXPERIENCED IN THE SHIPPING
454 FIELD.
455

**LITASCO**

LUKOIL INTERNATIONAL TRADING AND SUPPLY COMPANY

456  3. IF EITHER OF THE APPOINTED ARBITRATORS REFUSES TO ACT OR IS INCAPABLE OF
457  ACTING, THE PARTY WHO APPOINTED HIM SHALL APPOINT A NEW ARBITRATOR IN HIS
458  PLACE.
459
460  4. IF ONE PARTY FAILS TO APPOINT AN ARBITRATOR OR IF THE TWO ARBITRATORS
461  APPOINTED BY THE PARTIES CANNOT AGREE ON THE CHOICE OF A THIRD ARBITRATOR,
462  WHETHER ORIGINALLY OR BY WAY OF SUBSTITUTION, FOR TWO (2) WEEKS AFTER
463  REQUEST BY THE OTHER PARTY TO MAKE THE APPOINTMENT, THE PRESIDENT FOR THE
464  TIME BEING OF THE LONDON MARITIME ARBITRATORS ASSOCIATION SHALL, UPON
465  APPLICATION OF EITHER PARTY, APPOINT AN ARBITRATOR ON BEHALF OF THE
466  DEFAULTING PARTY, OR APPOINT THE THIRD ARBITRATOR, AS THE CASE MAY BE, AND
467  THAT ARBITRATOR SHALL HAVE FULL POWERS TO ACT IN THE REFERENCE AND MAKE AN
468  AWARD.
469
470  5. NOTWITHSTANDING THE FOREGOING IF THE DISPUTE OR DIFFERENCE INVOLVES A
471  CLAIM BY EITHER PARTY FOR A SUM NOT EXCEEDING USD 100,000 THEN THE DISPUTE
472  OR DIFFERENCE SHALL BE RESOLVED IN ACCORDANCE WITH THE LMAA SMALL CLAIM
473  PROCEDURE 1998 (OR SUBSEQUENT AMENDMENT THERETO).
474  APPEALS
475
476  THE PARTIES HEREBY AGREE THAT IN RELATION TO CLAUSE B(1) AND CLAUSE B(5)
477  ABOVE, EITHER PARTY MAY:
478
479  APPEAL TO THE HIGH COURT ON ANY QUESTION OF LAW ARISING OUT OF AN AWARD;
480
481  APPLY TO THE HIGH COURT TO DETERMINE ANY QUESTION OF LAW ARISING IN THE
482  COURSE OF THE REFERENCE.
483
484  27.PRIVACY CLAUSE
485
486  ALL DETAILS OF THE FIXTURE WILL HAVE TO BE KEPT STRICTLY PRIVATE AND
487  CONFIDENTIAL, UNLESS BOTH CHARTERERS AND OWNERS HAVE NO OBJECTION TO THE
488  FIXTURE BEING REPORTED.
489
490  28.LOI INVOCATION CLAUSE
491
492  ~~DISCHARGING PORT (S) OR RANGE(S), SHOWN IN BILL (S) OF LADING NOT TO~~
493  ~~CONSTITUTE A DECLARATION OF DISCHARGE PORT(S) OR RANGE(S) AND CHARTERERS TO~~
494  ~~HAVE THE RIGHT TO ORDER THE VESSEL TO ANY PORT OR PLACE WITHIN THE TERMS OF~~
495  ~~THIS CHARTER.~~
496
497  ~~IF AND WHEN SPECIFICALLY INSTRUCTED TO DO SO BY CHARTERERS, OWNERS AGREE TO~~
498  ~~RELEASE THE CARGO ONBOARD IN THE FOLLOWING CASES:~~
499
500  ~~A . IF NO ORIGINAL BILL OF LADING IS AVAILABLE AT DISCHARGE PORT(S)~~
501
502  ~~OR:~~
503
504  ~~B . IF VESSEL IS ORDERED TO DISCHARGE IN A PORT OR PLACE OTHER THAN THE~~
505  ~~DESTINATION SHOWN IN THE BILL OF LADING. IN CONSIDERATION OF OWNERS~~
506  ~~COMPLYING WITH CHARTERERS' SPECIFIC INSTRUCTIONS AS ABOVE, CHARTERERS~~
507  ~~SHALL, UPON GIVING FORMAL NOTIFICATION TO OWNERS, INVOKE THE FOLLOWING~~
508  ~~INDEMNITY:~~
509
510  ~~1. TO INDEMNIFY OWNERS, OWNERS SERVANT(S) AND AGENT(S) AND TO HOLD OWNERS~~
511  ~~AND THEM HARMLESS IN RESPECT OF ANY LIABILITY LOSS OR DAMAGE OF~~
512  ~~WHATSOEVER NATURE WHICH THEY MAY SUSTAIN BY REASON OF OWNERS CAUSING THE~~
573  ~~VESSEL TO PROCEED TO PORT(S) OTHER THAN THAT NAMED IN THE BILLS OF~~
574  ~~LADING AND CAUSING THE VESSEL TO DELIVER THE CARGO AT SUCH PORT(S)~~
515  ~~WITHOUT THE PRODUCTION OF THE BILLS OF LADING. FURTHERMORE, IF~~

# LITASCO

**LUKOIL INTERNATIONAL TRADING AND SUPPLY COMPANY**

516 ~~CHARTERERS REQUEST OWNERS TO DELIVER THE CARGO TO A PERSON OR PERSONS~~
517 ~~OTHER THAN THE HOLDERS OF THE BILLS OF LADING, TO INDEMNIFY OWNERS AND~~
518 ~~HOLD OWNERS HARMLESS IN RESPECT OF ANY LOSS OR DAMAGE OF WHATSOEVER~~
519 ~~NATURE WHICH OWNERS MAY SUSTAIN BY REASON OF OWNERS DOING SO.~~
520
521 ~~2. TO PAY OWNERS ON DEMAND THE AMOUNT OF ANY LOSS OR DAMAGE OF WHATSOEVER~~
522 ~~NATURE WHICH THE MASTER AND / OR AGENTS OF THE VESSEL AND / OR ANY OTHER~~
523 ~~OF OWNERS SERVANTS OR AGENTS WHATSOEVER MAY INCUR AS A RESULT OF THE~~
524 ~~VESSEL PROCEEDING AND DELIVERING THE CARGO AS SET OUT IN PARAGRAPH 1,~~
525 ~~HEREOF.~~
526
527 ~~3. IN THE EVENT OF ANY PROCEEDINGS BEING COMMENCED AGAINST OWNERS OR ANY OF~~
528 ~~OWNERS SERVANTS OR AGENTS IN CONNECTION WITH THE VESSEL HAVING PROCEEDED~~
529 ~~AS AFORESAID AND / OR HAVING DELIVERED THE CARGO IN ACCORDANCE WITH~~
530 ~~CHARTERERS REQUEST, TO PROVIDE OWNERS OR THEIR SERVANTS OR AGENTS FROM~~
531 ~~TIME TO TIME ON DEMAND WITH SUFFICIENT FUNDS TO DEFEND THE SAID~~
532 ~~PROCEEDINGS.~~
533
534 ~~4. IF THE VESSEL OR ANY OTHER VESSEL OR PROPERTY BELONGING TO THE OWNERS~~
535 ~~SHOULD BE ARRESTED OR DETAINED OR IF THE ARREST OR DETENTION THEREOF BE~~
536 ~~THREATENED, TO PROVIDE ON DEMAND SUCH BAIL OR OTHER SECURITY AS MAY BE~~
537 ~~REQUIRED TO PREVENT SUCH ARREST OR DETENTION OR TO SECURE THE RELEASE OF~~
538 ~~SUCH VESSEL OR PROPERTY AND TO INDEMNIFY OWNERS IN RESPECT OF ANY LOSS,~~
539 ~~DAMAGE OR EXPENSES CAUSED BY SUCH ARREST OR DETENTION WHETHER OR NOT THE~~
540 ~~SAME MAY BE JUSTIFIED.~~
541
542 ~~5. IF CALLED UPON TO DO SO AT ANY TIME WHILE THE GOODS ARE IN CHARTERERS'~~
543 ~~POSSESSION, CUSTODY OR CONTROL, TO REDELIVER THE SAME TO OWNERS.~~
544
545 ~~6. TO PRODUCE AND DELIVER UP TO OWNERS, DULY DISCHARGED ALL OF THE BILLS OF~~
546 ~~LADING FOR THE CARGOES SIGNED BY THE MASTER OR ON HIS BEHALF, AS SOON AS~~
547 ~~THEY HAVE ARRIVED AND / OR COME INTO CHARTERERS' POSSESSION.~~
548
549 ~~7. THE LIABILITY OF EACH AND EVERY PERSON UNDER THIS INDEMNITY SHALL BE~~
550 ~~JOINT AND SEVERAL AND SHALL NOT BE CONDITIONAL UPON OWNERS PROCEEDING~~
551 ~~FIRST AGAINST ANY PERSON, WHETHER OR NOT SUCH PERSON IS PARTY TO OR~~
552 ~~LIABLE UNDER THIS INDEMNITY.~~
553
554 ~~8. THIS INDEMNITY SHALL BE CONSTRUED IN ACCORDANCE WITH ENGLISH LAW AND~~
555 ~~EACH AND EVERY PERSON LIABLE UNDER THIS INDEMNITY SHALL AT OWNERS'~~
556 ~~REQUEST, SUBMIT TO THE JURISDICTION OF THE HIGH COURT OF JUSTICE OF~~
557 ~~ENGLAND.~~
558
559 ~~THE ABOVE INDEMNITY SHALL AUTOMATICALLY BECOME NULL AND VOID UPON~~
560 ~~PRESENTATION OF ONE OUT OF THREE RELEVANT BILLS OF LADING, OR 13 (THIRTEEN)~~
561 ~~MONTHS AFTER COMPLETION OF DISCHARGE OF CARGO TO WHICH SUCH INDEMNITY~~
562 ~~REFERS, ALWAYS PROVIDED NO LEGAL PROCEEDINGS HAVE BEEN INSTITUTED AGAINST~~
563 ~~OWNERS. CHARTERERS TO INVOKE OWNERS P AND I CLUB WORDING.~~
LOI TO BE INVOKED AS
PER OWNER'S LOI INVOCATION CLAUSE :
OWNERS L.O.I INVOCATION CLAUSE –
----------------
CHARTERERS TO INVOKE THE HEREBY ATTACHED L.O.I'S FOR
A) CHANGE OF DESTINATION OR (B) DELIVERY OF CARGO WITHOUT PRODUCTION OF
ORIGINAL B/L'S MESSAGE WORDING OR (C) CHANGE OF DESTINATION AND DELIVERY OF
CARGO WITHOUT PRODUCTION OF ORIGINAL B/L'S BY SENDING TO OWNERS THE HEREBELOW -
INVOCATION
WE...(CHARTERERS)..HEREBY INVOKE THE L.O.I AS ATTACHED IN THE C/P
CLAUSE...FOR THE B/L'S OF THE FOLLOWING DETAILS:

**LITASCO**

LUKOIL INTERNATIONAL TRADING AND SUPPLY COMPANY

- HEADOWNERS:
- DISPONENT OWNERS: N2 TANKERS B.V.
- B/L DATE:
- VSL'S NAME:
- SUPPLIERS:
- RECEIVERS:
- CONSIGNEE:
- CARGO GRADE:
- CARGO QUANTITY:
- LOADING PORT:
- DISCHARGE PORT:
- PARTY ISSUING THE LOI:
ATTACHED LOI DOCUMENTS FOR SITUATIONS A),B)& C).

564
565     29.AMS CLAUSE - BIMCO AMS CLAUSE, (WHEN APPLICABLE)
566
567     (A) IF THE VESSEL LOADS OR CARRIES CARGO DESTINED FOR THE US OR PASSING
568     THROUGH US PORTS IN TRANSIT, THE OWNERS SHALL COMPLY WITH THE CURRENT US
569     CUSTOMS REGULATIONS (19 CFR 4.7) OR ANY SUBSEQUENT AMENDMENTS THERETO AND
570     SHALL UNDERTAKE THE ROLE OF CARRIER FOR THE PURPOSES OF SUCH REGULATIONS
571     AND SHALL, IN THEIR OWN NAME, TIME AND EXPENSE:
572
573     I. HAVE IN PLACE A SCAC (STANDARD CARRIER ALPHA CODE);
574     II. HAVE IN PLACE AN ICB (INTERNATIONAL CARRIER BOND); AND
575     III. SUBMIT A CARGO DECLARATION BY AMS (AUTOMATED MANIFEST SYSTEM)
576         TO THE US CUSTOMS.
577
578     (B) THE CHARTERERS SHALL PROVIDE ALL NECESSARY INFORMATION TO THE OWNERS
579     AND/OR THEIR AGENTS TO ENABLE THE OWNERS TO SUBMIT A TIMELY AND ACCURATE
580     CARGO DECLARATION.
581     THE CHARTERERS SHALL ASSUME LIABILITY FOR AND SHALL INDEMNIFY, DEFEND AND
582     HOLD HARMLESS THE OWNERS AGAINST ANY LOSS AND/OR DAMAGE WHATSOEVER
583     (INCLUDING CONSEQUENTIAL LOSS AND/OR DAMAGE) AND/OR ANY EXPENSES, FINES,
584     PENALTIES AND ALL OTHER CLAIMS OF WHATSOEVER NATURE, INCLUDING BUT NOT
585     LIMITED TO LEGAL COSTS, ARISING FROM THE CHARTERERS' FAILURE TO COMPLY WITH
586     ANY OF THE PROVISIONS OF THIS SUB-CLAUSE. SHOULD SUCH FAILURE RESULT IN ANY
587     DELAY THEN, NOTWITHSTANDING ANY PROVISION IN THIS CHARTER PARTY TO THE
588     CONTRARY, ALL TIME USED OR LOST SHALL COUNT AS LAYTIME OR, IF THE VESSEL IS
589     ALREADY ON DEMURRAGE, TIME ON DEMURRAGE.
590
591     (C) THE OWNERS SHALL ASSUME LIABILITY FOR AND SHALL INDEMNIFY, DEFEND AND
592     HOLD HARMLESS THE CHARTERERS AGAINST ANY LOSS AND/OR DAMAGE WHATSOEVER
593     (INCLUDING CONSEQUENTIAL LOSS AND/OR DAMAGE) AND ANY EXPENSES, FINES,
594     PENALTIES AND ALL OTHER CLAIMS OF WHATSOEVER NATURE, INCLUDING BUT NOT
595     LIMITED TO LEGAL COSTS, ARISING FROM THE OWNERS' FAILURE TO COMPLY WITH ANY
596     OF THE PROVISIONS OF SUB-CLAUSE (A). SHOULD SUCH FAILURE RESULT IN ANY
597     DELAY THEN, NOTWITHSTANDING ANY PROVISION IN THIS CHARTER PARTY TO THE
598     CONTRARY, ALL TIME USED OR LOST SHALL NOT COUNT AS LAYTIME OR, IF THE
599     VESSEL IS ALREADY ON DEMURRAGE, TIME ON DEMURRAGE.
600
601     (D) THE ASSUMPTION OF THE ROLE OF CARRIER BY THE OWNERS PURSUANT TO THIS
602     CLAUSE AND FOR THE PURPOSE OF THE US CUSTOMS REGULATIONS (19 CFR 4.7) SHALL
603     BE WITHOUT PREJUDICE TO THE IDENTITY OF CARRIER UNDER ANY BILL OF LADING,
604     OTHER CONTRACT, LAW OR REGULATION.
605
606     30.CLINGAGE CLAUSE - N/A THIS CP
607
608     IF THE VESSEL IS EX LAY-UP, EX DRY-DOCK OR HER LAST CARGO IS DRY, A VALUE
609     OF CARGO **THE FOB VALUE OF CRUDE** AS WELL AS FREIGHT AND INSURANCE WITH RESPECT

# LITASCO

**LUKOIL INTERNATIONAL TRADING AND SUPPLY COMPANY**

      THERETO FOR ANY

610    SHORT OUTTURN CARGO QUANTITY, (AS DETERMINED BY ~~AN INDEPENDENT SURVEYOR~~ 2
    (TWO) INDEPENDENT INSPECTORS, ONE APPOINTED AND PAID BY CHARTERERS AND ONE
    APPOINTED AND PAID BY OWNERS BY

611    COMPARING THE BILL OF LADING QUANTITY AGAINST THE DISCHARGED QUANTITY BASED

612    ON SHORE TANKS GAUGING), SHALL BE ~~DEDUCTED FROM FREIGHT~~ CLAIMED FROM OWNERS TO
    THE EXTENT THAT

613    SUCH QUANTITY EXCEEDS 0.3 PERCENT OF THE BILL OF LADING QUANTITY.
    BELOW CLINCAGE CLAUSE TO APPLY :
    OWNER AND CHARTERER RECOGNISE THAT, THE
    VESSEL BEING ON HER MAIDEN VOYAGE, EX LAY-UP, EX DRY DOCK OR EX
    DRY-CARGO, A CLINGAGE OF A GREATER DEGREE THAN NORMAL CAN BE
    ANTICIPATED. THEREFORE, FOB VALUE OF CARGO AS WELL AS FREIGHT
    FOR ANY SHORT OUT-TURN CARGO QUANTITY (AS DETERMINED BY A MUTUALLY ACCEPTABLE
    INDEPENDENT SURVEYOR (OWNER'S P&I REPRESENTATIVE TO BE PERMITTED ACCESS AT
    LOADPORT AND DISPORT TO WITNESS THE SURVEYS) .
    BY COMPARING THE BILL OF LADING (B/L) QUANTITY WITH THE QUANTITY ACTUALLY
    DISCHARGED ASHORE ON THE
    BASIS OF SHORE TANKS GAUGES) SHALL BE CLAIMED FROM OWNERS TO THE EXTENT THAT
    SUCH QUANTITY EXCEEDS 0,3 PERCENT OF
    THE B/L QUANTITY.

# ADDITIONAL CLAUSES

DISCHARGE RELOAD CLAUSE:

Not Applicable

SUPPLIERS ALWAYS TO BE AUTHORIZED BY NOC TRIPOLI

Not Applicable

LIBYA STRIKE CLAUSE – N/A THIS CP

Not Applicable

LIBYA CLAUSE  - NOT APPLICABLE IF LOADING AL JURF, FARWAH, OR IF LOADING BOURI.

(1) CHARTERERS REPRESENT AND WARRANT THAT AT THE TIME OF ENTERING INTO THIS CHARTERPARTY THEY AND ANY COMPANY WITH AN INTEREST IN THE CARGO ARE NOT IN ANY WAY DIRECTLY OR INDIRECTLY OWNED, CONTROLLED BY OR RELATED TO ANY PEOPLE/ENTITIES LISTED ON THE US OFFICE OF FOREIGN ASSET'S CONTROL LIST OF SPECIALLY DESIGNATED NATIONALS AND BLOCKED PERSONS OR THE US COMMERCE DEPARTMENT'S DENIED PERSONS LIST OR ARE PEOPLE/ENTITIES SUBJECT TO EU OR UN SANCTIONS.
(2) NOTHING IN THIS CHARTER SHALL BE READ SO AS TO REQUIRE EITHER PARTY TO ACT IN ANY MANNER WHICH IS INCONSISTENT WITH OR PROHIBITED UNDER:-
(I) ANY APPLICABLE ANTI-BRIBERY AND CORRUPTION OR ANTI-MONEY LAUNDERING LAWS AND REGULATIONS;
(II) ANY UN, EU, UK, GREEK, FRENCH OR SWISS LAWS, REGULATIONS, SANCTIONS OR OTHER OFFICIAL UN, EU, UK, GREEK, FRENCH OR SWISS GOVERNMENT REQUIREMENTS APPLICABLE TO SUCH PARTY, RELATING TO FOREIGN TRADE CONTROLS, SANCTIONS, EXPORT CONTROLS, EMBARGOES OR INTERNATIONAL BOYCOTTS OF ANY TYPE.
IF CHARTERERS OR OWNERS, FIND THEMSELVES IN BREACH (OR IN A POSITION WHERE THEY WILL BE IN BREACH) OF ANY FOREIGN TRADE RESTRICTION, SANCTION OR PROHIBITION, IMPOSED BY THE UN, EU, UK, GREECE, FRANCE OR SWITZERLAND AS A RESULT OF PERFORMING THIS CHARTERPARTY, OWNERS (OR CHARTERERS, AS
APPROPRIATE) WILL NOTIFY CHARTERERS (OR OWNERS, AS APPROPRIATE) IMMEDIATELY (WHETHER BEFORE, DURING OR AFTER LOADING) OF THE PROBLEM.
IF, PRIOR TO LOADING ANY CARGO, THE INTENDED VOYAGE CANNOT BE PERFORMED FOR REASONS COVERED BY THIS CLAUSE AND/OR REASONS COVEREWD IN THE LIBYA STRIKE CLAUSE CONTAINED ABOVE AND/OR FORCE MAJEURE, THEN THE CHARTERPARTY SHALL BE CANCELLED BUT CHARTERERS WILL PAY THE MINIMUM FREIGHT AGREED (BASIS MIN FLAT AUGUSTA) MINUS:
PORT EXPENSES AT DISCHARGE PORT (XXXXXX), MINUS THE PORT EXPENSES AT LOADPORT (IF OWNERS HAVE PAID IT, THEN NOT TO BE DEDUCTED, AND OWNERS TO SHOW PROOF OF PAYMENT), MINUS THE BUNKERS THAT THE OWNERS WOULD HAVE USED TO DISCHARGE THE CARGO, AND THE BUNKERS FOR THE STEAMING FROM LOADPORT TO THEORETICAL DISPORT PLUS ALL TIME SPENT AT LOADPORT AT DEMURRAGE RATE PLUS ALL BUNKERS CONSUMED WHILST WAITING OR ADRIFT.
IT IS UNDERSTOOD BETWEEN CHARTERERS AND OWNERS THAT ALL TIME LOST IN LIBYA DUE TO THE PRESENT POLITICAL (NOT LIMITED ONLY TO STRIKES, STOPPAGES, LOCKOUT) SITUATION TO BE PAID AT DEMURRAGE RATE. ANY EXTRA WAR RISK TO BE FOR CHARTERERS' ACCOUNT.

- OWNERS OPTION TO BUNKER ON LADEN PASSAGE. CHARTERERS ALWAYS TO BE INFORMED AND DELAYS TO BE MINIMISED.

INTERIM PORT CLAUSE

CHARTERERS SHALL PAY FOR ANY INTERIM LOAD/DISCHARGE PORT (S)/TRANSIMPENT AT SEA, AT COST AND AT THE RATE OF USD ($) PER DAY PRO RATA. ALL TIME IN INTERIM PORT TO RUN CONTINUOUSLY AND IN FULL W.P.O.N FROM ARRIVAL OFF PORT LIMITS (OR IN CASE OF TRANSHIPMENT, FROM ARRIVAL AT THE STS LOCATION) UNTIL DROPPING LAST OUTWARD SEA PILOT (OR IN THE CASE OF TRANSHIPMENT, UNTIL VESSEL HAS GIVEN FULL AWAY).
ADDITIONAL STEAMING TIME (IF ANY) INCURRED FOR SUCH DEVIATION WHICH EXCEEDS DIRECT ROUTE FROM FIRST LOADPORT TO FURTHEST DISCHARGE PORT SHALL BE PAID AT RATE OF USD ($) PER DAY PRO RATA PLUS ALL BUNKERS CONSUMED AT SEA AND IN PORT AS PER MASTER'S TELEXED STATEMENT, INCLUDING BUNKERS FOR HEATING.
ALL PORT COSTS, INCLUDING AGENCY FEES, EXCEPT FOR OWNERS ITEMS, TO BE FOR CHARTERERS

ACCOUNT AND TO BE SETTLED BY THEM DIRECTLY.DEVIATION TIME, PORT TIME AND ALL BUNKERS CONSUMED PAYABLE BY CHARTERERS TOGETHER WITH FREIGHT AGAINST OWNERS' TELEX INVOICE AS PER MASTER'S TELEXED STATEMENTS AND BUNKERS INVOICE.

- ANY TAXES AND/OR DUES ON CARGO AND OR FREIGHT TO BE FOR CHARTERERS' ACCOUNT AND TO BE SETTLED DIRECTLY BY THEM.

WAR RISK INSURANCE:

ALL WAR RISK INSURANCE PREMIUMS ON HULL AND MACHINERY, BLOCKING AND TRAPPING, LOSS OF HIRE, P+I ADDITIONAL PREMIUM, AND CREW WAR BONUS TO BE FOR CHRTS ACCOUNT AND PAID TOGETHER WITH FREIGHT WITH SUPPORTING DOCUMENTS TO FOLLOW. OWNERS BEING RESPONSIBLE FOR ONLY BASIC ANNUAL PREMIUMS.

- (WHEN APPLICABLE) OWNERS TO COMPLY WITH ISRAELI MINISTER OF TRANSPORT NOTICE TO MARINERS CONCERNING UNDER WATER OPERATION IN THEIR SHIPS.

- IF BERTH IS FREE AND CARGO AVAILABLE CHARTERERS TO DO THEIR BEST ENDEAVOURS TO LOAD VESSEL EARLIER IF POSSIBLE.

- DISCHARGE PORTS ALWAYS TO BE IN GEOGRAPHICAL ROTATION.

- ANY DELAYS/EXPENSES DUE TO U.N. INSPECTION IN ADRIATIC TO BE FOR CHARTERERS ACCOUNT AND TO BE SETTLED TOGETHER WITH THE FREIGHT.

- ANY QUAY DUES AT CROATIA IF ANY TO BE FOR CHARTERERS ACCOUNT AND SETTLED DIRECTLY BY THEM.

WEATHER CLAUSE TO READ:

CONOCO WEATHER CLAUSE TO APPLY IN ALL PORTS HOWEVER IF DISCHARGE FIUMICINO, FALCONARA, RAVENNA, PORT LA NOUVELLE, GELA, SANTA PANAGIA BAY, MELILLI, CIVITAVECCHIA, MILAZZO, SPANISH ATLANTIC, PORTUGAL, MOROCCO, ISRAEL [IF ISRAEL INCLUDED IN THE DISCHARGE OPTIONS] AND/OR IF LIGHTERING / LIGHTENING / STS OPERATION TAKES PLACE AT ANY LOCATION AND/OR IF LOADING / DISCHARGING VIA A SEALINE / SEATERMINAL ANY DELAYS OWING TO WEATHER / SEACONDITIONS TO COUNT IN FULL AS USED LAYTIME OR TIME ON DEMURRAGE IF VESSEL ON DEMURRAGE.
ANY EXPENSES INCURRED DUE TO WEATHER AND/OR SEA CONDITIONS INCLUDING UNBERTHING / REBERTHING EXPENSES AT THE ABOVE MENTIONED PORTS / PLACES TO BE FOR CHARTERERS ACCOUNT.

- STANDBY TUGS EXPENSES WHEN COMPULSORY AND NOT COVERED BY WORLDSCALE TO BE FOR CHARTERERS ACCOUNT AND SETTLED BY THEM DIRECTLY

ISRAELI CLAUSE:

ANY DELAYS IN REACHING ISRAEL OR ISRAELI WATERS AND ANY DELAYS AFTER COMPLETION OF DISCHARGING DUE TO NAVAL BLOCKADE, OTHER BLOCKADE, ORDERS TO WAIT BY AUTHORITIES OR FOR REASONS BEYOND OWNERS CONTROL, TO BE PAID BY CHARTERERS AT DEMURRAGE RATE PLUS BUNKERS PLUS OTHER EXPENSES AS INCURRED.

- ADDITIONAL WAR RISK PREMIUM AND CREW WAR BONUS TO BE FOR CHARTERERS ACCOUNT EXCEPT - IF ISRAEL EXTRA WAR RISK INSURANCE TO BE FOR CHARTERERS ACCOUNT, CREW WAR BONUS TO BE FOR OWNERS ACCOUNT.

- WITH REF TO BIMCO WAR RISK CLAUSE AS AMENDED BY OWNERS HEREBELOW THE FOLLOWING ALSO TO APPLY:
'IF DUE TO WAR VESSEL IS UNABLE TO PROCEED FOR DISCHARGING IN ISRAEL CHARTERERS TO PROVIDE AT OWNERS REQUEST AN ALTERNATIVE DISCHARGING PORT OUTSIDE ISRAELI TERRITORY'.

BIMCO WAR RISKS CLAUSE FOR VOYAGE CHARTERING, 2004 (CODE NAME: VOYWAR 2004):

Not Applicable

UKRAINIAN CLAUSE:

IF LOADING/DISCHARGIN AT/OFF UKRANIAN PORT(S) ANY PENALTIES IMPOSED BY ENVIROMENTAL CONTROL AUTHORITIES IN RELATION TO WATER BALLAST AT LOADPORT/DISCHARGE PORT TO BE FOR

CHARTERERS ACCOUNT PAYABLE WITH FREIGHT AGAINST OWNERS TELEXED INVOICE WITH FULL DOCUMENTS TO FOLLOW, PROVIDED VESSEL IS IN COMPLIANCE WITH MARPOL REGULATIONS IN RELATION TO BALLAST WATER IN BLACK SEA AND A COMPLETE BALLAST WATER EXCHANGE HAS BEEN CARRIED OUT WITHIN BLACK SEA.

STRIKE CLAUSE:

ALL TIME LOST IN FRANCE BERTHING AND/OR DISCHARGING DUE TO STRIKES AND/OR LOCKOUTS, BE THEY OFFICIAL OR UN-OFFICIAL, INCLUDING STRIKES INVOLVING TUGS AND/OR PILOTS, TO COUNT AS FULL LAYTIME OR DEMURRAGE IF VESSEL IS ON DEMURRAGE.

- BIMCO AMS CLAUSE TO APPLY.

STS LIGHTERING CLAUSE

IF STS WITHIN PORT LIMITS - PORT FLAT TO APPLY INC DIFFERENTIALS AND PORT / AGENCY / TOWAGE COSTS FOR OWNERS ACCOUNT UNLESS OTHERWISE STIPULATED AS PER WORLDSCALE. OTHERWISE ANY FURTHER SHIFTING ETC PLS REFER TO EXXON VOY 16 (C).
OTHERWISE:
CHARTERERS SHALL HAVE THE OPTION TO LOAD AND DISCHARGE THE VESSEL VIA SHIP-TO-SHIP TRANSFER AT A SAFE LOCATION AS DESIGNATED BY THE PORT AUTHORITIES AT ANCHOR OFF ANY PORT WITHIN TRADING LIMITS OF THIS CHARTER PARTY PROVIDED WEATHER PERMITTING AND ALWAYS AT MASTER'S DISCRETION WHICH SHALL NOT BE UNREASONABLY WITHHELD.
CHARTERERS WILL PROVIDE ALL FENDERS, HOSES AND EQUIPMENT INCLUDING TUGS, MOORING ROPES, PILOTS AS NECESSARY AT THEIR TIME, RISK AND EXPENSES TO PERFORM A SAFE LIGHTERING OPERATION. MASTER OF THE VESSEL WILL, WEATHER PERMITTING, CONDUCT SUCH LIGHTERAGE AT SUITABLE LOCATION SUBJECT TO MASTER'S APPROVAL WHICH NOT TO BE UNREASONABLY WITHHELD.
CHARTERERS WARRANT THAT THE LIGHTERING OPERATION SHALL BE CARRIED OUT IN ACCORDANCE WITH THE PROCEDURES SET OUT IN THE LAST REVISED EDITION OF THE INTERNATIONAL CHAMBER OF SHIPPING OIL COMPANIES INTERNATIONAL MARINE FORUM, SHIP-TO-SHIP TRANSFER GUIDE FOR PETROLEUM.
CHARTERERS WARRANT THAT THE SECOND VESSEL WILL PROVIDE ALL PRE-ENGAGEMENT INFORMATION IN FULL COMPLIANCE WITH THE ICS/OCIMF S-T-S TRANSFER GUIDE.
IT IS UNDERSTOOD AND AGREED THAT THE CREW OF THE VESSEL WILL BE REQUIRED TO ASSIST IN HANDLING FENDERS AND CARGO HOSES AS WELL AS MOORING AND UNMOORING AT THE TRANSFER SITE AT NO COST TO THE CHARTERERS. IF THE MASTER FEELS THAT THE SAFETY OF HIS VESSEL IS THREATENED HAS THE RIGHT TO ORDER THE LIGHTERING VESSEL AWAY.
ALL PORT CHARGES INCL TOWAGE CHARGES AND AGENCY FEES IF STS TO BE FOR CHARTERERS ACCOUNT AND TO BE SETTLED DIRECTLY BY THEM.

ALL COSTS FOR STS INCL ARRANGEMENTS OF FENDERS, HOSES AND SAFETY EQUIPMENT TO BE FOR CHRTRS ACCOUNT AND TO BE SETTLED DIRECTLY BY THEM.
ALL TIME FOR LOADING/OFFLOADING STS EQUIPMENT TO BE FOR CHARTERERS ACCOUNT.
STS OPERATIONS ALWAYS TO ALWAYS TO BE IN ACCORANCE WITH THE LATEST EDITION OF OCIMF STS TRANSFER GUIDE TIME TO COUNT FROM TENDERING OF NOR AT DESIGNATED LOCATION.

ICE CLAUSE

VESSEL NOT TO BREAK ICE BUT TO FOLLOW ICE-BREAKERS WHEN ENTERING TO AND WHEN SAILING FROM THE LOADING PORT AND THE APPROACHES OF THE LOADING PORT (IF NEEDED BUT ALWAYS AT MASTER'S DISCRETION).
ANY DELAY IN ENTERING TO AND IN SAILING FROM THE LOADING PORT AND THE APPROACHES OF THE LOADING PORT AND ANY EXTRA STEAMING TIME/DELAY ON ACCOUNT OF ICE CONDITION OVER AND ABOVE THE NORMAL STEAMING TIME AND ANY WAITING TIME FOR THE ICE BREAKER FOR APPROACHING AND ENTERING TO AND FOR SAILING FROM THE LOADING PORT AND ITS APPROACHES TO COUNT AS USED LAYTIME OR DEMURRAGE IF ON DEMURRAGE AND TO BE PAID AT DEMURRAGE RATE.
CANCELLING DATE TO BE EXTENDED ACCORDINGLY IN CASE VESSEL ENCOUNTERS DELAYS DUE TO ICE CONDITIONS AT THE LOADING PORT.
THE INCOMING DELAY SHALL BE PAYABLE IRRESPECTIVE OF VESSEL ARRIVING AT THE LOADING PORT BEFORE LAYDAYS.VESSEL TO BE PROVIDED WITH ICE-BREAKER ASSISTANCE AT ALL TIMES FROM THE MOMENT SHE ARRIVES AT THE ICE EDGE UNTIL SHE IS SAFELY MOORED AT BERTH AND REGARDLESS.
HOW FAR THE ICE EDGE POSITION IS FROM TERMINAL LIMITS AND AT ALL TIMES FROM THE MOMENT VESSEL HAS LEFT BERTH UNTIL SHE HAS PASSED THE ICE EDGE. ANY EXTRA COST CHARGED BY THE TUGS FOR EXTENDING THEIR SUPPORT OUTSIDE THE PORT LIMITS TO BE FOR CHARTERERS' ACCOUNT AND TO BE SETTLED BY THEM DIRECT.

STAND-BY TUGS AND/OR ICE BREAKER EXPENSES TO BE FOR CHARTERERS' ACCOUNT AND TO BE PAID TOGETHER WITH FREIGHT.
EXTRA INSURANCE FOR BREACHING IWL TO BE FOR OWNERS ACCOUNT.

- ANY DUES/TAXES ASSESSED OR CALCULATED ON CARGO AND/OR FREIGHT TO BE FOR CHARTERERS ACCOUNT

PRIMORSK BALLAST CLAUSE:

OWNERS/MASTER ARE AWARE THAT ACCORDING TO PRIMORSK PORT REGULATIONS THE BALLAST WATER IN BALLAST TANKS SHOULD CONTAIN OIL PRODUCTS NOT MORE THAN 0.05 MG/DM3. IN CASE OF HEIGHTENED CONTENT OF OIL PRODUCT FOUND IN BALLAST TANKS THE DISCHARGE OF SUCH WATER WILL BE PROHIBITED BY PORTAUTHORITIES. IN VIEW OF THE ABOVE THE MASTER SHOULD TAKE BALLAST WATER AT THE CONSIDERABLE SEA DEPTH PROVIDING CLEAN WATER AT BALLAST TANKS ACCORDING TO PRIMORSK REGULATIONS.
ANY TIME LOST A/O ANY COSTS DUE TO VESSEL'S FAILURE TO COMPLY WITH ABOVE, TO BE FOR OWNERS ACCOUNT AND TIME NOT TO COUNT AS LAYTIME OR AS DEMURRAGE, IF ON DEMURRAGE.

WEATHER CLAUSE:

AT SPANISH ATLANTIC, BUTINGE, PORTUGAL, FIUMICINO/FALCONARA/SANTA PANAGIA BAY/RAVENNA/LA NOUVELLE/GAETA/MOHAMMEDIA, OR IF LIGHTERING, LIGHTENING, STS TAKES PLACE AND/OR IF DISCHARGING VIA A SEALINE/SEA TERMINAL ANY DELAYS OWING TO WEATHER/SEA CONDITIONS TIME TO COUNT IN FULL AS USED LAYTIME OR DEMURRAGE IF ON DEMURRAGE AND ANY UNBERTHING/ REBERTHING/SHIFTING TIME AND ANY EXPENSES INCLUDING UNBERTHING/ REBERTHING DUE TO BAD WEATHER/SEA CONDITION (INCL SWELL) AT ABOVE PORTS/PLACES TO BE FOR CHARTERERS ACCOUNT.
FOR ALL OTHER PORTS, UNLESS OWISE MUTUALLY AGREED, BAD WEATHER PERIODS TO COUNT AS ONE HALF LAYTIME, OR IF ON DEMURRAGE, AT ONE HALF OF THE DEMURRAGE RATE. (NA) AT LOADPORT, ALL COSTS FOR UNBERTHING/REBERTHING DUE TO BAD WEATHER / SEA CONDITION TO BE FOR CHARTERERS ACCOUNT.
TIME TO COUNT AS PER CONOCO WEATHER CLAUSE (EXCEPT BUTINGE AS ABOVE) AND FOR FIRST 48 HRS VYSOTSK AFTER WHICH FULL TIME TO COUNT.

EU ADVANCE CARGO DECLARATION CLAUSE FOR VOYAGE CHARTER PARTIES:

(A) IF THE VESSEL LOADS CARGO IN ANY EU PORT OR PLACE DESTINED FOR A PORT OR PLACE OUTSIDE THE EU OR LOADS CARGO OUTSIDE THE EU DESTINED FOR AN EU PORT OR PLACE, THE OWNERS SHALL COMPLY WITH THE CURRENT EU ADVANCE CARGO DECLARATION REGULATIONS (THE SECURITY AMENDMENT TO THE COMMUNITY CUSTOMS CODE, REGULATIONS 648/2005; 1875/2006; AND 312/2009) OR ANY SUBSEQUENT AMENDMENTS THERETO AND SHALL UNDERTAKE THE ROLE OF CARRIER FOR THE PURPOSES OF SUCH REGULATIONS AND IN THEIR OWN NAME, TIME AND EXPENSE SHALL:
(I) HAVE IN PLACE AN EORI NUMBER (ECONOMIC OPERATOR REGISTRATION AND IDENTIFICATION);
(II) SUBMIT AN ENS (ENTRY SUMMARY DECLARATION) CARGO DECLARATION ELECTRONICALLY TO THE EU MEMBER STATES' CUSTOMS (FIRST PORT OF CALL).
(B) THE CHARTERERS SHALL PROVIDE ALL NECESSARY INFORMATION TO THE OWNERS AND/OR THEIR AGENTS TO ENABLE THE OWNERS TO SUBMIT A TIMELY AND ACCURATE CARGO DECLARATION. THE CHARTERERS SHALL ASSUME LIABILITY FOR AND SHALL INDEMNIFY, DEFEND AND HOLD HARMLESS THE OWNERS AGAINST ANY LOSS AND/OR DAMAGE WHATSOEVER (INCLUDING CONSEQUENTIAL LOSS AND/OR DAMAGE) AND/OR ANY EXPENSES, FINES, PENALTIES AND ALL OTHER CLAIMS OF WHATSOEVER NATURE, INCLUDING BUT NOT LIMITED TO LEGAL COSTS, ARISING FROM THE CHARTERERS' FAILURE TO COMPLY WITH ANY OF THE PROVISIONS OF THIS SUB-CLAUSE. SHOULD SUCH FAILURE RESULT IN ANY DELAY THEN, NOTWITHSTANDING ANY PROVISION IN THIS CHARTER PARTY TO THE CONTRARY, ALL TIME USED OR LOST SHALL COUNT AS LAYTIME OR, IF THE VESSEL IS ALREADY ON DEMURRAGE, TIME ON DEMURRAGE.
(C) THE OWNERS SHALL ASSUME LIABILITY FOR AND SHALL INDEMNIFY, DEFEND AND HOLD HARMLESS THE CHARTERERS AGAINST ANY LOSS AND/OR DAMAGE WHATSOEVER (INCLUDING CONSEQUENTIAL LOSS AND/OR DAMAGE) AND ANY EXPENSES, FINES, PENALTIES AND ALL OTHER CLAIMS OF WHATSOEVER NATURE, INCLUDING BUT NOT LIMITED TO LEGAL COSTS, ARISING FROM THE OWNERS' FAILURE TO COMPLY WITH ANY OF THE PROVISIONS OF SUB-CLAUSE (A). SHOULD SUCH FAILURE RESULT IN ANY DELAY THEN, NOTWITHSTANDING ANY PROVISION IN THIS CHARTER PARTY TO THE CONTRARY, ALL TIME USED OR LOST SHALL NOT COUNT AS LAYTIME OR, IF THE VESSEL IS ALREADY ON DEMURRAGE, TIME ON DEMURRAGE.
(D) THE ASSUMPTION OF THE ROLE OF CARRIER BY THE OWNERS PURSUANT TO THIS CLAUSE AND FOR THE PURPOSE OF THE EU ADVANCE CARGO DECLARATION REGULATIONS SHALL BE WITHOUT PREJUDICE TO THE IDENTITY OF CARRIER UNDER ANY BILL OF LADING, OTHER CONTRACT, LAW OR REGULATION.

USG COC CLAUSE:

IF T/A NOR TO BE VALID IRRESPECTIVE OF VESSEL HAVING COC ON BOARD ON ARRIVAL, WHICH THE OWNERS UNDERTAKE TO APPLY FOR ITS ISSUANCE FROM USCG ON ARRIVAL.
ALL TIME WAITING FOR AN INSPECTION AND DURING WHICH THE ACTUAL INSPECTION IS CONDUCTED BY USCG TO BE FOR OWNERS ACCOUNT. WAITING FOR INSPECTION TIME IS ONLY TO BE FOR OWNERS ACCOUNT SHOULD THE BERTH BE AVAILABLE FOR THE VESSEL TO DISCHARGE, IF THE BERTH IS UNAVAILABLE THEN TIME WAITING TO BERTH TO BE FOR CHARTERERS ACCOUNT AS PER CP TERMS. ALSO IN CASE VSL IS DELAYED IN BERTHING DUE TO BAD WEATHER THEN THESE DELAYS TO COUNT AS PER WEATHER CLAUSE REGARDLEES OF VSL BEING INSPECTED OR NOT.

EUROPEAN UNION (EU) LOW SULPHUR FUEL DIRECTIVE:

OWNER IS REMINDED THAT EU DIRECTIVE 2005/33/EC REGARDING LOW SULPHUR FUEL OIL BECOMES EFFECTIVE ON 1 JANUARY 2010. AS PER THE TERMS OF PURCHASE, ANY DELAYS, LOST TIME, OR EXPENSES RESULTING FROM OR ATTRIBUTABLE TO NONCOMPLIANCE WITH THE EU DIRECTIVE SHALL BE FOR OWNERS ACCOUNT.

INCIDENT REPORTING:

IF THE VESSEL IS INVOLVED IN AN INCIDENT THAT INVOLVES COLLISION, GROUNDING, POLLUTION, FIRE OR ANY OTHER EMERGENCY, LITASCO GENEVA MUST BE CONTACTED BY TELEPHONE AT THE EARLIEST OPPORTUNITY.

TELEPHONE FIRST CONTACT: DAVID WALKER
MOBILE PHONE: +41 79 448 92 79
OFFICE PHONE: +41 22 705 21 16

TELEPHONE SECOND CONTACT: THIES PETERSEN
MOBILE PHONE: +41 79 255 67 82
OFFICE PHONE: +41 22 705 24 14

TELEPHONE THIRD CONTACT: GUSTAV LIND
MOBILE PHONE: +41 79 370 59 54
OFFICE PHONE: +41 22 705 21 43

IT IS IMPORTANT THAT THE FOLLOWING INFORMATION IS RECONFIRMED AT THE EARLIEST OPPORTUNITY BY EMAIL TO "FIREWALL@LITASCO.CH" THE FIRST WORDS IN THE MESSAGE SHOULD COMMENCE LITASCO INCIDENT REPORT AND CONTAIN THE FOLLOWING INFORMATION:
AA TIME IN GMT AND LT OF INCIDENT AND TIME THAT THIS INCIDENT WAS REPORTED TO THE PERSON FORWARDING THE REPORT TO THE FIREWALL MANAGER
BB NAME OF THE VESSEL
CC LATITUDE OF THE INCIDENT
DD LONGITUDE OF THE INCIDENT
EE NATURE OF THE INCIDENT
FF IF THE INCIDENT INVOLVES ANOTHER VESSEL, THE NAME AND LR/IMO NUMBER OF THE OTHER VESSEL AND THE CARGO THAT OTHER VESSEL IS CARRYING
GG A STATEMENT AS TO ANY INJURIES OR FATALITIES
HH A DESCRIPTION OF THE EXTENT OF THE DAMAGE TO THE VESSEL AND THIRD PARTY VESSEL OR PROPERTY.
II NOTIFICATION AS TO WHETHER THE VESSEL WILL BE ABLE OR HAS CONTINUED ON THE VOYAGE.
JJ IF THE INCIDENT HAS CAUSED DELAY, AN ESTIMATE OF THE DURATION OF THE DELAY.
KK IF THE INCIDENT INVOLVES POLLUTION, STATE:
THE CAUSE OF THE INCIDENT;
THE GRADE(S) OF CARGO THAT HAVE BEEN SPILLED;
THE QUANTITY IN BARRELS THAT HAVE BEEN SPILLED;
A STATEMENT AS TO WHETHER THE POLLUTION IS CONTINUING OR HAS BEEN STOPPED IF THE SPILL IS CONTINUING, AN ESTIMATE OF THE TOTAL AMOUNT IN BARRELS THAT WILL BE SPILLED;
THE LOCAL TIME OF THE OCCURRENCE;
WHAT CLEAN-UP MEASURES ARE BEING TAKEN;
THE LOCATION OF THE VESSEL (CONVENTIONAL TERMINAL, CBM OR SPM);
THE NAME OF THE OPERATOR OF THE INSTALLATION;
THE TIDAL FLOW RATE OR RATE OF CURRENT
LL CURRENT WEATHER AND SEA CONDITION
MM FORECASTED WEATHER AND SEA CONDITIONS FOR NEXT 48 HOURS
NN WHETHER ASSISTANCE HAS ALREADY BEEN SOUGHT AND THE TYPE

OO WHETHER ASSISTANCE HAS BEEN PROVIDED, AND IF SO, THE NATURE AND EXTENT.
PP ESTIMATE OF THE SITUATION IN 12 HOURS TIME
QQ OTHER COMMENTS

SANCTIONS CLAUSE:

Not Applicable

NEW COVID CLAUSE

1) IF, WHILE THE VESSEL IS AT HER LOAD OR DISCHARGE PORT, OR AT ANOTHER PORT OR PLACE NOMINATED BY CHARTERERS (TOGETHER REFERRED TO AS THE "NOMINATED PORT), THE VESSEL IS IN FACT DELAYED IN BERTHING, LOADING AND/OR DISCHARGING OPERATIONS DUE TO LOCAL LAW OR REGUALTION OR MEASURES (INCLUDING VESSEL QUARANTINE) TAKEN BY THAT NOMINATED PORT'S AUTHORITY AS A DIRECT CONSEQUENCE OF THE CORONA-VIRUS (COVID-19) OUTBREAK (HEREINAFTER A "CORONA VIRUS MEASURE"), ALL TIME LOST DUE TO THE CORONA VIRUS MEASURE SHALL COUNT AS LAYTIME OR IF THE VESSEL IS ON DEMURRAGE, AS TIME ON DEMURRAGE.

2) IF, AT THE NOMINATED PORT, FREE PRATIQUE IS DELAYED, REVOKED OR REFUSED DUE TO A CORONA VIRUS MEASURE AND, AS A CONSEQUENCE THEREOF, OWNERS ARE UNABLE TO TENDER OR RETENDER A VALID NOR WITHIN THE CHARTERPARTY LAYCAN, THEN ALL TIME SPENT AWAITING FREE PRATIQUE SHALL COUNT AS LAYTIME OR IF THE VESSEL IS ON DEMURRAGE, AS TIME ON DEMURRAGE.

3) SHOULD THE NOMINATED PORT BE CLOSED BY THE PORT AUTHORITY DUE TO A CORONA VIRUS MEASURE, TIME SPENT WAITING FOR THE NOMINATED PORT TO REOPEN SHALL COUNT AS LAYTIME OR IF THE VESSEL IS ON DEMURRAGE, TIME ON DEMURRAGE.

4) IF PURSUANT TO PARAGRAPHS (1), (2) AND (3) ABOVE, THE DELAY OR THE WAITING TIME AT THE NOMINATED PORT EXCEEDS FOURTEEN (14) DAYS, THEN THE OWNERS AND CHARTERERS AGREE THAT FROM THE FIFTEEN-TH (15TH) DAY ONWARDS, TIME SHALL COUNT AS HALF LAYTIME, OF IF THE VESSEL IS ON DEMURRAGE, HALF DEMURRAGE.

5) OWNERS AND CHARTERERS AGREE THAT THE OUTBREAK OF CORONA VIRUS (AND CORONA VIRUS MEASURES TAKEN BY THE NOMINATED PORT) SHALL NOT BE CONSIDERED AS A FORCE MAJEURE EVENT OR AS A FRUSTRATING EVENT OF THE CHARTERPARTY.

6) NOTWITHSTANDING ANYTHING TO THE CONTRARY IN PARAGRAPHS 1 TO 5 ABOVE, OR ANYWHERE ELSE IN THE CHARTERPARTY, THE SAFETY AND PROTECTION OF THE CREW AND THE VESSEL REMAINS OWNERS' ABSOLUTE RESPONSIBILTY AND OBLIGATION. OWNERS ARE EXPECTED TO HAVE ENFORCED PRUDENT AND APPROPRIATE CHECKS (INCLUDING BUT NOT LIMITED TO REPEATED TESTING) TO ENSURE THAT THE PERSONS COMING ON BOARD THE VESSEL AND/OR IN CONTACT WITH THE VESSEL ARE NOT INFECTED WITH ANY INFECTUOUS DISEASE (SUCH AS COVID-19) AND ARE FIT AND HEALTHY SO AS NOT TO DELAY OR IMPEDE THE VESSEL´S INTENDED VOYAGE, BERTHING, UNBERTHING AND SAILING OUT, LOADING OR DISCHARGE. PARAGRAPHS 1, 2, 3 AND 4 ABOVE SHALL NOT APPLY WHERE ANY DELAY, COSTS OR WAITING TIME INCURRED IS DUE TO (A) A BREACH BY OWNERS OF THEIR OBLIGATIONS UNDER THIS PARAGRAPH 6, (B) THE NEGLIGENCE OR FAULT OF THE OWNERS, OR (C) A CONFIRMED CASE OF INFECTIOUS DISEASE OF A CREW MEMBER.

Not Applicable

EUROPEAN UNION (EU) LOW SULPHUR FUEL DIRECTIVE:

EUROPEAN UNION (EU) LOW SULPHUR FUEL DIRECTIVE:
OWNER IS REMINDED THAT EU DIRECTIVE 2005/33/EC REGARDING LOW SULPHUR
FUEL OIL BECOMES
EFFECTIVE ON 1 JANUARY 2010. AS PER THE TERMS OF PURCHASE, ANY DELAYS,
LOST TIME, OR
EXPENSES RESULTING FROM OR ATTRIBUTABLE TO NONCOMPLIANCE WITH THE EU
DIRECTIVE SHALL BE
FOR OWNERS ACCOUNT.

LUKOIL ANCHORED COMPLAINCE CLAUSE:

LUKOIL ANCHORED COMPLAINCE CLAUSE:
OWNERS WARRANT THAT THE VESSEL SHALL WHEN STATIONARY BE ANCHORED IN

ACCORDANCE WITH
ALL LOCAL REGULATIONS AND REPORTED AS SUCH TO LOCAL AUTHORITIES AS
MAY BE NECESSARY OR REQUIRED BY SUCH
COMPETENT AUTHORITIES. VESSEL OWNER WILL KEEP PERMANENT WATCH OVER
VESSEL'S DECK AND ENGINE FOR SAFETY AND SECURITY
PURPOSES.

KOREAN AND/OR JAPANESE SUPERINTENDENT:

KOREAN AND/OR JAPANESE SUPERINTENDENT:
IF REQUIRED, KOREAN AND/OR JAPANESE SPEAKING SUPERINTENDENT TO BE FOR
OWNER'S ACCOUNT.
(MAX USD 2,500 FOR OWNER'S ACCOUNT)

LUKOIL VETTING CLAUSE

Not Applicable

SUNSET CLAUSE - (APPLICABLE FOR CHINA, SKOREA & JAPAN ONLY):

SUNSET CLAUSE - (APPLICABLE FOR CHINA, SKOREA & JAPAN ONLY):
IF VESSEL ARRIVES AT LOAD PORT AND/OR DISCHARGE PORT AT 15:00 HOURS LT OR
LATER THEN TIME TO
COMMENCE AT 07:00HOURS LT THE NEXT MORNING, UNLESS VESSEL ACTUALLY
BERTH EARLIER. OWNER
HAS THE OPTION TO ADJUST SPEED IN ORDER TO ARRIVE DISCHARGE PORT WITHIN
07:00 HOURS LT AND
15:00 HOURS LT.

KYC CLAUSE:

KYC CLAUSE:
UPON REQUEST OF EITHER PARTY, THE OTHER PARTY SHALL PROMPTLY PROVIDE
SUFFICIENT
DOCUMENTATION TO MEET THE REQUESTING PARTIES INTERNAL DUE DILIGENCE
REQUIREMENTS.
SUCH DOCUMENTATION SHALL INCLUDE, BUT NOT BE LIMITED TO, RELIABLE
CORPORATE INFORMATION UP
TO AND INCLUDING THE ULTIMATE BENEFICIAL OWNERS .

- RUSSIANS INVESTMENT DUES

- RUSSIANS INVESTMENT DUES TO BE FOR CHRTRS' ACCOUNT AS PER WSCALE EVEN IF FREIGHT IS
LUMPSUM

RUSSIAN CUSTOMS CLEARANCE

- TIME SPENT WAITING FOR RUSSIAN CUSTOMS CLEARANCE BOTH IN-BOUND AND OUTBOUND TO BE FOR
CHARTERERS ACCOUNT, UNLESS
CUSTOMS CLEARANCE DELAYED SOLELY DUE TO BUNKER OPERATION

KOREAN ANCHORAGE DUES

KOREAN ANCHORAGE DUES:
KOREAN ANCHORAGE DUES IN EXCESS OF 48HOURS TO BE FOR CHARTERER'S
ACCOUNT.

BIMCO WAR RISKS CLAUSE FOR VOYAGE CHARTERING 2013 (VOYWAR 2013)

BIMCO WAR RISKS CLAUSE FOR VOYAGE CHARTERING 2013 (VOYWAR 2013)
(A) FOR THE PURPOSE OF THIS CLAUSE, THE WORDS:
(I) "OWNERS" SHALL INCLUDE THE SHIPOWNERS, BAREBOAT CHARTERERS, DISPONENT OWNERS,
MANAGERS OR OTHER OPERATORS WHO ARE CHARGED WITH THE MANAGEMENT OF THE VESSEL, AND
THE MASTER; AND
(II) "WAR RISKS" SHALL INCLUDE ANY ACTUAL, THREATENED OR REPORTED:
WAR, ACT OF WAR, CIVIL WAR OR HOSTILITIES; REVOLUTION; REBELLION; CIVIL COMMOTION; WARLIKE
OPERATIONS; LAYING OF MINES; ACTS OF PIRACY AND/OR VIOLENT ROBBERY AND/OR CAPTURE/SEIZURE

(HEREINAFTER "PIRACY"); ACTS OF TERRORISTS; ACTS OF HOSTILITY OR MALICIOUS DAMAGE; BLOCKADES (WHETHER IMPOSED AGAINST ALL VESSELS OR IMPOSED SELECTIVELY AGAINST VESSELS OF CERTAIN FLAGS OR OWNERSHIP, OR AGAINST CERTAIN CARGOES OR CREWS OR OTHERWISE HOWSOEVER), BY ANY PERSON, BODY, TERRORIST OR POLITICAL GROUP, OR THE GOVERNMENT OF ANY STATE OR TERRITORY WHETHER RECOGNISED OR NOT, WHICH, IN THE REASONABLE JUDGEMENT OF THE MASTER AND/OR THE OWNERS, MAY BE DANGEROUS OR MAY BECOME DANGEROUS TO THE VESSEL, CARGO, CREW OR OTHER PERSONS ON BOARD THE VESSEL.

(B) IF AT ANY TIME BEFORE THE VESSEL COMMENCES LOADING, IT APPEARS THAT, IN THE REASONABLE JUDGEMENT OF THE MASTER AND/OR THE OWNERS, PERFORMANCE OF THE CONTRACT OF CARRIAGE, OR ANY PART OF IT, MAY EXPOSE THE VESSEL, CARGO, CREW OR OTHER PERSONS ON BOARD THE VESSEL TO WAR RISKS, THE OWNERS MAY GIVE NOTICE TO THE CHARTERERS CANCELLING THIS CONTRACT OF CARRIAGE, OR MAY REFUSE TO PERFORM SUCH PART OF IT AS MAY EXPOSE THE VESSEL, CARGO, CREW OR OTHER PERSONS ON BOARD THE VESSEL TO WAR RISKS; PROVIDED ALWAYS THAT IF THIS CONTRACT OF CARRIAGE PROVIDES THAT LOADING OR DISCHARGING IS TO TAKE PLACE WITHIN A RANGE OF PORTS, AND AT THE PORT OR PORTS NOMINATED BY THE CHARTERERS THE VESSEL, CARGO, CREW, OR OTHER PERSONS ON BOARD THE VESSEL MAY BE EXPOSED TO WAR RISKS, THE OWNERS SHALL FIRST REQUIRE THE CHARTERERS TO NOMINATE ANY OTHER SAFE PORT WHICH LIES WITHIN THE RANGE FOR LOADING OR DISCHARGING, AND MAY ONLY CANCEL THIS CONTRACT OF CARRIAGE IF THE CHARTERERS SHALL NOT HAVE NOMINATED SUCH SAFE PORT OR PORTS WITHIN 48 HOURS OF RECEIPT OF NOTICE OF SUCH REQUIREMENT.

(C) THE OWNERS SHALL NOT BE REQUIRED TO CONTINUE TO LOAD CARGO FOR ANY VOYAGE, OR TO SIGN BILLS OF LADING, WAYBILLS OR OTHER DOCUMENTS EVIDENCING CONTRACTS OF CARRIAGE FOR ANY PORT OR PLACE, OR TO PROCEED OR CONTINUE ON ANY VOYAGE, OR ON ANY PART THEREOF, OR TO PROCEED THROUGH ANY CANAL OR WATERWAY, OR TO PROCEED TO OR REMAIN AT ANY PORT OR PLACE WHATSOEVER, WHERE IT APPEARS, EITHER AFTER THE LOADING OF THE CARGO COMMENCES, OR AT ANY STAGE OF THE VOYAGE THEREAFTER BEFORE THE DISCHARGE OF THE CARGO IS COMPLETED, THAT, IN THE REASONABLE JUDGEMENT OF THE MASTER AND/OR THE OWNERS, THE VESSEL, CARGO, CREW OR OTHER PERSONS ON BOARD THE VESSEL MAY BE EXPOSED TO WAR RISKS. IF IT SHOULD SO APPEAR, THE OWNERS MAY BY NOTICE REQUEST THE CHARTERERS TO NOMINATE A SAFE PORT FOR THE DISCHARGE OF THE CARGO OR ANY PART THEREOF, AND IF WITHIN 48 HOURS OF THE RECEIPT OF SUCH NOTICE, THE CHARTERERS SHALL NOT HAVE NOMINATED SUCH A PORT, THE OWNERS MAY DISCHARGE THE CARGO AT ANY SAFE PORT OF THEIR CHOICE (INCLUDING THE PORT OF LOADING) IN COMPLETE FULFILMENT OF THE CONTRACT OF CARRIAGE. THE OWNERS SHALL BE ENTITLED TO RECOVER FROM THE CHARTERERS THE EXTRA EXPENSES OF SUCH DISCHARGE AND, IF THE DISCHARGE TAKES PLACE AT ANY PORT OTHER THAN THE LOADING PORT, TO RECEIVE THE FULL FREIGHT AS THOUGH THE CARGO HAD BEEN CARRIED TO THE DISCHARGING PORT AND IF THE EXTRA DISTANCE EXCEEDS 100 MILES, TO ADDITIONAL FREIGHT WHICH SHALL BE THE SAME PERCENTAGE OF THE FREIGHT CONTRACTED FOR AS THE PERCENTAGE WHICH THE EXTRA DISTANCE REPRESENTS TO THE DISTANCE OF THE NORMAL AND CUSTOMARY ROUTE, THE OWNERS HAVING A LIEN ON THE CARGO FOR SUCH EXPENSES AND FREIGHT.

(D) IF AT ANY STAGE OF THE VOYAGE AFTER THE LOADING OF THE CARGO COMMENCES, IT APPEARS THAT, IN THE REASONABLE JUDGEMENT OF THE MASTER AND/OR THE OWNERS, THE VESSEL, CARGO, CREW OR OTHER PERSONS ON BOARD THE VESSEL MAY BE EXPOSED TO WAR RISKS ON ANY PART OF THE ROUTE (INCLUDING ANY CANAL OR WATERWAY) WHICH IS NORMALLY AND CUSTOMARILY USED IN A VOYAGE OF THE NATURE CONTRACTED FOR, AND THERE IS ANOTHER LONGER ROUTE TO THE DISCHARGING PORT, THE OWNERS SHALL GIVE NOTICE TO THE CHARTERERS THAT THIS ROUTE WILL BE TAKEN. IN THIS EVENT THE OWNERS SHALL BE ENTITLED, IF THE TOTAL EXTRA DISTANCE EXCEEDS 100 MILES, TO ADDITIONAL FREIGHT WHICH SHALL BE THE SAME PERCENTAGE OF THE FREIGHT CONTRACTED FOR AS THE PERCENTAGE WHICH THE EXTRA DISTANCE REPRESENTS TO THE DISTANCE OF THE NORMAL AND CUSTOMARY ROUTE.

(E) (I) THE OWNERS MAY EFFECT WAR RISKS INSURANCE IN RESPECT OF THE VESSEL AND ANY ADDITIONAL INSURANCES THAT OWNERS REASONABLY REQUIRE IN CONNECTION WITH WAR RISKS AND THE PREMIUMS THEREFOR SHALL BE FOR THEIR ACCOUNT.

(II) IF, PURSUANT TO THE CHARTERERS' ORDERS, OR IN ORDER TO FULFIL THE OWNERS' OBLIGATION UNDER THIS CHARTER PARTY, THE VESSEL PROCEEDS TO OR THROUGH ANY AREA OR AREAS EXPOSED TO WAR RISKS, THE CHARTERERS SHALL REIMBURSE TO THE OWNERS ANY ADDITIONAL PREMIUMS REQUIRED BY THE OWNERS' INSURERS. IF THE VESSEL DISCHARGES ALL OF HER CARGO WITHIN AN AREA SUBJECT TO ADDITIONAL PREMIUMS AS HEREIN SET FORTH, THE CHARTERERS SHALL FURTHER REIMBURSE THE OWNERS FOR THE ACTUAL ADDITIONAL PREMIUMS PAID FROM COMPLETION OF DISCHARGE UNTIL THE VESSEL LEAVES SUCH AREA OR AREAS. THE OWNERS SHALL LEAVE THE AREA OR AREAS AS SOON AS POSSIBLE AFTER COMPLETION OF DISCHARGE.

(III) ALL PAYMENTS ARISING UNDER THIS SUB-CLAUSE (E) SHALL BE SETTLED WITHIN FIFTEEN (15) DAYS OF RECEIPT OF OWNERS' SUPPORTED INVOICES.

(F) THE VESSEL SHALL HAVE LIBERTY:
(I) TO COMPLY WITH ALL ORDERS, DIRECTIONS, RECOMMENDATIONS OR ADVICE AS TO DEPARTURE, ARRIVAL, ROUTES, SAILING IN CONVOY, PORTS OF CALL, STOPPAGES, DESTINATIONS, DISCHARGE OF CARGO, DELIVERY, OR IN ANY OTHER WAY WHATSOEVER, WHICH ARE GIVEN BY THE GOVERNMENT OF THE NATION UNDER WHOSE FLAG THE VESSEL SAILS, OR OTHER GOVERNMENT TO WHOSE LAWS THE OWNERS ARE SUBJECT, OR ANY OTHER GOVERNMENT OF ANY STATE OR TERRITORY WHETHER RECOGNISED OR NOT, BODY OR GROUP WHATSOEVER ACTING WITH THE POWER TO COMPEL COMPLIANCE WITH THEIR ORDERS OR DIRECTIONS;
(II) TO COMPLY WITH THE REQUIREMENTS OF THE OWNERS' INSURERS UNDER THE TERMS OF THE VESSEL'S INSURANCE(S);
(III) TO COMPLY WITH THE TERMS OF ANY RESOLUTION OF THE SECURITY COUNCIL OF THE UNITED NATIONS, THE EFFECTIVE ORDERS OF ANY OTHER SUPRANATIONAL BODY WHICH HAS THE RIGHT TO ISSUE AND GIVE THE SAME, AND WITH NATIONAL LAWS AIMED AT ENFORCING THE SAME TO WHICH THE OWNERS ARE SUBJECT, AND TO OBEY THE ORDERS AND DIRECTIONS OF THOSE WHO ARE CHARGED WITH THEIR ENFORCEMENT;
(IV) TO DISCHARGE AT ANY ALTERNATIVE PORT ANY CARGO OR PART THEREOF WHICH MAY EXPOSE THE VESSEL TO BEING HELD LIABLE AS A CONTRABAND CARRIER;
(V) TO CALL AT ANY ALTERNATIVE PORT TO CHANGE THE CREW OR ANY PART THEREOF OR OTHER PERSONS ON BOARD THE VESSEL WHEN THERE IS REASON TO BELIEVE THAT THEY MAY BE SUBJECT TO INTERNMENT, IMPRISONMENT, DETENTION OR SIMILAR MEASURES;
(VI) WHERE CARGO HAS NOT BEEN LOADED OR HAS BEEN DISCHARGED BY THE OWNERS UNDER ANY PROVISIONS OF THIS CLAUSE, TO LOAD OTHER CARGO FOR THE OWNERS' OWN BENEFIT AND CARRY IT TO ANY OTHER PORT OR PORTS WHATSOEVER, WHETHER BACKWARDS OR FORWARDS OR IN A CONTRARY DIRECTION TO THE ORDINARY OR CUSTOMARY ROUTE.
(G) THE CHARTERERS SHALL INDEMNIFY THE OWNERS FOR CLAIMS ARISING OUT OF THE VESSEL PROCEEDING IN ACCORDANCE WITH ANY OF THE PROVISIONS OF SUB-CLAUSES (B) TO (F) WHICH ARE MADE UNDER ANY BILLS OF LADING, WAYBILLS OR OTHER DOCUMENTS EVIDENCING CONTRACTS OF CARRIAGE.
(H) WHEN ACTING IN ACCORDANCE WITH ANY OF THE PROVISIONS OF SUB-CLAUSES (B) TO (F) OF THIS CLAUSE ANYTHING IS DONE OR NOT DONE, SUCH SHALL NOT BE DEEMED TO BE A DEVIATION, BUT SHALL BE CONSIDERED AS DUE FULFILMENT OF THE CONTRACT OF CARRIAGE

BIMCO SANCTIONS CLAUSE FOR VOYAGE CHARTER PARTIES 2020

BIMCO SANCTIONS CLAUSE FOR VOYAGE CHARTER PARTIES 2020ᵃ
(A) FOR THE PURPOSES OF THIS CLAUSE:
"SANCTIONED ACTIVITY" MEANS ANY ACTIVITY, SERVICE, CARRIAGE, TRADE OR VOYAGE SUBJECT TO SANCTIONS IMPOSED BY A SANCTIONING AUTHORITY.
"SANCTIONING AUTHORITY" MEANS THE UNITED NATIONS, EUROPEAN UNION, UNITED KINGDOM, UNITED STATES OF AMERICA OR ANY OTHER APPLICABLE COMPETENT AUTHORITY OR GOVERNMENT.
"SANCTIONED PARTY" MEANS ANY PERSONS, ENTITIES, BODIES, OR VESSELS DESIGNATED BY A SANCTIONING AUTHORITY.
(B) OWNERS WARRANT THAT AT THE DATE OF THIS CHARTER PARTY AND THROUGHOUT ITS DURATION THEY, THE REGISTERED OWNERS, BAREBOAT CHARTERERS, INTERMEDIATE DISPONENT OWNERS, MANAGERS, THE VESSEL AND ANY SUBSTITUTE ARE NOT A SANCTIONED PARTY.
(C) CHARTERERS WARRANT THAT AT THE DATE OF THIS CHARTER PARTY AND THROUGHOUT ITS DURATION THEY AND ANY SUBCHARTERERS, SHIPPERS, RECEIVERS AND CARGO INTERESTS ARE NOT A SANCTIONED PARTY.
(D) IF AT ANY TIME EITHER PARTY IS IN BREACH OF SUBCLAUSE (B) OR (C) ABOVE THEN THE PARTY NOT IN BREACH MAY TERMINATE AND/OR CLAIM DAMAGES RESULTING FROM THE BREACH.
(E) IF PERFORMANCE OF THIS CHARTER PARTY INVOLVES A SANCTIONED PARTY OR A SANCTIONED ACTIVITY, WITHOUT PREJUDICE TO ANY OTHER RIGHTS THAT MAY BE AVAILABLE IN SUBCLAUSE (D) ABOVE:
(I) IF LOADING HAS NOT COMMENCED, OWNERS MAY CANCEL THIS CHARTER PARTY; OR
(II) IF THE VOYAGE OR THE LOADING HAS COMMENCED, OWNERS MAY REFUSE TO PROCEED AND DISCHARGE ANY CARGO ALREADY LOADED AT ANY SAFE PORT OR PLACE OF THEIR CHOICE (INCLUDING THE PORT OR PLACE OF LOADING) IN COMPLETE FULFILMENT OF THIS CHARTER PARTY,
PROVIDED ALWAYS THAT IF THIS CHARTER PARTY PROVIDES THAT LOADING AND/OR DISCHARGING IS TO TAKE PLACE WITHIN A RANGE OF PORTS OR PLACES THAT DO NOT INVOLVE A SANCTIONED PARTY OR A SANCTIONED ACTIVITY, OWNERS MUST FIRST REQUEST CHARTERERS TO NOMINATE AN ALTERNATIVE PORT OR PLACE AND MAY CANCEL THE CHARTER PARTY OR REFUSE TO PROCEED ON THE VOYAGE ONLY IF SUCH NOMINATION IS NOT MADE WITHIN FORTY-EIGHT (48) HOURS AFTER THE REQUEST.
(F) IF IN COMPLIANCE WITH SUBCLAUSE (E) ABOVE ANYTHING IS DONE OR NOT DONE, SUCH SHALL NOT BE

DEEMED A DEVIATION, BUT SHALL BE CONSIDERED DUE FULFILMENT OF THIS CHARTER PARTY.

(G) CHARTERERS SHALL INDEMNIFY OWNERS AGAINST ANY AND ALL CLAIMS BROUGHT BY THE OWNERS OF THE CARGO AND/OR THE HOLDERS OF BILLS OF LADING, WAYBILLS OR OTHER DOCUMENTS EVIDENCING CONTRACTS OF CARRIAGE AND/OR SUBCHARTERERS AGAINST OWNERS BY REASON OF OWNERS' COMPLIANCE WITH SUCH ALTERNATIVE VOYAGE ORDERS OR DELIVERY OF THE CARGO IN ACCORDANCE WITH SUBCLAUSE (E) ABOVE.

(H) CHARTERERS SHALL PROCURE THAT THIS CLAUSE SHALL BE INCORPORATED INTO ALL SUB-CHARTERS AND BILLS OF LADING, WAYBILLS OR OTHER DOCUMENTS EVIDENCING CONTRACTS OF CARRIAGE ISSUED PURSUANT TO THIS CHARTER PARTY.

SUCH DOCUMENTATION SHALL INCLUDE, BUT NOT BE LIMITED TO, RELIABLE
CORPORATE INFORMATION UP
TO AND INCLUDING THE ULTIMATE BENEFICIAL OWNERS .

- RUSSIANS INVESTMENT DUES

- RUSSIANS INVESTMENT DUES TO BE FOR CHRTRS' ACCOUNT AS PER WSCALE EVEN IF FREIGHT IS LUMPSUM

RUSSIAN CUSTOMS CLEARANCE

- TIME SPENT WAITING FOR RUSSIAN CUSTOMS CLEARANCE BOTH IN-BOUND AND OUTBOUND TO BE FOR
CHARTERERS ACCOUNT, UNLESS
CUSTOMS CLEARANCE DELAYED SOLELY DUE TO BUNKER OPERATION

KOREAN ANCHORAGE DUES

KOREAN ANCHORAGE DUES:
KOREAN ANCHORAGE DUES IN EXCESS OF 48HOURS TO BE FOR CHARTERER'S
ACCOUNT.

BIMCO WAR RISKS CLAUSE FOR VOYAGE CHARTERING 2013 (VOYWAR 2013)

BIMCO WAR RISKS CLAUSE FOR VOYAGE CHARTERING 2013 (VOYWAR 2013)
(A) FOR THE PURPOSE OF THIS CLAUSE, THE WORDS:
(I) "OWNERS" SHALL INCLUDE THE SHIPOWNERS, BAREBOAT CHARTERERS, DISPONENT OWNERS, MANAGERS OR OTHER OPERATORS
WHO ARE CHARGED WITH THE MANAGEMENT OF THE VESSEL, AND THE MASTER; AND
(II) "WAR RISKS" SHALL INCLUDE ANY ACTUAL, THREATENED OR REPORTED:
WAR, ACT OF WAR, CIVIL WAR OR HOSTILITIES; REVOLUTION; REBELLION; CIVIL COMMOTION; WARLIKE OPERATIONS; LAYING OF
MINES; ACTS OF PIRACY AND/OR VIOLENT ROBBERY AND/OR CAPTURE/SEIZURE (HEREINAFTER "PIRACY"); ACTS OF TERRORISTS;
ACTS OF HOSTILITY OR MALICIOUS DAMAGE; BLOCKADES (WHETHER IMPOSED AGAINST ALL VESSELS OR IMPOSED SELECTIVELY
AGAINST VESSELS OF CERTAIN FLAGS OR OWNERSHIP, OR AGAINST CERTAIN CARGOES OR CREWS OR OTHERWISE HOWSOEVER), BY
ANY PERSON, BODY, TERRORIST OR POLITICAL GROUP, OR THE GOVERNMENT OF ANY STATE OR TERRITORY WHETHER RECOGNISED
OR NOT, WHICH, IN THE REASONABLE JUDGEMENT OF THE MASTER AND/OR THE OWNERS, MAY BE DANGEROUS OR MAY BECOME
DANGEROUS TO THE VESSEL, CARGO, CREW OR OTHER PERSONS ON BOARD THE VESSEL.
(B) IF AT ANY TIME BEFORE THE VESSEL COMMENCES LOADING, IT APPEARS THAT, IN THE REASONABLE JUDGEMENT OF THE MASTER
AND/OR THE OWNERS, PERFORMANCE OF THE CONTRACT OF CARRIAGE, OR ANY PART OF IT, MAY EXPOSE THE VESSEL, CARGO,
CREW OR OTHER PERSONS ON BOARD THE VESSEL TO WAR RISKS, THE OWNERS MAY GIVE NOTICE TO THE CHARTERERS
CANCELLING THIS CONTRACT OF CARRIAGE, OR MAY REFUSE TO PERFORM SUCH PART OF IT AS MAY EXPOSE THE VESSEL, CARGO,
CREW OR OTHER PERSONS ON BOARD THE VESSEL TO WAR RISKS; PROVIDED ALWAYS THAT IF THIS CONTRACT OF CARRIAGE
PROVIDES THAT LOADING OR DISCHARGING IS TO TAKE PLACE WITHIN A RANGE OF PORTS, AND AT THE PORT OR PORTS NOMINATED
BY THE CHARTERERS THE VESSEL, CARGO, CREW, OR OTHER PERSONS ON BOARD THE VESSEL MAY BE EXPOSED TO WAR RISKS, THE
OWNERS SHALL FIRST REQUIRE THE CHARTERERS TO NOMINATE ANY OTHER SAFE PORT WHICH LIES WITHIN THE RANGE FOR
LOADING OR DISCHARGING, AND MAY ONLY CANCEL THIS CONTRACT OF CARRIAGE IF THE CHARTERERS SHALL NOT HAVE
NOMINATED SUCH SAFE PORT OR PORTS WITHIN 48 HOURS OF RECEIPT OF NOTICE OF SUCH REQUIREMENT.
(C) THE OWNERS SHALL NOT BE REQUIRED TO CONTINUE TO LOAD CARGO FOR ANY VOYAGE, OR TO SIGN BILLS OF LADING,
WAYBILLS OR OTHER DOCUMENTS EVIDENCING CONTRACTS OF CARRIAGE FOR ANY PORT OR PLACE, OR TO PROCEED OR CONTINUE
ON ANY VOYAGE, OR ON ANY PART THEREOF, OR TO PROCEED THROUGH ANY CANAL OR WATERWAY, OR TO PROCEED TO OR REMAIN
AT ANY PORT OR PLACE WHATSOEVER, WHERE IT APPEARS, EITHER AFTER THE LOADING OF THE CARGO COMMENCES, OR AT ANY
STAGE OF THE VOYAGE THEREAFTER BEFORE THE DISCHARGE OF THE CARGO IS COMPLETED, THAT, IN THE REASONABLE
JUDGEMENT OF THE MASTER AND/OR THE OWNERS, THE VESSEL, CARGO, CREW OR OTHER PERSONS ON BOARD THE VESSEL MAY BE
EXPOSED TO WAR RISKS. IF IT SHOULD SO APPEAR, THE OWNERS MAY BY NOTICE REQUEST THE CHARTERERS TO NOMINATE A SAFE
PORT FOR THE DISCHARGE OF THE CARGO OR ANY PART THEREOF, AND IF WITHIN 48 HOURS OF THE RECEIPT OF SUCH NOTICE, THE
CHARTERERS SHALL NOT HAVE NOMINATED SUCH A PORT, THE OWNERS MAY DISCHARGE THE CARGO AT ANY SAFE PORT OF THEIR
CHOICE (INCLUDING THE PORT OF LOADING) IN COMPLETE FULFILMENT OF THE CONTRACT OF CARRIAGE. THE OWNERS SHALL BE
ENTITLED TO RECOVER FROM THE CHARTERERS THE EXTRA EXPENSES OF SUCH DISCHARGE AND, IF THE DISCHARGE TAKES PLACE
AT ANY PORT OTHER THAN THE LOADING PORT, TO RECEIVE THE FULL FREIGHT AS THOUGH THE CARGO HAD BEEN CARRIED TO THE
DISCHARGING PORT AND IF THE EXTRA DISTANCE EXCEEDS 100 MILES, TO ADDITIONAL FREIGHT WHICH SHALL BE THE SAME
PERCENTAGE OF THE FREIGHT CONTRACTED FOR AS THE PERCENTAGE WHICH THE EXTRA DISTANCE REPRESENTS TO THE DISTANCE
OF THE NORMAL AND CUSTOMARY ROUTE, THE OWNERS HAVING A LIEN ON THE CARGO FOR SUCH EXPENSES AND FREIGHT.
(D) IF AT ANY STAGE OF THE VOYAGE AFTER THE LOADING OF THE CARGO COMMENCES, IT APPEARS THAT, IN THE REASONABLE
JUDGEMENT OF THE MASTER AND/OR THE OWNERS, THE VESSEL, CARGO, CREW OR OTHER PERSONS ON BOARD THE VESSEL MAY BE
EXPOSED TO WAR RISKS ON ANY PART OF THE ROUTE (INCLUDING ANY CANAL OR WATERWAY) WHICH IS NORMALLY AND
CUSTOMARILY USED IN A VOYAGE OF THE NATURE CONTRACTED FOR, AND THERE IS ANOTHER LONGER ROUTE TO THE DISCHARGING
PORT, THE OWNERS SHALL GIVE NOTICE TO THE CHARTERERS THAT THIS ROUTE WILL BE TAKEN. IN THIS EVENT THE OWNERS SHALL
BE ENTITLED, IF THE TOTAL EXTRA DISTANCE EXCEEDS 100 MILES, TO ADDITIONAL FREIGHT WHICH SHALL BE THE SAME PERCENTAGE
OF THE FREIGHT CONTRACTED FOR AS THE PERCENTAGE WHICH THE EXTRA DISTANCE REPRESENTS TO THE DISTANCE OF THE
NORMAL AND CUSTOMARY ROUTE.
(E) (I) THE OWNERS MAY EFFECT WAR RISKS INSURANCE IN RESPECT OF THE VESSEL AND ANY ADDITIONAL INSURANCES THAT
OWNERS REASONABLY REQUIRE IN CONNECTION WITH WAR RISKS AND THE PREMIUMS THEREFOR SHALL BE FOR THEIR ACCOUNT.
(II) IF, PURSUANT TO THE CHARTERERS' ORDERS, OR IN ORDER TO FULFIL THE OWNERS' OBLIGATION UNDER THIS CHARTER PARTY,
THE VESSEL PROCEEDS TO OR THROUGH ANY AREA OR AREAS EXPOSED TO WAR RISKS, THE CHARTERERS SHALL REIMBURSE TO
THE OWNERS ANY ADDITIONAL PREMIUMS REQUIRED BY THE OWNERS' INSURERS. IF THE VESSEL DISCHARGES ALL OF HER CARGO
WITHIN AN AREA SUBJECT TO ADDITIONAL PREMIUMS AS HEREIN SET FORTH, THE CHARTERERS SHALL FURTHER REIMBURSE THE
OWNERS FOR THE ACTUAL ADDITIONAL PREMIUMS PAID FROM COMPLETION OF DISCHARGE UNTIL THE VESSEL LEAVES SUCH AREA
OR AREAS. THE OWNERS SHALL LEAVE THE AREA OR AREAS AS SOON AS POSSIBLE AFTER COMPLETION OF DISCHARGE.
(III) ALL PAYMENTS ARISING UNDER THIS SUB-CLAUSE (E) SHALL BE SETTLED WITHIN FIFTEEN (15) DAYS OF RECEIPT OF OWNERS'
SUPPORTED INVOICES.
(F) THE VESSEL SHALL HAVE LIBERTY:
(I) TO COMPLY WITH ALL ORDERS, DIRECTIONS, RECOMMENDATIONS OR ADVICE AS TO DEPARTURE, ARRIVAL, ROUTES, SAILING IN
CONVOY, PORTS OF CALL, STOPPAGES, DESTINATIONS, DISCHARGE OF CARGO, DELIVERY, OR IN ANY OTHER WAY WHATSOEVER,
WHICH ARE GIVEN BY THE GOVERNMENT OF THE NATION UNDER WHOSE FLAG THE VESSEL SAILS, OR OTHER GOVERNMENT TO

WHOSE LAWS THE OWNERS ARE SUBJECT, OR ANY OTHER GOVERNMENT OF ANY STATE OR TERRITORY WHETHER RECOGNISED OR NOT, BODY OR GROUP WHATSOEVER ACTING WITH THE POWER TO COMPEL COMPLIANCE WITH THEIR ORDERS OR DIRECTIONS;
(II) TO COMPLY WITH THE REQUIREMENTS OF THE OWNERS' INSURERS UNDER THE TERMS OF THE VESSEL'S INSURANCE(S);
(III) TO COMPLY WITH THE TERMS OF ANY RESOLUTION OF THE SECURITY COUNCIL OF THE UNITED NATIONS, THE EFFECTIVE ORDERS OF ANY OTHER SUPRANATIONAL BODY WHICH HAS THE RIGHT TO ISSUE AND GIVE THE SAME, AND WITH NATIONAL LAWS AIMED AT ENFORCING THE SAME TO WHICH THE OWNERS ARE SUBJECT, AND TO OBEY THE ORDERS AND DIRECTIONS OF THOSE WHO ARE CHARGED WITH THEIR ENFORCEMENT;
(IV) TO DISCHARGE AT ANY ALTERNATIVE PORT ANY CARGO OR PART THEREOF WHICH MAY EXPOSE THE VESSEL TO BEING HELD LIABLE AS A CONTRABAND CARRIER;
(V) TO CALL AT ANY ALTERNATIVE PORT TO CHANGE THE CREW OR ANY PART THEREOF OR OTHER PERSONS ON BOARD THE VESSEL WHEN THERE IS REASON TO BELIEVE THAT THEY MAY BE SUBJECT TO INTERNMENT, IMPRISONMENT, DETENTION OR SIMILAR MEASURES;
(VI) WHERE CARGO HAS NOT BEEN LOADED OR HAS BEEN DISCHARGED BY THE OWNERS UNDER ANY PROVISIONS OF THIS CLAUSE, TO LOAD OTHER CARGO FOR THE OWNERS' OWN BENEFIT AND CARRY IT TO ANY OTHER PORT OR PORTS WHATSOEVER, WHETHER BACKWARDS OR FORWARDS OR IN A CONTRARY DIRECTION TO THE ORDINARY OR CUSTOMARY ROUTE.
(G) THE CHARTERERS SHALL INDEMNIFY THE OWNERS FOR CLAIMS ARISING OUT OF THE VESSEL PROCEEDING IN ACCORDANCE WITH ANY OF THE PROVISIONS OF SUB-CLAUSES (B) TO (F) WHICH ARE MADE UNDER ANY BILLS OF LADING, WAYBILLS OR OTHER DOCUMENTS EVIDENCING CONTRACTS OF CARRIAGE.
(H) WHEN ACTING IN ACCORDANCE WITH ANY OF THE PROVISIONS OF SUB-CLAUSES (B) TO (F) OF THIS CLAUSE ANYTHING IS DONE OR NOT DONE, SUCH SHALL NOT BE DEEMED TO BE A DEVIATION, BUT SHALL BE CONSIDERED AS DUE FULFILMENT OF THE CONTRACT OF CARRIAGE

BIMCO SANCTIONS CLAUSE FOR VOYAGE CHARTER PARTIES 2020

BIMCO SANCTIONS CLAUSE FOR VOYAGE CHARTER PARTIES 2020*
(A) FOR THE PURPOSES OF THIS CLAUSE:
"SANCTIONED ACTIVITY" MEANS ANY ACTIVITY, SERVICE, CARRIAGE, TRADE OR VOYAGE SUBJECT TO SANCTIONS IMPOSED BY A SANCTIONING AUTHORITY.
"SANCTIONING AUTHORITY" MEANS THE UNITED NATIONS, EUROPEAN UNION, UNITED KINGDOM, UNITED STATES OF AMERICA OR ANY OTHER APPLICABLE COMPETENT AUTHORITY OR GOVERNMENT.
"SANCTIONED PARTY" MEANS ANY PERSONS, ENTITIES, BODIES, OR VESSELS DESIGNATED BY A SANCTIONING AUTHORITY.
(B) OWNERS WARRANT THAT AT THE DATE OF THIS CHARTER PARTY AND THROUGHOUT ITS DURATION THEY, THE REGISTERED OWNERS, BAREBOAT CHARTERERS, INTERMEDIATE DISPONENT OWNERS, MANAGERS, THE VESSEL AND ANY SUBSTITUTE ARE NOT A SANCTIONED PARTY.
(C) CHARTERERS WARRANT THAT AT THE DATE OF THIS CHARTER PARTY AND THROUGHOUT ITS DURATION THEY AND ANY SUBCHARTERERS, SHIPPERS, RECEIVERS AND CARGO INTERESTS ARE NOT A SANCTIONED PARTY.
(D) IF AT ANY TIME EITHER PARTY IS IN BREACH OF SUBCLAUSE (B) OR (C) ABOVE THEN THE PARTY NOT IN BREACH MAY TERMINATE AND/OR CLAIM DAMAGES RESULTING FROM THE BREACH.
(E) IF PERFORMANCE OF THIS CHARTER PARTY INVOLVES A SANCTIONED PARTY OR A SANCTIONED ACTIVITY, WITHOUT PREJUDICE TO ANY OTHER RIGHTS THAT MAY BE AVAILABLE IN SUBCLAUSE (D) ABOVE:
(I) IF LOADING HAS NOT COMMENCED, OWNERS MAY CANCEL THIS CHARTER PARTY; OR
(II) IF THE VOYAGE OR THE LOADING HAS COMMENCED, OWNERS MAY REFUSE TO PROCEED AND DISCHARGE ANY CARGO ALREADY LOADED AT ANY SAFE PORT OR PLACE OF THEIR CHOICE (INCLUDING THE PORT OR PLACE OF LOADING) IN COMPLETE FULFILMENT OF THIS CHARTER PARTY,
PROVIDED ALWAYS THAT IF THIS CHARTER PARTY PROVIDES THAT LOADING AND/OR DISCHARGING IS TO TAKE PLACE WITHIN A RANGE OF PORTS OR PLACES THAT DO NOT INVOLVE A SANCTIONED PARTY OR A SANCTIONED ACTIVITY, OWNERS MUST FIRST REQUEST CHARTERERS TO NOMINATE AN ALTERNATIVE PORT OR PLACE AND MAY CANCEL THE CHARTER PARTY OR REFUSE TO PROCEED ON THE VOYAGE ONLY IF SUCH NOMINATION IS NOT MADE WITHIN FORTY-EIGHT (48) HOURS AFTER THE REQUEST.
(F) IF IN COMPLIANCE WITH SUBCLAUSE (E) ABOVE ANYTHING IS DONE OR NOT DONE, SUCH SHALL NOT BE DEEMED A DEVIATION, BUT SHALL BE CONSIDERED DUE FULFILMENT OF THIS CHARTER PARTY.
(G) CHARTERERS SHALL INDEMNIFY OWNERS AGAINST ANY AND ALL CLAIMS BROUGHT BY THE OWNERS OF THE CARGO AND/OR THE HOLDERS OF BILLS OF LADING, WAYBILLS OR OTHER DOCUMENTS EVIDENCING CONTRACTS OF CARRIAGE AND/OR SUBCHARTERERS AGAINST OWNERS BY REASON OF OWNERS' COMPLIANCE WITH SUCH ALTERNATIVE VOYAGE ORDERS OR DELIVERY OF THE CARGO IN ACCORDANCE WITH SUBCLAUSE (E) ABOVE.
(H) CHARTERERS SHALL PROCURE THAT THIS CLAUSE SHALL BE INCORPORATED INTO ALL SUB-CHARTERS AND BILLS OF LADING, WAYBILLS OR OTHER DOCUMENTS EVIDENCING CONTRACTS OF CARRIAGE ISSUED PURSUANT TO THIS CHARTER PARTY.